## ARTICLE II.
## CONSIDERATION TO EGP

2.1    _Assignment to EGP_.  The Parties agree that, upon completion of the issuance of the Shares to Lender and Lender's receipt of the Cash Payment, Lender shall immediately, irrevocably and completely assign the Loan Agreement and Warrants to EGP including, without limitation, all of Lender's rights thereunder.  Upon complete performance by both Parties hereto, this Agreement shall be a complete novation, accord and satisfaction and termination of any and all rights Lender may have under the Loan Agreement and Warrants.  Furthermore, Lender represents and warrants that it will not seek to collect the Debt or any part thereof from any party including, without limitation, VNI or its shareholders, officers, bankruptcy estate or otherwise.

## ARTICLE III.
## LIMITED MUTUAL RELEASE

3.1    _Limited Mutual Release_.  Except as relates to the undertakings, representations and warranties contained herein, the Lender and EGP hereby fully release, remise, acquit and forever discharge each other, and all of their respective owners, agents, employees, attorneys, heirs and assigns, from any and all claims, demands, actions, causes of action, damages, obligations, losses and expenses of whatsoever kind or nature arising out of or related to the Loan Agreement, the Debt and/or the Guarantee and/or any acts, omissions, transactions, transfers, happenings, violations, promises, contracts, fraud, agreements, facts or situations arising out of or related to the Loan Agreement whether in law, equity or otherwise..

## ARTICLE IV.
## MISCELLANEOUS

4.1    _Headings_.  The Article and Section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.  Unless otherwise indicated, capitalized terms shall have the meaning assigned in the Loan Agreement. The term Effective Date used herein above shall mean the date on which all Parties have executed this Agreement.

4.2    _Governing Law and Construction_.  The Parties represent that they and their counsel have fully read this Agreement and understand and accept its terms.  Neither the negotiation of the language of this Agreement nor prior drafts of this Agreement or any portion hereof shall be admissible or probative of the meaning of this Agreement.  This Agreement shall be construed in accordance with and be governed by the laws of the State of New York without regard to choice of law or conflicts principles that might otherwise be applicable, except that in any dispute between or among the Parties hereto, arising out of or related to this Agreement, the parties shall bear their own costs and legal fees regardless of which party may prevail.  Each Party submits to the exclusive jurisdiction of the courts of the State of New York for the purpose of any dispute between or among the Parties hereto.  The Parties acknowledge the arms-length nature of this Agreement and such related agreements and their respective representation by counsel of their own choosing in connection with the negotiation of this Agreement.

4.3    Entire Agreement. This Agreement represents the entire agreement between the Parties and anyone acting for, associated with or employed by any Party, and this Agreement supersedes any and all prior discussions, agreements or understandings between the Parties. This Agreement is based solely on the consideration stated herein. There have been no representations, warranties or inducements among the Parties hereto, or their agents, relative to this Agreement or the subject matter hereof other than as set forth expressly herein. Further, no representation or promise not included herein may be relied upon or be binding on any Party or on anyone acting for, associated with or employed by any Party. If any provision of this Agreement (or part thereof) is found to be invalid, unenforceable or illegal, by any court or body of competent jurisdiction, the other provisions hereof shall remain in full force and effect.

4.4    Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. A facsimile signature shall be deemed an original signature for purposes of this Agreement.

4.5    Successors and Assigns. Each and all of the covenants, terms, provisions, and agreements contained herein shall be binding upon and inure to the benefit of the Parties hereto and their successors and assigns. The Parties hereto agree that any assignee or successor in interest of any party shall have all of the rights and obligations accorded such entities' assignor or predecessor in interest under this Agreement. No Party to this Agreement may assign, transfer or dispose of its rights and/or obligations arising under, out of or in connection with this Agreement to any other person without the prior written consent of each other Party.

4.6    Non-waiver. No waiver with respect to any portion of this Agreement shall apply to any other portion of the Agreement, and a waiver on one occasion shall not be deemed to be a waiver of the same or any other breach on a future occasion. No course of dealing by any Party, and no failure, omission, delay or forbearance by any party in exercising such party's rights or remedies shall be deemed a waiver of any such rights or remedies or a modification of this Agreement. No waiver of any right or rights arising under this Agreement shall be effective unless such waiver is in writing and signed by the party or parties whose rights are being waived.

4.7    Incorporation of Recitals. The recitals set forth in the Whereas paragraphs at the beginning of this Agreement are hereby incorporated by reference into the body of this Agreement.

4.8    Authority. Each Party represents and warrants to the other that, as of the date hereof: (a) it is duly organized and validly existing under the laws of its jurisdiction of incorporation or formation, and has full corporate or other power and authority to enter into this Agreement and to carry out the provisions hereof; (b) it is duly authorized to execute and deliver this Agreement and to perform its obligations hereunder, and the Person or Persons executing this Agreement on its behalf has been duly authorized to do so by all requisite corporate or partnership action; and (c) this Agreement is legally binding upon it, enforceable in accordance with its terms, and does not conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it may be bound nor violate any material law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

IN WITNESS WHEREOF, the Parties have executed this agreement on the date below their respective signatures.

Accepted and Agreed by ENDEAVOR GLOBAL PARTNERS, CORP. through its Director, DAVID FRESNE, on this _11_ day of _September_, 2017.

David M. Fresne, Director
Endeavor Global Partners, Corp.

NOTARY:

STATE OF _Connecticut_
COUNTY OF _Fairfield_
I certify that the person signing adjacent is known to me or has, at the time of signing, produced to me sufficient evidence of his/her identity and that this document was signed in my presence.

Signed (Notary Public)
My Commission Expires: _7/21/21_

Accepted and Agreed by the Lender, Randy Dircks, on this _5_ day of _September_, 2017.

Lender

NOTARY:

STATE OF _New Hampshire_
COUNTY OF _Rockingham_
I certify that the person signing adjacent is known to me or has, at the time of signing, produced to me sufficient evidence of his/her identity and that this document was signed in my presence.

_9/5/2017_

Signed (Notary Public)
My Commission Expires:

SENIDA AHMIC
Notary Public, State of New Hampshire
My Commission Expires 10 05, 2021

*CASE # 17-17238*

# NOVATION AND LIMITED RELEASE AGREEMENT

This Novation and Limited Release Agreement ("Agreement") is entered into this first day of September, 2017 (the "Effective Date") by and between Endeavor Global Partners, Corp. ("EGP"), and Ann Thompson Estate ("Lender") (the "Parties" or individually, a "Party") as follows:

WHEREAS, on or about June 15, 2015 EGP, Veracity Network, Inc. ("VNI") and Ann Thompson entered into that certain Bridge Loan Agreement (the Loan Agreement") pursuant to the terms of which Lender loaned VNI the Principal sum of twenty thousand dollars ($ 20,000.00 US) (the "Principal Loan Amount"); and,

WHEREAS, the Principal Loan Amount together with accrued interest thereon (the "Debt") is currently due and payable by VNI to Ann Thompson; and,

WHEREAS, pursuant to the terms and conditions of the Loan Agreement, EGP guaranteed repayment of the Debt (the "Guarantee"); and,

WHEREAS, pursuant to the Loan Agreement Ann Thompson received warrants to purchase shares in VNI (the "Warrants"); and,

WHEREAS, the Parties have agreed to satisfy and cancel the Guarantee and to transfer and assign to EGP all of Lender's other rights under the Loan Agreement in exchange for granting Lender shares in a company to be formed by EGP to be named PharmaSafeguard. Ltd., ("PSG") and a cash payment;

NOW THEREFORE, the Parties enter into this Agreement based on the consideration stated herein as follows:

## ARTICLE I.
## CONSIDERATION TO LENDER

1.1    Shares in PSG.   Upon execution of this Agreement by the Parties, and all other similar agreements with other VNI lenders, EGP shall form PSG under the laws of the British Virgin Islands and shall thereafter issue to Lender forty thousand (40,000) shares of fully assessed common shares in PSG (or such amount of shares being approximately equivalent to 1 % of the issued shares in PSG) (the "Shares") and shall issue, convey, transfer, and assign to Lender all rights, title, and interest in and to the Shares.   The Shares shall issue to Lender free from all encumbrances with all rights attaching to them.   EGP warrants that there will be no restrictions on transfer (including pre-emption rights) in relation to the Shares under the articles of association of PSG or otherwise.

1.2    Cash Payment to Lender.   Upon receipt by PSG of the first $1 million tranche of a contemplated $6 million financing, EGP and/or PSG shall make a one-time cash payment to Lender in the amount of five thousand dollars ($ 5,000.00 US) (the "Cash Payment").

*CASE # 17 - 17238*

## ARTICLE II.
## CONSIDERATION TO EGP

2.1    <u>Assignment to EGP</u>.  The Parties agree that, upon completion of the issuance of the Shares to Lender and Lender's receipt of the Cash Payment, Lender shall immediately, irrevocably and completely assign the Loan Agreement and Warrants to EGP including, without limitation, all of Lender's rights thereunder.  Upon complete performance by both Parties hereto, this Agreement shall be a complete novation, accord and satisfaction and termination of any and all rights Lender may have under the Loan Agreement and Warrants.  Furthermore, Lender represents and warrants that it will not seek to collect the Debt or any part thereof from any party including, without limitation, VNI or its shareholders, officers, bankruptcy estate or otherwise.

## ARTICLE III.
## LIMITED MUTUAL RELEASE

3.1    <u>Limited Mutual Release</u>.  Except as relates to the undertakings, representations and warranties contained herein, the Lender and EGP hereby fully release, remise, acquit and forever discharge each other, and all of their respective owners, agents, employees, attorneys, heirs and assigns, from any and all claims, demands, actions, causes of action, damages, obligations, losses and expenses of whatsoever kind or nature arising out of or related to the Loan Agreement, the Debt and/or the Guarantee and/or any acts, omissions, transactions, transfers, happenings, violations, promises, contracts, fraud, agreements, facts or situations arising out of or related to the Loan Agreement whether in law, equity or otherwise.

## ARTICLE IV.
## MISCELLANEOUS

4.1    <u>Headings</u>.  The Article and Section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.  Unless otherwise indicated, capitalized terms shall have the meaning assigned in the Loan Agreement. The term Effective Date used herein above shall mean the date on which all Parties have executed this Agreement.

4.2    <u>Governing Law and Construction</u>.  The Parties represent that they and their counsel have fully read this Agreement and understand and accept its terms.  Neither the negotiation of the language of this Agreement nor prior drafts of this Agreement or any portion hereof shall be admissible or probative of the meaning of this Agreement.  This Agreement shall be construed in accordance with and be governed by the laws of the State of New York without regard to choice of law or conflicts principles that might otherwise be applicable, except that in any dispute between or among the Parties hereto, arising out of or related to this Agreement, the parties shall bear their own costs and legal fees regardless of which party may prevail.  Each Party submits to the exclusive jurisdiction of the courts of the State of New York for the purpose of any dispute between or among the Parties hereto.  The Parties acknowledge the arms-length nature of this Agreement and such related agreements and their respective representation by counsel of their own choosing in connection with the negotiation of this Agreement.

4.3    Entire Agreement. This Agreement represents the entire agreement between the Parties and anyone acting for, associated with or employed by any Party, and this Agreement supersedes any and all prior discussions, agreements or understandings between the Parties. This Agreement is based solely on the consideration stated herein. There have been no representations, warranties or inducements among the Parties hereto, or their agents, relative to this Agreement or the subject matter hereof other than as set forth expressly herein. Further, no representation or promise not included herein may be relied upon or be binding on any Party or on anyone acting for, associated with or employed by any Party. If any provision of this Agreement (or part thereof) is found to be invalid, unenforceable or illegal, by any court or body of competent jurisdiction, the other provisions hereof shall remain in full force and effect.

4.4    Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. A facsimile signature shall be deemed an original signature for purposes of this Agreement.

4.5    Successors and Assigns. Each and all of the covenants, terms, provisions, and agreements contained herein shall be binding upon and inure to the benefit of the Parties hereto and their successors and assigns. The Parties hereto agree that any assignee or successor in interest of any party shall have all of the rights and obligations accorded such entities' assignor or predecessor in interest under this Agreement. No Party to this Agreement may assign, transfer or dispose of its rights and/or obligations arising under, out of or in connection with this Agreement to any other person without the prior written consent of each other Party.

4.6    Non-waiver. No waiver with respect to any portion of this Agreement shall apply to any other portion of the Agreement, and a waiver on one occasion shall not be deemed to be a waiver of the same or any other breach on a future occasion. No course of dealing by any Party, and no failure, omission, delay or forbearance by any party in exercising such party's rights or remedies shall be deemed a waiver of any such rights or remedies or a modification of this Agreement. No waiver of any right or rights arising under this Agreement shall be effective unless such waiver is in writing and signed by the party or parties whose rights are being waived.

4.7    Incorporation of Recitals. The recitals set forth in the Whereas paragraphs at the beginning of this Agreement are hereby incorporated by reference into the body of this Agreement.

4.8    Authority. Each Party represents and warrants to the other that, as of the date hereof: (a) it is duly organized and validly existing under the laws of its jurisdiction of incorporation or formation, and has full corporate or other power and authority to enter into this Agreement and to carry out the provisions hereof; (b) it is duly authorized to execute and deliver this Agreement and to perform its obligations hereunder, and the Person or Persons executing this Agreement on its behalf has been duly authorized to do so by all requisite corporate or partnership action; and (c) this Agreement is legally binding upon it, enforceable in accordance with its terms, and does not conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it may be bound nor violate any material law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

*CASE # 17 - 17238*

IN WITNESS WHEREOF, the Parties have executed this agreement on the date below their respective signatures.

Accepted and Agreed by ENDEAVOR GLOBAL PARTNERS, CORP. through its Director, DAVID FRESNE, on this _18_ day of _September_, 2017.

David M. Fresne, Director
Endeavor Global Partners, Corp.

Accepted and Agreed by the Lender, Ann Thompson Estate, on this _20TH_ day of _September_, 2017.

Lender

# NOVATION AND LIMITED RELEASE AGREEMENT

This Novation and Limited Release Agreement ("Agreement") is entered into this first day of September, 2017 (the "Effective Date") by and between Endeavor Global Partners, Corp. ("EGP"), and Hugh Thompson ("Lender") (the "Parties" or individually, a "Party") as follows:

WHEREAS, on or about June 15, 2015 EGP, Veracity Network, Inc. ("VNI") and Lender entered into that certain Bridge Loan Agreement (the Loan Agreement") pursuant to the terms of which Lender loaned VNI the Principal sum of twenty thousand dollars ($ 20,000.00 US) (the "Principal Loan Amount"); and,

WHEREAS, the Principal Loan Amount together with accrued interest thereon (the "Debt") is currently due and payable by VNI to Lender; and,

WHEREAS, pursuant to the terms and conditions of the Loan Agreement, EGP guaranteed repayment of the Debt (the "Guarantee"); and,

WHEREAS, pursuant to the Loan Agreement the Lender received warrants to purchase shares in VNI (the "Warrants"); and,

WHEREAS, the Parties have agreed to satisfy and cancel the Guarantee and to transfer and assign to EGP all of Lender's other rights under the Loan Agreement in exchange for granting Lender shares in a company to be formed by EGP to be named PharmaSafeguard. Ltd., ("PSG") and a cash payment;

NOW THEREFORE, the Parties enter into this Agreement based on the consideration stated herein as follows:

## ARTICLE I.
## CONSIDERATION TO LENDER

1.1    Shares in PSG.  Upon execution of this Agreement by the Parties, and all other similar agreements with other VNI lenders, EGP shall form PSG under the laws of the British Virgin Islands and shall thereafter issue to Lender forty thousand (40,000) shares of fully assessed common shares in PSG (or such amount of shares being approximately equivalent to 1 % of the issued shares in PSG) (the "Shares") and shall issue, convey, transfer, and assign to Lender all rights, title, and interest in and to the Shares.  The Shares shall issue to Lender free from all encumbrances with all rights attaching to them.  EGP warrants that there will be no restrictions on transfer (including pre-emption rights) in relation to the Shares under the articles of association of PSG or otherwise.

1.2    Cash Payment to Lender.  Upon receipt by PSG of the first $1 million tranche of a contemplated $6 million financing, EGP and/or PSG shall make a one-time cash payment to Lender in the amount of five thousand dollars ($ 5,000.00 US) (the "Cash Payment").

## ARTICLE II.
## CONSIDERATION TO EGP

2.1    _Assignment to EGP._  The Parties agree that, upon completion of the issuance of the Shares to Lender and Lender's receipt of the Cash Payment, Lender shall immediately, irrevocably and completely assign the Loan Agreement and Warrants to EGP including, without limitation, all of Lender's rights thereunder.  Upon complete performance by both Parties hereto, this Agreement shall be a complete novation, accord and satisfaction and termination of any and all rights Lender may have under the Loan Agreement and Warrants.  Furthermore, Lender represents and warrants that it will not seek to collect the Debt or any part thereof from any party including, without limitation, VNI or its shareholders, officers, bankruptcy estate or otherwise.

## ARTICLE III.
## LIMITED MUTUAL RELEASE

3.1    _Limited Mutual Release._  Except as relates to the undertakings, representations and warranties contained herein, the Lender and EGP hereby fully release, remise, acquit and forever discharge each other, and all of their respective owners, agents, employees, attorneys, heirs and assigns, from any and all claims, demands, actions, causes of action, damages, obligations, losses and expenses of whatsoever kind or nature arising out of or related to the Loan Agreement, the Debt and/or the Guarantee and/or any acts, omissions, transactions, transfers, happenings, violations, promises, contracts, fraud, agreements, facts or situations arising out of or related to the Loan Agreement whether in law, equity or otherwise.

## ARTICLE IV.
## MISCELLANEOUS

4.1    _Headings._  The Article and Section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.  Unless otherwise indicated, capitalized terms shall have the meaning assigned in the Loan Agreement. The term Effective Date used herein above shall mean the date on which all Parties have executed this Agreement.

4.2    _Governing Law and Construction._  The Parties represent that they and their counsel have fully read this Agreement and understand and accept its terms.  Neither the negotiation of the language of this Agreement nor prior drafts of this Agreement or any portion hereof shall be admissible or probative of the meaning of this Agreement.  This Agreement shall be construed in accordance with and be governed by the laws of the State of New York without regard to choice of law or conflicts principles that might otherwise be applicable, except that in any dispute between or among the Parties hereto, arising out of or related to this Agreement, the parties shall bear their own costs and legal fees regardless of which party may prevail.  Each Party submits to the exclusive jurisdiction of the courts of the State of New York for the purpose of any dispute between or among the Parties hereto.  The Parties acknowledge the arms-length nature of this Agreement and such related agreements and their respective representation by counsel of their own choosing in connection with the negotiation of this Agreement.

4.3   <u>Entire Agreement</u>.  This Agreement represents the entire agreement between the Parties and anyone acting for, associated with or employed by any Party, and this Agreement supersedes any and all prior discussions, agreements or understandings between the Parties.  This Agreement is based solely on the consideration stated herein.  There have been no representations, warranties or inducements among the Parties hereto, or their agents, relative to this Agreement or the subject matter hereof other than as set forth expressly herein.  Further, no representation or promise not included herein may be relied upon or be binding on any Party or on anyone acting for, associated with or employed by any Party.  If any provision of this Agreement (or part thereof) is found to be invalid, unenforceable or illegal, by any court or body of competent jurisdiction, the other provisions hereof shall remain in full force and effect.

4.4   <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.  A facsimile signature shall be deemed an original signature for purposes of this Agreement.

4.5   <u>Successors and Assigns</u>.  Each and all of the covenants, terms, provisions, and agreements contained herein shall be binding upon and inure to the benefit of the Parties hereto and their successors and assigns.  The Parties hereto agree that any assignee or successor in interest of any party shall have all of the rights and obligations accorded such entities' assignor or predecessor in interest under this Agreement.  No Party to this Agreement may assign, transfer or dispose of its rights and/or obligations arising under, out of or in connection with this Agreement to any other person without the prior written consent of each other Party.

4.6   <u>Non-waiver</u>.  No waiver with respect to any portion of this Agreement shall apply to any other portion of the Agreement, and a waiver on one occasion shall not be deemed to be a waiver of the same or any other breach on a future occasion.  No course of dealing by any Party, and no failure, omission, delay or forbearance by any party in exercising such party's rights or remedies shall be deemed a waiver of any such rights or remedies or a modification of this Agreement.  No waiver of any right or rights arising under this Agreement shall be effective unless such waiver is in writing and signed by the party or parties whose rights are being waived.

4.7   <u>Incorporation of Recitals</u>.  The recitals set forth in the Whereas paragraphs at the beginning of this Agreement are hereby incorporated by reference into the body of this Agreement.

4.8   <u>Authority</u>.  Each Party represents and warrants to the other that, as of the date hereof: (a) it is duly organized and validly existing under the laws of its jurisdiction of incorporation or formation, and has full corporate or other power and authority to enter into this Agreement and to carry out the provisions hereof; (b) it is duly authorized to execute and deliver this Agreement and to perform its obligations hereunder, and the Person or Persons executing this Agreement on its behalf has been duly authorized to do so by all requisite corporate or partnership action; and (c) this Agreement is legally binding upon it, enforceable in accordance with its terms, and does not conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it may be bound nor violate any material law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

CASE # 17-1972-38

IN WITNESS WHEREOF, the Parties have executed this agreement on the date below their respective signatures.

Accepted and Agreed by ENDEAVOR GLOBAL PARTNERS, CORP. through its Director, DAVID FRESNE, on this 28 day of September, 2017.

David M. Fresne, Director
Endeavor Global Partners, Corp.

Accepted and Agreed by the Lender, Hugh Thompson, on this 20TH day of September, 2017.

Lender

DANZEL PALMER
My Commission Expires
NOTARY
PUBLIC
10/31/2020
CONNECTICUT

## NOVATION AND LIMITED RELEASE AGREEMENT

This Novation and Limited Release Agreement ("Agreement") is entered into this first day of September, 2017 (the "Effective Date") by and between Endeavor Global Partners, Corp. ("EGP"), and June Holding Limited ("Lender") (the "Parties" or individually, a "Party") as follows:

WHEREAS, on or about June 15, 2015 EGP, Veracity Network, Inc. ("VNI") and Lender entered into that certain Bridge Loan Agreement (the "Loan Agreement") pursuant to the terms of which Lender loaned VNI the Principal sum of one hundred thousand ($100,000.00 US) (the "Principal Loan Amount"); and,

WHEREAS, the Principal Loan Amount together with accrued interest thereon (the "Debt") is currently due and payable by VNI to Lender; and,

WHEREAS, pursuant to the terms and conditions of the Loan Agreement, EGP guaranteed repayment of the Debt (the "Guarantee"); and,

WHEREAS, pursuant to the Loan Agreement the Lender received warrants to purchase shares in VNI (the "Warrants"); and,

WHEREAS, the Parties have agreed to satisfy and cancel the Guarantee and to transfer and assign to EGP all of Lender's other rights under the Loan Agreement in exchange for granting Lender shares in a company to be formed by EGP to be named PharmaSafeguard. Ltd., ("PSG") and a cash payment;

NOW THEREFORE, the Parties enter into this Agreement based on the consideration stated herein as follows:

### ARTICLE I.
### CONSIDERATION TO LENDER

1.1    Shares in PSG.    Upon execution of this Agreement by the Parties, and all other similar agreements with other VNI lenders, EGP shall form PSG under the laws of the British Virgin Islands and shall thereafter issue to Lender eighty five thousand (85,000) shares of fully assessed common shares in PSG (or such amount of shares being equivalent to 1.3% of the issued shares in PSG) (the "Shares") and shall issue, convey, transfer, and assign to Lender all rights, title, and interest in and to the Shares.  The Shares shall issue to Lender free from all encumbrances with all rights attaching to them.  EGP warrants that there will be no restrictions on transfer (including pre-emption rights) in relation to the Shares under the articles of association of PSG or otherwise.

1.2    Cash Payment to Lender.    Upon receipt by PSG of the first $1 million tranche of a contemplated $6 million financing, EGP and/or PSG shall make a one-time cash payment to Lender in the amount of fifty thousand dollars ($ 50,000.00 US) (the "Cash Payment").

*CASE # 17-17238*

## ARTICLE II.
## CONSIDERATION TO EGP

2.1    <u>Assignment to EGP</u>.  The Parties agree that, upon completion of the issuance of the Shares to Lender and Lender's receipt of the Cash Payment, Lender shall immediately, irrevocably and completely assign the Loan Agreement and Warrants to EGP including, without limitation, all of Lender's rights thereunder.  Upon complete performance by both Parties hereto, this Agreement shall be a complete novation, accord and satisfaction and termination of any and all rights Lender may have under the Loan Agreement and Warrants.  Furthermore, Lender represents and warrants that it will not seek to collect the Debt or any part thereof from any party including, without limitation, VNI or its shareholders, officers, bankruptcy estate or otherwise.

## ARTICLE III.
## LIMITED MUTUAL RELEASE

3.1    <u>Limited Mutual Release</u>.  Except as relates to the undertakings, representations and warranties contained herein, the Lender and EGP hereby fully release, remise, acquit and forever discharge each other, and all of their respective owners, agents, employees, attorneys, heirs and assigns, from any and all claims, demands, actions, causes of action, damages, obligations, losses and expenses of whatsoever kind or nature arising out of or related to the Loan Agreement, the Debt and/or the Guarantee and/or any acts, omissions, transactions, transfers, happenings, violations, promises, contracts, fraud, agreements, facts or situations arising out of or related to the Loan Agreement whether in law, equity or otherwise.

## ARTICLE IV.
## MISCELLANEOUS

4.1    <u>Headings</u>.  The Article and Section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.  Unless otherwise indicated, capitalized terms shall have the meaning assigned in the Loan Agreement.  The term Effective Date used herein above shall mean the date on which all Parties have executed this Agreement.

4.2    <u>Governing Law and Construction</u>.  The Parties represent that they and their counsel have fully read this Agreement and understand and accept its terms.  Neither the negotiation of the language of this Agreement nor prior drafts of this Agreement or any portion hereof shall be admissible or probative of the meaning of this Agreement.  This Agreement shall be construed in accordance with and be governed by the laws of the State of New York without regard to choice of law or conflicts principles that might otherwise be applicable, except that in any dispute between or among the Parties hereto, arising out of or related to this Agreement, the parties shall bear their own costs and legal fees regardless of which party may prevail.  Each Party submits to the exclusive jurisdiction of the courts of the State of New York for the purpose of any dispute between or among the Parties hereto.  The Parties acknowledge the arms-length nature of this Agreement and such related agreements and their respective representation by counsel of their own choosing in connection with the negotiation of this Agreement.

KTS 000145242 V2

2

4.3    Entire Agreement. This Agreement represents the entire agreement between the Parties and anyone acting for, associated with or employed by any Party, and this Agreement supersedes any and all prior discussions, agreements or understandings between the Parties. This Agreement is based solely on the consideration stated herein. There have been no representations, warranties or inducements among the Parties hereto, or their agents, relative to this Agreement or the subject matter hereof other than as set forth expressly herein. Further, no representation or promise not included herein may be relied upon or be binding on any Party or on anyone acting for, associated with or employed by any Party. If any provision of this Agreement (or part thereof) is found to be invalid, unenforceable or illegal, by any court or body of competent jurisdiction, the other provisions hereof shall remain in full force and effect.

4.4    Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. A facsimile signature shall be deemed an original signature for purposes of this Agreement.

4.5    Successors and Assigns. Each and all of the covenants, terms, provisions, and agreements contained herein shall be binding upon and inure to the benefit of the Parties hereto and their successors and assigns. The Parties hereto agree that any assignee or successor in interest of any party shall have all of the rights and obligations accorded such entities' assignor or predecessor in interest under this Agreement. No Party to this Agreement may assign, transfer or dispose of its rights and/or obligations arising under, out of or in connection with this Agreement to any other person without the prior written consent of each other Party.

4.6    Non-waiver. No waiver with respect to any portion of this Agreement shall apply to any other portion of the Agreement, and a waiver on one occasion shall not be deemed to be a waiver of the same or any other breach on a future occasion. No course of dealing by any Party, and no failure, omission, delay or forbearance by any party in exercising such party's rights or remedies shall be deemed a waiver of any such rights or remedies or a modification of this Agreement. No waiver of any right or rights arising under this Agreement shall be effective unless such waiver is in writing and signed by the party or parties whose rights are being waived.

4.7    Incorporation of Recitals. The recitals set forth in the Whereas paragraphs at the beginning of this Agreement are hereby incorporated by reference into the body of this Agreement.

4.8    Authority. Each Party represents and warrants to the other that, as of the date hereof: (a) it is duly organized and validly existing under the laws of its jurisdiction of incorporation or formation, and has full corporate or other power and authority to enter into this Agreement and to carry out the provisions hereof; (b) it is duly authorized to execute and deliver this Agreement and to perform its obligations hereunder, and the Person or Persons executing this Agreement on its behalf has been duly authorized to do so by all requisite corporate or partnership action; and (c) this Agreement is legally binding upon it, enforceable in accordance with its terms, and does not conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it may be bound nor violate any material law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

IN WITNESS WHEREOF, the Parties have executed this agreement on the date below their respective signatures.

Accepted and Agreed by ENDEAVOR GLOBAL PARTNERS, CORP. through its Director, DAVID FRESNE, on this _28_ day of _September_, 2017.

David M. Fresne, Director
Endeavor Global Partners, Corp.

NOTARY:

STATE OF _CT_
COUNTY OF _Fairfield_
I certify that the person signing adjacent is known to me or has, at the time of signing, produced to me sufficient evidence of his/her identity and that this document was signed in my presence. •

Signed (Notary Public)
My Commission Expires: _3-31-19_ .

VIVIAN R. SCHAUFLER
NOTARY PUBLIC
MY COMMISSION EXPIRES MAR. 31, 2019

Accepted and Agreed by the Lender June Holding Limited, on this _27_ day of _Sep_, 2017.

Lender

NOTARY:

STATE OF_____
COUNTY OF_____
I certify that the person signing adjacent is known to me or has, at the time of signing, produced to me sufficient evidence of his/her identity and that this document was signed in my presence.

Signed (Notary Public)
My Commission Expires:_____

KTS 000145242 V2

4

Date Printed: 6/19/2017
Page: 1
By: sxr
BPR

**Shutts & Bowen, LLP**

**Bill Payment Report**
**Invoices Dates From 11/1/2015 thru 6/19/2017**
Payments thru 06-19-2017
Grouped by Client,Matter,

All Dates
All Departments
All Job Titles
All Matter Classes
All Employees
Attorney status is Active or Inactive
Client Code 43812
Matter Code 0001
Attorney status is Active or Inactive

| Bill no. | Check# | Transaction Type | Date | Fees | Costs | Other | Total |
|---|---|---|---|---|---|---|---|
| 43812  Veracity Network, Inc. | | | | | | | |
| 0001  Katz v. Veracity Network, Inc. | | | | | | | |
| 1092672 | | Bill | Dec 3 2015 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1093790 | | Bill | Dec 3 2015 | 6,765.00 | 0.00 | 0.00 | 6,765.00 |
| 1093790 | | Payment | Dec 31 2015 | -6,765.00 | 0.00 | 0.00 | -6,765.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1099135 | | Bill | Jan 7 2016 | 11,960.00 | 0.00 | 0.00 | 11,960.00 |
| 1099135 | | Payment | Mar 21 2016 | -11,960.00 | 0.00 | 0.00 | -11,960.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1106022 | | Bill | Feb 8 2016 | 12,930.00 | 0.00 | 0.00 | 12,930.00 |
| 1106022 | | Payment | Mar 21 2016 | -12,930.00 | 0.00 | 0.00 | -12,930.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1111828 | | Bill | Mar 7 2016 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1111828 | | Payment | Mar 7 2016 | 0.00 | -850.00 | 0.00 | -850.00 |
| 1111828 | | Payment | Mar 9 2016 | 0.00 | 850.00 | 0.00 | 850.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1112246 | | Bill | Mar 9 2016 | 0.00 | 850.00 | 0.00 | 850.00 |
| 1112246 | | Payment | Mar 9 2016 | 0.00 | -850.00 | 0.00 | -850.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1112247 | | Bill | Mar 7 2016 | 3,225.00 | 0.00 | 0.00 | 3,225.00 |
| 1112247 | | Payment | Mar 21 2016 | -3,225.00 | 0.00 | 0.00 | -3,225.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1119213 | | Bill | Apr 11 2016 | 8,221.00 | 95.00 | 0.00 | 8,316.00 |
| 1119213 | | Payment | Sep 19 2016 | -8,221.00 | 0.00 | 0.00 | -8,221.00 |
| 1119213 | | Adjustments | Sep 19 2016 | 0.00 | -95.00 | 0.00 | -95.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1124113 | | Bill | May 5 2016 | 11,285.00 | 14.37 | 0.00 | 11,299.37 |
| 1124113 | | Payment | Sep 19 2016 | -9,255.00 | -14.37 | 0.00 | -9,269.37 |
| 1124113 | | Payment | Nov 15 2016 | -2,030.00 | 0.00 | 0.00 | -2,030.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1131745 | | Bill | Jun 10 2016 | 15,400.00 | 0.00 | 0.00 | 15,400.00 |
| 1131745 | | Payment | Sep 19 2016 | -14,560.00 | 0.00 | 0.00 | -14,560.00 |
| 1131745 | | Payment | Nov 15 2016 | -840.00 | 0.00 | 0.00 | -840.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1136699 | | Bill | Jul 6 2016 | 16,650.00 | 41.96 | 0.00 | 16,691.96 |
| 1136699 | | Payment | Sep 19 2016 | -7,200.00 | -41.96 | 0.00 | -7,241.96 |
| 1136699 | | Payment | Nov 15 2016 | -9,450.00 | 0.00 | 0.00 | -9,450.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1146485 | | Bill | Aug 10 2016 | 2,125.00 | 91.95 | 0.00 | 2,216.95 |
| 1146485 | | Payment | Sep 19 2016 | -2,125.00 | -91.95 | 0.00 | -2,216.95 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1151583 | | Bill | Sep 6 2016 | 3,600.00 | 0.00 | 0.00 | 3,600.00 |
| 1151583 | | Payment | Sep 19 2016 | -3,600.00 | 0.00 | 0.00 | -3,600.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1158987 | | Bill | Oct 12 2016 | 4,180.00 | 0.00 | 0.00 | 4,180.00 |
| 1158987 | | Payment | Nov 15 2016 | -4,180.00 | 0.00 | 0.00 | -4,180.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1166079 | | Bill | Nov 7 2016 | 1,080.00 | 0.00 | 0.00 | 1,080.00 |
| 1166079 | | Adjustments | Dec 27 2016 | -280.00 | 0.00 | 0.00 | -280.00 |
| 1166079 | | Payment | Dec 27 2016 | -800.00 | 0.00 | 0.00 | -800.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1170259 | | Bill | Dec 6 2016 | 640.00 | 0.00 | 0.00 | 640.00 |
| 1170259 | | Payment | Dec 27 2016 | -640.00 | 0.00 | 0.00 | -640.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1181463 | | Bill | Jan 18 2017 | 4,995.00 | 0.00 | 0.00 | 4,995.00 |
| 1181463 | | Payment | Jan 25 2017 | -4,995.00 | 0.00 | 0.00 | -4,995.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1188631 | | Bill | Feb 17 2017 | 3,948.00 | 0.00 | 0.00 | 3,948.00 |
| 1188631 | | Payment | May 8 2017 | -3,948.00 | 0.00 | 0.00 | -3,948.00 |
| | | Balance | | 0.00 | 0.00 | 0.00 | 0.00 |
| 1192393 | | Bill | Mar 8 2017 | 7,424.00 | 55.50 | 0.00 | 7,479.50 |
| 1192393 | | Payment | May 8 2017 | -5,996.50 | -55.50 | 0.00 | -6,052.00 |
| | | Balance | | 1,427.50 | 0.00 | 0.00 | 1,427.50 |
| 1196602 | | Bill | Apr 10 2017 | 5,960.00 | 141.24 | 0.00 | 6,101.24 |
| | | Balance | | 5,960.00 | 141.24 | 0.00 | 6,101.24 |
| 1204804 | | Bill | May 8 2017 | 8,280.00 | 0.00 | 0.00 | 8,280.00 |

*Handwritten note at left margin: PAYED BY Endeavor Global Partners Corp.*

Date Printed: 6/19/2017
Page: 2
By: sxr
BPR

**Shutts & Bowen LLP**

**Bill Payment Report**
Invoices Dates From 11/1/2015 thru 6/19/2017
Payments thru 06-19-2017
Grouped by Client,Matter,

All Offices
All Departments
All Job Titles
All Matter Classes
All Employees
Attorney status is Active or Inactive
Client Code 43812
Matter Code 0001
Attorney status is Active or Inactive

| | Bill no. | Check# | Transaction Type | Date | Fees | Costs | Other | Total |
|---|---|---|---|---|---|---|---|---|
| | | | Balance | | 8,280.00 | 0.00 | 0.00 | 8,280.00 |
| | 1210569 | | Bill | Jun  5 2017 | 23,352.00 | 2,020.00 | 0.00 | 25,372.00 |
| | | | Balance | | 23,352.00 | 2,020.00 | 0.00 | 25,372.00 |
| **0001 Totals** | | | | | | | | |
| | | | Total Billed | | 152,020.00 | 3,310.02 | 0.00 | 155,330.02 |
| | | | Total Credits | | -112,720.50 | -1,053.78 | 0.00 | -113,774.28 |
| | | | Total Adjustments | | -280.00 | -95.00 | 0.00 | -375.00 |
| | | | Balance | | 39,019.50 | 2,161.24 | 0.00 | 41,180.74 |
| **Veracity Network, Inc. Totals** | | | | | | | | |
| | | | Total Billed | | 152,020.00 | 3,310.02 | 0.00 | 155,330.02 |
| | | | Total Credits | | -112,720.50 | -1,053.78 | 0.00 | -113,774.28 |
| | | | Total Adjustments | | -280.00 | -95.00 | 0.00 | -375.00 |
| | | | Balance | | 39,019.50 | 2,161.24 | 0.00 | 41,180.74 |
| **Report Totals:** | | | | | | | | |
| | | | Total Billed | | 152,020.00 | 3,310.02 | 0.00 | 155,330.02 |
| | | | Total Credits | | -112,720.50 | -1,053.78 | 0.00 | -113,774.28 |
| | | | Total Adjustments | | -280.00 | -95.00 | 0.00 | -375.00 |
| | | | Balance | | 39,019.50 | 2,161.24 | 0.00 | 41,180.74 |

CASE # 17-17238

Endeavor Global Partners Corp paid these Bills on behalf of Veracity

*CASE # 17-17238*



G L O B A L   P A R T N E R S
110 Old Hickory Road
Fairfield, CT 06824

*Private and Confidential*

May 1, 3015

Mr. Brian Mayo
President & CEO
Veracity Network Inc.
745 North Drive
Suite C
Melbourne, FL 32932

Dear Mr. Mayo,

We are pleased that Veracity Network Inc., a Delaware Corporation, (**"Company"**) has decided to retain Endeavor Global Partners Corp., a Delaware Corporation (**"Endeavor"**) to provide financial advisory services to the Company as set forth herein. This letter agreement (**"Agreement"**) will confirm Endeavor's acceptance of such retention and set forth the terms of our engagement.

1.    Retention.  The Company hereby retains Endeavor as its exclusive financial advisor to provide the agreed upon financial advisory services ("Advisory Services") set forth below, and Endeavor accepts such retention on the terms and conditions set forth in this Agreement.  In such capacity, Endeavor shall provide to the Company the following Advisory Services: (i) familiarize itself, to the extent appropriate and feasible, with the business, operations, properties, financial condition, management and prospects of the Company; (ii) advise the Company on matters relating to its capitalization; (iii) evaluate alternative financing structures and arrangements; (iv) assist the Company in developing appropriate acquisition criteria and identifying target industries; (v) assist the Company in evaluating and make recommendations concerning the relationships among the Company's various lines of business and potential areas for business growth; (vi) assist the Company with a going public strategy; (vii) Identify public merger candidates. (viii) Make introductions to investment bankers, funds, trusts and a like (ix) such other financial advisory services upon which the parties may mutually agree.

Nothing contained herein, however, constitutes a commitment on the part of Endeavor to provide any investment banking services. It is understood that Endeavor is not working in the capacity of a direct investor, investment banker, or a placement agent.

2.    Information.  In connection with Endeavor's activities hereunder, the Company will cooperate with Endeavor on a commercially reasonable basis and furnish Endeavor upon request with all necessary information regarding the business, operations, properties, financial condition, management and prospects of the Company (all such information so furnished being the **"Information"**) which the parties agree are appropriate and will provide Endeavor with commercially reasonable access to the Company's officers, directors, employees, independent accountants and legal counsel.  The Company, to the best of their knowledge, represents and warrants to Endeavor that all Information made available to Endeavor

hereunder will be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are or will be made. The Company further represents and warrants that any projections and other forward-looking information provided by it to Endeavor will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. The Company recognizes and confirms that Endeavor: (i) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the Advisory Services contemplated by this Agreement without having independently verified the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information; and (iii) will not make an appraisal of any assets of the Company. Unless otherwise required by law, any advice rendered by Endeavor pursuant to this Agreement may not be disclosed publicly without Endeavor's prior written consent. Endeavor hereby acknowledges that certain of the Information received by Endeavor may be confidential and/or proprietary, including Information with respect to the Company's technologies, products, business plans, marketing, and other Information which must be maintained by Endeavor as confidential (the "Company Confidential Information"). In addition, the Company hereby acknowledges that certain of the Information it receives from Endeavor may be confidential and/or proprietary, including Information with respect to the names and contact information of certain individuals or entities introduced by Endeavor to the Company (the "Endeavor Confidential Information"). Endeavor agrees that it will not disclose the Company Confidential Information to any person without the prior written consent of the Company, and further agrees not to use the Company Confidential Information in any manner whatsoever, except as necessary in connection with or as required to carry-out its obligations under this Agreement. The Company agrees that it will not disclose the Endeavor Confidential Information to any person without the prior written consent of Endeavor, and further agrees not to use the Endeavor Confidential Information in any manner whatsoever, except as necessary in connection with or as required to carry-out its obligations under this Agreement. Neither parties' "Confidential Information" shall include information which (i) was or becomes generally available to the public other than as a result of a disclosure by a party in violation of this Agreement, (ii) was or becomes available to a party on a non-confidential basis from a source other than the disclosing party provided that such source is not known to a party to be bound by a confidentiality agreement with the disclosing party, or otherwise prohibited from transmitting the information to a party by a contractual, legal or fiduciary obligation or (iii) was within a party's possession prior to its being furnished by or on behalf of the disclosing party.

3. Non-Circumvention. Endeavor's Confidential Information shall remain the sole and exclusive property of Endeavor. The Company hereby agrees that it shall not attempt to make any contact with, or be otherwise involved, directly or indirectly, in any discussions and/or transactions with any person or entity introduced by Endeavor to the Company without Endeavor's written permission.

4. Compensation. As consideration for Endeavor's services pursuant to this Agreement, Endeavor shall be entitled to receive, and the Company agrees to pay Endeavor, the following compensation:

(a) Upon execution of this Agreement, in consideration for all Advisory Services to be rendered hereunder, the "Company" will wire "Endeavor Global Partners Corp." the amount of Twenty Five Thousand Dollars ($25,000.00).

(b) Twelve consecutive monthly payments in the amount of Ten Thousand Dollars ($10,000.00) commencing on June 2, 2015. Endeavor agrees to defer five (5) Thousand dollars per month until a funding is completed (debt, equity, or otherwise). The balance due to Endeavor will be listed in the uses and sources of the financing and payment of the deferred compensation will be paid directly from the proceeds of the funding. Payments thereafter will be in the amount of ten (10)

*CASE # 17-17238*          Page 3

thousand dollars per month. All payments will be made via wire transfer on the first day of the month. Wire instruction below:

(c)    Upon the execution of a placement Agent Agreement, Letter of intent for Change of Control, executed Term Sheet by an investor (debt equity or otherwise) or alike the Company will issue a Five (5) Year Purchase Warrant to Purchase Three (3) percent of the fully diluted capital stock of the Company. The warrant will have an exercise price of $0.001 per share and unlimited piggyback registration rights. The warrant will have a cashless excise provision. In the event the Company has not completed any closing for additional capital in one years time Endeavor will surrender the warrant back to the Company.

**Bank: Wells Fargo**
**ABA#** ████ **0248**
**Account Name: Endeavor Global Partner Corp**
**Account :** ████ **0673**

5.    Expenses. In addition to payment to Endeavor of the compensation set forth in Section 4 hereof, the Company shall promptly upon request from time to time reimburse Endeavor for all reasonable expenses (including, without limitation, all travel and other out-of-pocket expenses) approved in advance by the Company and incurred by Endeavor in connection with its engagement hereunder. Endeavor will provide the Company an invoice and copies of receipts pursuant to its expenses and in the event any one expense exceeds $1,000 during the term of this Agreement Endeavor will request written authorization of the Company. Any air travel shall be business or first class for scheduled flights over one hour. The Company prior to any Endeavor employee traveling for the benefit of the Company will purchase all air travel tickets and hotel accommodations.

6.    Indemnification. The Company and Endeavor agree to indemnify each other in accordance with the indemnification and other provisions attached to this Agreement as <u>Exhibit A</u> (the **"Indemnification Provisions"**), which provisions are incorporated herein by reference and shall survive the termination or expiration of this Agreement.

7.    Other Activities. The Company acknowledges that Endeavor has been, and may in the future be, engaged to provide services as an advisor to other companies that may be in the industry in which the Company is involved. Subject to the confidentiality provisions of Endeavor contained in Section 2. above, the Company acknowledges and agrees that nothing contained in this Agreement shall limit or restrict the right of Endeavor or of any member, manager, officer, employee, agent or representative of Endeavor, to be a member, manager, partner, officer, director, employee, agent or representative of, investor in, or to engage in, any other business, whether or not of a similar nature to the Company's business, nor to limit or restrict the right of Endeavor to render services of any kind to any other corporation, firm, individual or association. Endeavor may, but shall not be required to, present opportunities to the Company. Endeavor is not being retained to provide any market making activities,

*CASE # 17-17238*                                    Page 4

underwritings, or any other financings. Endeavor is acting strictly as an advisor. The "Company acknowledges that "Endeavor" is not a Registered Broker Dealer.

8.    Governing Law; Jurisdiction; Waiver of Jury Trial. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be fully performed therein, without regard to conflicts of law principles. This agreement, in part, was negotiated within the State of New York. As a material inducement for Endeavor to enter into this Agreement, the Company irrevocably submits to the exclusive jurisdiction of a court of competent jurisdiction located in the State and City of New York, Borough of Manhattan for purposes of any suit, action, or other proceedings arising from this Agreement.

9.    Amendments. This Agreement may not be modified or amended except in a writing duly executed by the parties hereto.

10.    Headings. The section headings in this Agreement have been inserted as a matter of reference and are not part of this Agreement.

11.    Successors and Assigns. The benefits of this Agreement shall inure to the parties hereto, their respective successors and assigns and to the indemnified parties hereunder and their respective successors and assigns, and the obligations and liabilities assumed in this Agreement shall be binding upon the parties hereto and their respective successors and assigns. Notwithstanding anything contained herein to the contrary, neither Endeavor nor the Company shall assign any of its obligations hereunder without the prior written consent of the other party.

12.    No Third Party Beneficiaries. This Agreement does not create, and shall not be construed as creating, any rights enforceable by any person or entity not a party hereto, except those entitled to the benefits of the Indemnification Provisions. Without limiting the foregoing, the Company acknowledges and agrees that Endeavor is not being engaged as, and shall not be deemed to be, an agent or fiduciary of the Company's stockholders or creditors or any other person by virtue of this Agreement or the retention of Endeavor hereunder, all of which are hereby expressly waived.

13.    Waiver. Any waiver or any breach of any of the terms or conditions of this Agreement shall not operate as a waiver of any other breach of such terms or conditions or of any other term or condition, nor shall any failure to insist upon strict performance or to enforce any provision hereof on any one occasion operate as a waiver of such provision or of any other provision hereof or a waiver of the right to insist upon strict performance or to enforce such provision or any other provision on any subsequent occasion. Any waiver must be in writing.

14.    Counterparts. This Agreement may be executed in any number of counterparts and by facsimile transmission, each of which shall be deemed to be an original instrument, but all of which taken together shall constitute one and the same agreement. Facsimile signatures shall be deemed to be original signatures for all purposes.

Page 5

[Signature Page Follows]

CASE # 07 - 17238

*CASE # 17 - 17238* Page 6

If the foregoing correctly sets forth our agreement, please sign the enclosed copy of this Agreement in the space provided below.

Very truly yours,

**Endeavor Global Partners Corp.**

By: _____
    David M. Fresne
    CEO


**Agreed to and accepted this 3 day of May 2015**

**Veracity Network Inc.**

By: _____
    Brian Mayo
    President & CEO

*CASE # 17-17238*

**Exhibit A**

**INDEMNIFICATION PROVISIONS**

Capitalized terms used in this Exhibit shall have the meanings ascribed to such terms in the Agreement to which this Exhibit is attached.

The Company and Endeavor each agree to indemnify and hold each other harmless (the "Indemnified Parties" (as hereinafter defined) from and against any and all losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses and disbursements (including without limitation attorneys' fees) relating to or arising out of their respective violations of law and/or other wrongful acts or omissions in connection with this Agreement.

These indemnification provisions shall extend to the following persons (collectively, the "**Indemnified Parties**"): Endeavor and the Company's present and former affiliated entities, managers, members, officers, employees, legal counsel, agents and controlling persons (within the meaning of the federal securities laws), and the officers, directors, partners, stockholders, members, managers, employees, legal counsel, agents and controlling persons of any of them. These indemnification provisions shall be in addition to any liability, which the parties may otherwise have to any Indemnified Party.

If any action, suit, proceeding or investigation is commenced, as to which an Indemnified Party proposes to demand indemnification, it shall notify the indemnifying party with reasonable promptness; provided, however, that any failure by an Indemnified Party to notify the indemnifying party shall not relieve the indemnifying party from its obligations hereunder. An Indemnified Party shall have the right to retain counsel of its own choice to represent it, and the reasonable fees, expenses and disbursements of such counsel shall be borne by the indemnifying party. Any such counsel shall, to the extent consistent with its professional responsibilities, cooperate with the indemnifying party and any counsel designated by the indemnifying party. The indemnifying party shall be liable for any settlement of any claim against any Indemnified Party made with the indemnifying party's written consent. The indemnifying party shall not, without the prior written consent of the Indemnified Party, settle or compromise any claim, or permit a default or consent to the entry of any judgment in respect thereof, unless such settlement, compromise or consent (i) includes, as an unconditional term thereof, the giving by the claimant to all of the Indemnified Parties of an unconditional release from all liability in respect of such claim, and (ii) does not contain any factual or legal admission by or with respect to an Indemnified Party or an adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.

Neither termination nor completion of the Agreement shall affect these indemnification provisions which shall remain operative and in full force and effect. The indemnification provisions shall be binding upon the Company and Endeavor and their successors and assigns and shall inure to the benefit of the Indemnified Parties and their respective successors, assigns, heirs and personal representatives.

**From:** **Brian Mayo** brianmayo@bellsouth.net
**Subject:** Bankruptcy court address
**Date:** October 2, 2017 at 9:58 AM
**To:** David Fresne dfresne@endeavorgpc.com



David,
   Here is the address:

Clerk of Court
Flagler Waterview Bldg
1515 N. Flagler Drive, #801
West Palm Beach, FL 33401

FYI, their phone is 561-514-4100.

-Brian

| Fill in this information to identify the case: |
|---|

Debtor 1    Veracity Network, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Southern District of Florida**

Case number:  **17-17238**

**FILED**

U.S. Bankruptcy Court
Southern District of Florida

10/3/2017

Joseph Falzone, Clerk

## Official Form 410
## Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that** you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Brian Mayo

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Brian Mayo
Name

1875 Bridgepointe Cir #34
Vero Beach, FL 32967

Contact phone    772-321-0953

Contact email    brianmayo@bellsouth.net

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

Where should payments to the creditor be sent? (if different)

_____
Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                              Proof of Claim                              page 1



TRUSTEE
EXHIBIT

Blumberg No. 5195

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:      6311 |

**7. How much is the claim?**    $    1623706.00

Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Promissory Note, Unpaid Salary, Unreimbursed Expenses, and Bridge Loan

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

    **Nature of property:**
    ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
    ☐ Motor vehicle
    ☐ Other. Describe: _____

    **Basis for perfection:** _____

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    Value of property:    $ _____

    Amount of the claim that is secured:    $ _____

    Amount of the claim that is unsecured:    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

    Amount necessary to cure any default as of the date of the petition:    $ _____

    **Annual Interest Rate** (when case was filed) _____ %

    ☐ Fixed
    ☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☐ No | | |
| | | ☑ Yes. *Check all that apply:* | | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the lawl imits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☑ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ 12850.00

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies   $ _____

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized agent on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/3/2017
                    MM / DD / YYYY

/s/  Brian Thomas Mayo

Signature

Print the name of the person who is completing and signing this claim:

Name        Brian Thomas Mayo

            First name    Middle name    Last name

Title

Company

            Identify the corporate servicer as the company if the authorized agent is a servicer

Address     1875 Bridgepointe Circle, #34

            Number   Street
            Vero Beach, FL 32967

            City   State   ZIP Code

Contact phone   772–321–0953        Email   brianmayo@bellsouth.net

Case 17-17238-PGH    Claim 3-1 Part 2    Filed 10/03/17    Page 1 of 2
**Exhibit 1: Brian Mayo Claims Summary against Veracity Network, Inc.**
Case # 17-17238-PGH

| Promissory Note | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | Totals |
|---|---|---|---|---|---|---|---|---|
| Total Due | $ 200,000 | $ 235,820 | $ 278,268 | $ 328,356 | $ 387,460 | $ 457,203 | $ 518,909 | $ 518,909 |
| Unreimbursed Expenses | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | |
| Expenses | | | | | | | | |
| 1 | $ 19,829 | | | | | | | |
| 2 | $ 1,182 | | | | | | | |
| 3 | $ 789 | | | | | | | |
| 4 | $ 642 | | | | | | | |
| 5 | $ 3,088 | | | | | | | |
| 6 | $ 676 | | | | | | | |
| 7 | $ 635 | | | | | | | |
| 8 | $ 702 | | | | | | | |
| 9 | $ 888 | | | | | | | |
| 11.10 | $ 1,260 | | | | | | | |
| 11.11 | $ 318 | | | | | | | |
| 12.7 | | $ 1,532 | | | | | | |
| 12.4 | | $ 1,360 | | | | | | |
| 12.5 | | $ 2,534 | | | | | | |
| 12.6 | | $ 1,317 | | | | | | |
| 12.3 | | $ 1,342 | | | | | | |
| 12.2 | | $ 885 | | | | | | |
| 12.1 | | $ 2,904 | | | | | | |
| 13.6 | | | $ 279 | | | | | |
| 13.2 | | | $ 838 | | | | | |
| 13.3 | | | $ 86 | | | | | |
| 13.5 | | | $ 1,149 | | | | | |
| 13.4 | | | $ 2,328 | | | | | |
| 13.1 | | | $ 874 | | | | | |
| 10 | | | | | $ 5,457 | | | |
| 11 | | | | | $ 5,457 | | | |
| 12 | | | | | $ 4,494 | | | |
| 13 | | | | | $ 651 | | | |
| 14 | | | | | $ 655 | | | |

Case 17-17238-PGH   Claim 3-1 Part 2   Filed 10/03/17   Page 2 of 2
**Exhibit 1: Brian Mayo Claims Summary against Veracity Network, Inc.**

Case # 17-17238-PGH

| | 8/1/2011 | 8/1/2012 | 8/1/2013 | 8/1/2014 | 8/1/2015 | | | |
|---|---|---|---|---|---|---|---|---|
| 15 | | | | | $ 347 | | | |
| 16 | | | | | $ 1,166 | | | |
| 17 | | | | | $ 1,292 | | | |
| 18 | | | | | $ 2,212 | | | |
| 19 | | | | | $ 955 | | | |
| 20 | | | | | $ 356 | | | |
| 21 | | | | | $ 1,656 | | | |
| 22 | | | | | $ 3,192 | | | |
| 23 | | | | | $ 693 | | | |
| 24 | | | | | $ 1,310 | | | |
| Total Expenses | $ 30,009 | $ 11,874 | $ 5,554 | $ - | $ 29,892 | | | $ 77,329 |

| Reimbursements | 8/1/2011 | 8/1/2012 | 8/1/2013 | 8/1/2014 | 8/1/2015 | | | |
|---|---|---|---|---|---|---|---|---|
| 6/14/2012 | | $ 1,532 | | | | | | |
| 2/24/2015 | | | | | $ 5,000 | | | |
| 3/30/2015 | | | | | $ 5,000 | | | |
| 4/8/2015 | | | | | $ 5,000 | | | |
| 5/22/2015 | | | | | $ 5,000 | | | |
| 6/30/2015 | | | | | $ 5,000 | | | |
| 7/9/2015 | | | | | $ 2,500 | | | |
| 8/24/2015 | | | | | $ 5,000 | | | |
| 9/15/2015 | | | | | $ 5,000 | | | |
| 9/23/2015 | | | | | $ 2,500 | | | |
| Total Reimbursements | | $1,532 | | | $ 40,000 | | | $ 41,532 |

| Net - Unreimbursed Expenses | | | | | | | | $ 35,797 |
|---|---|---|---|---|---|---|---|---|

| | 8/1/2011 | 8/1/2012 | 8/1/2013 | 8/1/2014 | 8/1/2015 | 8/1/2016 | 8/1/2017 | |
|---|---|---|---|---|---|---|---|---|
| Accrued Salary | | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | $1,069,000 |
| Pay received | | | | $ 11,000 | | | | |
| Claim Total | | | | | | | | $ 1,623,706 |

# Veracity Network Expense report

Case 17-17238-PGH    Claim 3-1 Part 3    Filed 10/03/17    Page 1 of 1

Milage Rate $0.41

For Office Use Only

**PURPOSE:** General Expenses

**PERIOD:**   From 5/29/2011
             To 8/2/2011

**EMPLOYEE INFORMATION:**

Name         Brian Mayo              Position   President/CEO
Department   Executive               Manager    BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 6/28/11 | | gas –Melbourne/FL | | 0.00 | 29.27 | | | | | $29.27 |
| 8/2/11 | | meeting with Gary Zimmerman | | 0.00 | | 25.20 | | | | $25.20 |
| 6/18/11 | | lunch | | 0.00 | | 7.42 | | | | $7.42 |
| 6/18/11 | | gas–Melbourne/FL | | 0.00 | 29.35 | | | | | $29.35 |
| 5/29/11 | | hotel–Orlando/FL | | 0.00 | 180.00 | | | | | $180.00 |
| 7/1/11 | | meeting with Chris Olenerek | | 0.00 | | 45.36 | | | | $45.36 |
| 6/27/2011 | | lunch-Atlanta | | 0.00 | | 9.33 | | | | $9.33 |
| 6/27/11 | | meeting w/ John Mellott | | 0.00 | | 143.77 | | | | $143.77 |
| 6/27/11 | | gas-Atlanta/GA | | 0.00 | 57.06 | | | | | $57.06 |
| 6/25/11 | | meeting w/John Hollenbach | | 0.00 | | 48.41 | | | | $48.41 |
| 6/25/11 | | gas–charlotte/NC | | 0.00 | 29.79 | | | | | $29.79 |
| 6/25/11 | | lunch-Charlotte/NC | | 0.00 | | 12.02 | | | | $12.02 |
| 6/27/11 | | parking-atlanta/GA | | 0.00 | 5.50 | | | | | $5.50 |
| 6/22/11 | | Hotel – Charlotte/NC | | 0.00 | 506.84 | | | | | $506.84 |
| 6/18/11 | | dinner-Orlando/FL | | 0.00 | | 21.30 | | | | $21.30 |
| 6/20/11 | | telephone supplies | | 0.00 | | | 31.79 | | | $31.79 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | $0.00 | $837.81 | $312.81 | $31.79 | $0.00 | $0.00 | |

|  |  |
|---|---|
| **Subtotal** | $ 1,182.41 |
| **Advances** | |
| **Total** | $ 1,182.41 |

APPROVED:

# Veracity Network Expense report

For Office Use Only

Milage Rate  **$0.41**

**PURPOSE:** Veracity Network Incorporation

**EMPLOYEE INFORMATION:**

Name  Brian Mayo

Department  Executive  G & A

**PERIOD:**

Position  CEO/President

Manager  Board of Directors

From  18-May-11

To  28-Aug-11  4/30/11  EP 2

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/19/11 | | hosting | | 0.00 | | | | | 101.64 | $101.64 |
| 05/19/11 | | Phone charger | | 0.00 | | | | | | $17.11 |
| 05/20/11 | | lunch meeting w/John Moore, Fred Malik | | 0.00 | | 17.11 | | | | $37.45 |
| 06/03/11 | | legal-Gunster Yoakley | | 0.00 | 37.45 | | | | | $37.45 |
| | | Capital) | | 0.00 | | | | (A) | 2,486.64 | $2,486.64 |
| 06/12/11 | | airfare NYC to Charlotte | | 0.00 | | 25.68 | | | | $25.68 |
| 06/24/11 | | hotel - Charlotte | | 0.00 | 159.70 | | | | | $159.70 |
| 06/19/11 | | rental car - NJ  (on 6/20 EP) | | 0.00 | 502.49 | | | | | $502.49 |
| 06/22/11 | | shuttle service - EWR to JFK | | 0.00 | 32.01 | | | | | $32.01 |
| 06/19/11 | | hotel - Groton, CT | | 0.00 | 31.00 | | | | | $31.00 |
| 06/14/11 | | legal retainer - Stevens & Lee | | 0.00 | 62.71 | | | | | $62.71 |
| 06/14/11 | | Gunster, Yoakley legal fees | | 0.00 | | | | (A) | 5,000.00 | $5,000.00 |
| 07/28/11 | | | | 0.00 | | | | (A) | 10,865.40 | $10,865.40 |
| 07/28/11 | | Airfare NCPD conference (Las Vegas, NV) | | 0.00 | 392.00 | | | | | $392.00 |
| 6/26/11 | | lunch-charlotte | | 0.00 | | 7.89 | | | | $7.89 |
| 6/28/11 | | lunch - Georgia | | 0.00 | | 11.64 | | | | $11.64 |
| 6/28/11 | | gas-Charlotte | | 0.00 | 45.98 | | | | | $45.98 |
| 7/14/11 | | meeting w/Bob Prindiville | | 0.00 | | 81.50 | | | | $81.50 |

|  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | $0.00 | $1,542.83 | $164.16 | $17.11 | $0.00 | $18,453.68 | |

Subtotal  $

Advances

Total  $  20,177.51

**APPROVED:**

(A) Legal -01  13352.04
(A) Retaine 13200  5000.00

69400
64400

1143.88

19,828.83

US Received at 6/30/11

# Veracity Network Expense report

Mileage Rate  $0.41

For Office Use Only

**PURPOSE:** General

**PERIOD:** From 6/1/2011  To 7/31/2011

**EMPLOYEE INFORMATION:**

Name  Brian Mayo    Position  President/CEO

Department  Executive    Manager  BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 6/19/11 | | lunch-Newark/NJ | | 0.00 | | 8.44 | | | | $8.44 |
| 6/21/11 | | tolls-NJ | | 0.00 | 8.85 | | | | | $8.85 |
| 6/21/11 | | breakfast-NJ | | 0.00 | | 7.92 | | | | $7.92 |
| 6/19/11 | | lunch-CT | | 0.00 | | 6.30 | | | | $6.30 |
| 6/20/11 | | lunch-CT | | 0.00 | | 9.11 | | | | $9.11 |
| 6/20/11 | | gas-CT | | 0.00 | 29.11 | | | | | $29.11 |
| 6/19/11 | | breakfast-FL | | 0.00 | | 7.11 | | | | $7.11 |
| 6/19/11 | | hotel-Groton/CT | | 0.00 | 62.71 | | | | | $62.71 |
| 6/18/11 | | dinner-Orlando/FL | | 0.00 | 50.00 | | | | | $50.00 |
| 6/18/11 | | hotel-Orlando/FL | | 0.00 | 122.63 | | | | | $122.63 |
| 6/24/11 | | parking-Charlotte/NC | | 0.00 | 10.00 | | | | | $10.00 |
| 6/24/11 | | lunch-Charlotte/NC | | 0.00 | | 15.57 | | | | $15.57 |
| 6/23/11 | | mtg w/Hugh Thompson | | 0.00 | 87.00 | | | | | $87.00 |
| 6/23/11 | | lunch-Charlotte/NC | | 0.00 | | 26.71 | | | | $26.71 |
| 6/24/11 | | breakfast-Charlotte/NC | | 0.00 | | 5.67 | | | | $5.67 |
| 6/22/11 | | lunch-NYC/NY | | 0.00 | | 11.14 | | | | $11.14 |
| 6/22/11 | | car rental- Newark/NJ | | 0.00 | 321.01 | | | | | $321.01 |
| | | | | $0.00 | $691.31 | $97.97 | $0.00 | $0.00 | $0.00 | |

Subtotal  $  789.28

Advances

Total  $  789.28

APPROVED: _____

# Veracity Network Expense report

Case 17-17238-PGH    Claim 3-1 Part 6    Filed 10/03/17    Page 1 of 1

Milage Rate  $0.41

*For Office Use Only*

**PURPOSE:** General

**PERIOD:**  From  6/1/2011
To  7/31/2011

**EMPLOYEE INFORMATION:**

Name  brian mayo        Position  Preisdent/CEO

Department  Executive        Manager  BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/22/11 | | gas-Newark/NJ | | 0.00 | 43.58 | | | | | $43.58 |
| 6/21/11 | | meeting w/Walter Helfrecht, William Mayo | | 0.00 | | 99.66 | | | | $99.66 |
| 6/23/11 | | gas-Charlotte/NC | | 0.00 | 33.75 | | | | | $33.75 |
| 6/22/11 | | tolls-Newark/NJ | | 0.00 | 11.00 | | | | | $11.00 |
| 6/24/11 | | lunch-Charlotte/NC | | 0.00 | | 11.69 | | | | $11.69 |
| 6/22/11 | | breakfast-Newark/NJ | | 0.00 | | 3.84 | | | | $3.84 |
| 6/28/11 | | hotel-atlanta/GA | | 0.00 | 296.70 | | | | | $296.70 |
| 6/25/11 | | gas-charlotte/NC | | 0.00 | 36.27 | | | | | $36.27 |
| 6/22/11 | | dinner-Charlotte/NC | | 0.00 | | 23.06 | | | | $23.06 |
| 6/24/11 | | lunch-Charlotte/NC | | 0.00 | | 17.02 | | | | $17.02 |
| 6/8/11 | | web domain services- Go Daddy | | 0.00 | | | | | 35.88 | $35.88 |
| 6/18/11 | | sunpass- tolls | | 0.00 | 30.00 | | | | | $30.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | $0.00 | $451.30 | $155.27 | $0.00 | $0.00 | $35.88 | |

Subtotal  $  642.45

Advances

Total  $  642.45

APPROVED:

Case 17-17238-PGH    Claim 3-1 Part 7    Filed 10/03/17    Page 1 of 1

# Veracity Network Expense report

Mileage Rate  $0.41

**PURPOSE:** General

**PERIOD:**

From 6/19/2011

To 8/20/2011

*For Office Use Only*

**EMPLOYEE INFORMATION:**

Name brian mayo

Department Executive

Position Preisdent/CEO

Manager BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 8/12/11 | | phone | | 0.00 | | | 178.35 | | | $178.35 |
| 8/13/11 | | phone battery | | 0.00 | | | 53.49 | | | $53.49 |
| 7/29/11 | | Hard Drive - Data backup | | 0.00 | | | | | 95.96 | $95.96 |
| 7/23/11 | | Investor Meeting - Alan Bollinger | | 0.00 | | | | 262.75 | | $262.75 |
| 8/7/11 | | car rental - Newark, NJ | | 0.00 | 396.39 | | | | | $396.39 |
| 8/7/11 | | airfare - Palm Beach/Newark NJ | | 0.00 | 532.00 | | | | | $532.00 |
| 8/7/11 | | milage- Vero to Palm Beach airport | 160 | 65.60 | | | | | | $65.60 |
| 8/20/11 | | hotel - Las Vegas, NV | | 0.00 | 309.12 | | | | | $309.12 |
| 6/19/11 | | hotel - Groton, CT | | 0.00 | 62.71 | | | | | $62.71 |
| 6/22/11 | | hotel - Charlotte, NC | | 0.00 | 502.49 | | | | | $502.49 |
| 6/26/11 | | hotel - Atlanta, GA | | 0.00 | 296.70 | | | | | $296.70 |
| 6/19/11 | | airfare change - Newark, NJ | | 0.00 | 5.00 | | | | | $5.00 |
| 6/22/11 | | airfare - Charlotte | | 0.00 | 159.70 | | | | | $159.70 |
| 8/15/11 | | hotel-Orlando | | 0.00 | 113.63 | | | | | $113.63 |
| 8/10/11 | | gas | | 0.00 | 32.33 | | | | | $32.33 |
| 8/10/11 | | lunch - Newark, NJ | | 0.00 | | 9.08 | | | | $9.08 |
| 8/8/11 | | breakfast - NYC | | 0.00 | | 12.25 | | | | $12.25 |
| | | | | $65.60 | $2,410.07 | $21.33 | $231.84 | $262.75 | $95.96 | |

| | | |
|---|---|---|
| | **Subtotal** | $ 3,087.55 |
| | **Advances** | |
| | **Total** | $ 3,087.55 |

APPROVED:

Case 17-17238-PGH    Claim 3-1 Part 8    Filed 10/03/17    Page 1 of 1

# Veracity Network Expense report

Milage Rate  $0.41

For Office Use Only

**PURPOSE:** General

**PERIOD:**  From  6/17/2011
  To  8/16/2011

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

Position  Preisdent/CEO

Manager  BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/10/11 | | gas | | 0.00 | 30.27 | | | | | $30.27 |
| 8/10/11 | | breakfast - Newark, NJ | | 0.00 | | 4.38 | | | | $4.38 |
| 8/15/11 | | milage - Vero Beach/Orlando (roundtrip) | 210 | 86.10 | | | | | | $86.10 |
| 8/7/11 | | lunch | | 0.00 | | 2.99 | | | | $2.99 |
| 8/12/11 | | investor meeting - John Mellott | | 0.00 | | | | 36.54 | | $36.54 |
| 8/10/11 | | parking - Wilmington, DE | | 0.00 | 7.00 | | | | | $7.00 |
| 8/12/11 | | Investor meeting - Bob Prindiville | | 0.00 | | 71.41 | | | | $71.41 |
| 8/16/11 | | breakfast - Orlando, Fl | | 0.00 | | 1.91 | | | | $1.91 |
| 8/8/11 | | dinner - Allentown, NJ | | 0.00 | | 19.00 | | | | $19.00 |
| 8/8/11 | | breakfast - Hamilton, NJ | | 0.00 | | 7.40 | | | | $7.40 |
| 8/8/11 | | taxi - NYC | | 0.00 | 9.20 | | | | | $9.20 |
| 8/11/11 | | dinner meeting - Kim Salbello | | 0.00 | | | | 48.46 | | $48.46 |
| 8/7/11 | | lunch - Edison, NJ | | 0.00 | | 4.38 | | | | $4.38 |
| 8/1/11 | | investor meeting - Keith Binkley | | 0.00 | | | | 37.10 | | $37.10 |
| 8/6/11 | | investor meeting - John Mellott | | 0.00 | | | | 244.72 | | $244.72 |
| 6/17/11 | | investor meeting - John Moore | | 0.00 | | | | 65.17 | | $65.17 |
| | | | | 0.00 | | | | ‖‖‖‖‖‖‖‖‖‖‖‖ | | $0.00 |
| | | | | $86.10 | $46.47 | $111.47 | $0.00 | $431.99 | $0.00 | |

| | | |
|---|---|---|
| Subtotal | $ | 676.03 |
| Advances | | |
| Total | $ | 676.03 |

APPROVED:

Case 17-17238-PGH    Claim 3-1 Part 9    Filed 10/03/17    Page 1 of 1

# Veracity Network Expense report

Milage Rate [ $0.41 ]

For Office Use Only

**PURPOSE:** General

**PERIOD:**
From  8/7/2011
To  9/1/2011

**EMPLOYEE INFORMATION:**

| Name | brian mayo | Position | Preisdent/CEO |
| Department | Executive | Manager | BoD |

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/7/11 | | tolls- New Jersey | | 0.00 | 14.85 | | | | | $14.85 |
| 8/10/11 | | parking - West Palm | | 0.00 | 61.95 | | | | | $61.95 |
| 8/8/11 | | train - NJ to NYC (roundtrip) | | 0.00 | 30.00 | | | | | $30.00 |
| 8/19/11 | | lunch - Las Vegas, NV | | 0.00 | | 21.48 | | | | $21.48 |
| 8/18/11 | | lunch - Las Vegas, NV | | 0.00 | | 29.38 | | | | $29.38 |
| 8/16/11 | | dinner - Las Vegas, NV | | 0.00 | | 52.32 | | | | $52.32 |
| 8/8/11 | | taxi - NYC | | 0.00 | 4.60 | | | | | $4.60 |
| 8/17/11 | | breakfast - Las Vegas, NV | | 0.00 | | 12.38 | | | | $12.38 |
| 8/17/11 | | taxi - Las Vegas, NV | | 0.00 | 13.70 | | | | | $13.70 |
| 8/18/11 | | taxi - Las Vegas, NV | | 0.00 | 17.50 | | | | | $17.50 |
| 8/19/11 | | breakfast - Las Vegas, NV | | 0.00 | | 13.00 | | | | $13.00 |
| 8/17/11 | | Chawla | | 0.00 | | | | 250.80 | | $250.80 |
| 8/16/11 | | transit - Las Vegas, NV | | 0.00 | 7.00 | | | | | $7.00 |
| 8/17/11 | | conference supplies | | 0.00 | | | | | 27.03 | $27.03 |
| 8/18/11 | | breakfast - Las Vegas, NV | | 0.00 | | 6.56 | | | | $6.56 |
| 8/17/11 | | lunch - Las Vegas, NV | | 0.00 | | 15.13 | | | | $15.13 |
| 8/19/11 | | dinner - Las Vegas, NV | | 0.00 | | 57.10 | | | | $57.10 |
| | | | | $0.00 | $149.60 | $207.35 | $0.00 | $250.80 | $27.03 | |

Subtotal | $ | 634.78
Advances |
Total | $ | 634.78

APPROVED:

# Veracity Network Expense report

Milage Rate  $0.41

For Office Use Only

**PURPOSE:** General

**PERIOD:**  From  8/1/2011
 To  9/1/2011

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

Position  Preisdent/CEO

Manager  BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 8/17/11 | | taxi - Las Vegas, NV | | 0.00 | 15.36 | | | | | $15.36 |
| 8/19/11 | | lunch - Las Vegas, NV | | 0.00 | | 12.37 | | | | $12.37 |
| 8/19/11 | | taxi - Las Vegas, NV | | 0.00 | 19.25 | | | | | $19.25 |
| 8/18/11 | | transit - Las Vegas, NV | | 0.00 | 5.00 | | | | | $5.00 |
| 8/20/11 | | lunch - Las Vegas, NV | | 0.00 | | 25.92 | | | | $25.92 |
| 8/16/11 | | dinner - Las Vegas, NV | | 0.00 | | 27.78 | | | | $27.78 |
| 8/17/11 | | breakfast - Las Vegas, NV | | 0.00 | | 18.27 | | | | $18.27 |
| 8/16/11 | | taxi - Las Vegas, NV | | 0.00 | 31.00 | | | | | $31.00 |
| 8/16/11 | | dinner - Las Vegas, NV | | 0.00 | | 58.18 | | | | $58.18 |
| 8/16/11 | | transit - Las Vegas, NV | | 0.00 | 7.00 | | | | | $7.00 |
| 8/19/11 | | transit - Las Vegas, NV | | 0.00 | 7.00 | | | | | $7.00 |
| 8/20/11 | | lunch - Las Vegas, NV | | 0.00 | | 36.92 | | | | $36.92 |
| 8/16/11 | | taxi - Las Vegas,NV | | 0.00 | 23.00 | | | | | $23.00 |
| 8/19/11 | | taxi - Las Vegas,NV | | 0.00 | 23.00 | | | | | $23.00 |
| 8/18/11 | | taxi - Las Vegas,NV | | 0.00 | 16.00 | | | | | $16.00 |
| 8/10/11 | | lunch - Wilmington, DE | | 0.00 | | 4.38 | | | | $4.38 |
| 8/16/11 | | airfare -Orlando/Las Vegas, NV | | 0.00 | 372.00 | | | | | $372.00 |
| | | | | $0.00 | $518.61 | $183.82 | $0.00 | $0.00 | $0.00 | |

Subtotal  $  702.43

Advances

Total  $  702.43

APPROVED:

# Veracity Network Expense report

Mlage Rate [ $0.41 ]

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name      brian mayo
Department  Executive

**PERIOD:**    From  8/1/2011
              To    9/1/2011

Position   Preisdent/CEO
Manager    BoD

*For Office Use Only*

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 8/8/11 | | conference fee :NCPD (Atlantic Biologicals) | | 0.00 | | | | | 875.50 | $875.50 |
| 8/8/11 | | godaddy domain name | | 0.00 | | | | | 12.17 | $12.17 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $887.67 | |

Subtotal | $ | 887.67
Advances |
Total | $ | 887.67

APPROVED: _____

# Veracity Network Expense report

For Office Use Only

Mileage Rate    $0.41

**PURPOSE:** Storage Facility

**EMPLOYEE INFORMATION:**

Name    brian mayo

Department Executive

**PERIOD:**

From    5/1/2012
To    4/1/2015

Position    President/CEO
Manager    BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/5/12 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 6/5/12 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 7/5/12 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 8/5/12 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 9/5/12 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 10/5/12 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 11/5/12 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 12/5/12 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 1/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 2/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 3/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 4/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 5/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 6/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 7/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 8/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 9/5/13 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | |

Subtotal    $    $5,457.00

Advances    $

Total    $    5,457.00

Misc. column total: $5,457.00

**APPROVED:** _[signature]_    5/6/2015

Exhibit 2

**Grid Showing Payment Amounts**
**Secured, Revolving, Demand Promissory Note**
  **Between Veracity Network, Inc. and Brian Mayo**
**Dated: July 28, 2011**
**Amended: Nov 11, 2015**

| Date | Paid-in Principal | Interest | Repayment | Balance |
|---|---|---|---|---|
| 7/28/2011 | $ 150,000.00 | | | $ 150,000.00 |
| 9/14/2011 | | | $1,000 | $ 149,000.00 |
| 10/31/2011 | $ 50,000.00 | | | $ 200,000.00 |
| 7/28/2012 | | $ 26,820.00 | | $ 226,820.00 |
| 10/31/2012 | | $ 9,000.00 | | $ 235,820.00 |
| 7/28/2013 | | $ 31,827.60 | | $ 267,647.60 |
| 10/31/2013 | | $ 10,620.00 | | $ 278,267.60 |
| 7/28/2014 | | $ 37,556.57 | | $ 315,824.17 |
| 10/31/2014 | | $ 12,531.60 | | $ 328,355.77 |
| 7/28/2015 | | $ 44,316.75 | | $ 372,672.52 |
| 10/31/2015 | | $ 14,787.29 | | $ 387,459.81 |
| 7/28/2016 | | $ 52,293.77 | | $ 439,753.57 |
| 10/31/2016 | | $ 17,449.00 | | $ 457,202.57 |
| 7/28/2017 | | $ 61,706.64 | | $ 518,909.21 |

# Veracity Network Expense report

Mileage Rate  $0.41

For Office Use Only

**PURPOSE:** Storage Facility

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department Executive

**PERIOD:**

From 10/1/2013

To 4/1/2015

Position President/CEO

Manager BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 10/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 11/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 12/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 1/5/14 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 2/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 3/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 4/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 5/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 6/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 7/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 8/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 9/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 10/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 11/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 12/5/13 | | Sebastian Storage Facility | 0.00 | | | | | | 321.00 | $321.00 |
| 1/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 2/5/14 | | Sebastian Storage Facility | | 0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 321.00 | $321.00 |
| | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,457.00 | $5,457.00 |

| | |
|---|---|
| **Subtotal** | $  5,457.00 |
| **Advances** | |
| **Total** | $  5,457.00 |

APPROVED: _Bill Mayo_  4/16/2015

# Veracity Network Expense report

Milage Rate $0.41

For Office Use Only

**PURPOSE:** General

**PERIOD:** From 8/1/2011 To 11/1/2011

**EMPLOYEE INFORMATION:**

Name: brian mayo

Department: Executive

Position: Preisdent/CEO

Manager: BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/20/11 | | Central Phone Service for company | 0.00 | 0.00 | | | 33.00 | | | $33.00 |
| 10/2/11 | | airfare - Washington DC | 0.00 | 0.00 | 247.40 | | | | | $247.40 |
| 10/4/11 | | hotel - Washington DC | 0.00 | 0.00 | 564.62 | | | | | $564.62 |
| 8/24/11 | | office supplies | 0.00 | 0.00 | | | | | 1.28 | $1.28 |
| 9/15/11 | | meeting - Steve MacIlacken | 0.00 | 0.00 | | | | 23.54 | | $23.54 |
| 9/16/11 | | office supplies | 0.00 | 0.00 | | | | | 38.78 | $38.78 |
| 10/19/11 | | meeting - Keith Binkley | 0.00 | 0.00 | | | | 26.75 | | $26.75 |
| 10/16/11 | | meeting - Mr & Mrs John Mellott | 0.00 | 0.00 | | | | 142.68 | | $142.68 |
| 10/13/11 | | dinner | 0.00 | 0.00 | | 17.87 | | | | $17.87 |
| 10/13/11 | | lunch | 0.00 | 0.00 | | 11.27 | | | | $11.27 |
| 10/13/11 | | breakfast | 0.00 | 0.00 | | 5.92 | | | | $5.92 |
| 10/12/11 | | dinner | 0.00 | 0.00 | | 22.39 | | | | $22.39 |
| 10/12/11 | | breakfast | 0.00 | 0.00 | | 4.80 | | | | $4.80 |
| 10/12/11 | | lunch | 0.00 | 0.00 | | 27.65 | | | | $27.65 |
| 10/11/11 | | dinner | 0.00 | 0.00 | | 37.35 | | | | $37.35 |
| 10/11/11 | | lunch | 0.00 | 0.00 | | 18.56 | | | | $18.56 |
| 10/10/11 | | office supplies | | 0.00 | | | | | 36.00 | $36.00 |
| | | | | $0.00 | $812.02 | $145.81 | $33.00 | $192.97 | $76.06 | |

**APPROVED:**

Subtotal: $ 1,259.86

Advances:

Total: $ 1,259.86

# Veracity Network Expense report

For Office Use Only

Mileage Rate  $0.41

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name  brian mayo    Position  Preisdent/CEO

Department  Executive    Manager  BoD

**PERIOD:**    From  10/1/2011
To  11/1/2011

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/11 | | mileage- Sebastian to Orlando Airport | 168 | 68.88 | | | | | | $68.88 |
| 10/1/11 | | lunch | | 0.00 | | 6.63 | | | | $6.63 |
| 10/2/11 | | dinner | | 0.00 | | 38.00 | | | | $38.00 |
| 10/7/11 | | meeting - Mark Tirone | | 0.00 | | | | 42.00 | | $42.00 |
| 10/13/11 | | train | | 0.00 | 2.20 | | | | | $2.20 |
| 10/13/11 | | parking - Orlando | | 0.00 | 30.00 | | | | | $30.00 |
| 10/13/11 | | taxi | | 0.00 | 9.50 | | | | | $9.50 |
| 10/12/11 | | taxi | | 0.00 | 24.00 | | | | | $24.00 |
| 10/12/11 | | taxi | | 0.00 | 23.00 | | | | | $23.00 |
| 10/11/11 | | taxi | | 0.00 | 17.50 | | | | | $17.50 |
| 10/13/11 | | tolls- orlando | | 0.00 | 3.00 | | | | | $3.00 |
| 10/11/11 | | taxi | | 0.00 | 27.00 | | | | | $27.00 |
| 10/11/11 | | taxi | | 0.00 | 26.25 | | | | | $26.25 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | $68.88 | $162.45 | $44.63 | $0.00 | $42.00 | $0.00 | |

Subtotal  $    317.96
Advances  $
Total  $    317.96

APPROVED: _____



# Veracity Network Expense report

*For Office Use Only*

Mileage Rate | $0.41

**PURPOSE:** Storage Facility

**EMPLOYEE INFORMATION:**

Name ___brian mayo___

Department ___Executive___

Position ___President/CEO___

Manager ___BoD___

**PERIOD:**   From ___3/1/2014___

To ___4/6/2015___

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 3/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 4/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 5/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 6/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 7/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 8/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 9/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 10/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 11/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 12/5/14 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 1/5/15 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 2/5/15 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 3/5/15 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| 4/5/15 | | Sebastian Storage Facility | | 0.00 | | | | | 321.00 | $321.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $4,494.00 | |

APPROVED: _____

Subtotal $ 4,494.00

Advances

Total $ 4,494.00

# Veracity Network Expense report

For Office Use Only

Milage Rate  $0.41

**PURPOSE:** Operational - 2012

**PERIOD:**   From  6/1/2013
To  8/30/2013

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

Position  Preisdent/CEO

Manager  BoD

| Date | Account | Description | Milage Others | Travel | Meal | Phone Entertainment | Misc | Total |
|------|---------|-------------|----------------|--------|------|---------------------|------|-------|
| 6/1/12 | | Storage facility rental - Sebastian FL | 0.00 | | | | 321.00 | $321.00 |
| 7/5/12 | | Storage facility rental - Sebastian FL | 0.00 | | | | 321.00 | $321.00 |
| 8/5/12 | | Storage facility rental - Sebastian FL | 0.00 | | | | 321.00 | $321.00 |
| 9/5/12 | | Storage facility rental - Sebastian FL | 0.00 | | | | 321.00 | $321.00 |
| 10/5/12 | | Storage facility rental - Sebastian FL | 0.00 | | | | 321.00 | $321.00 |
| 11/5/12 | | Storage facility rental - Sebastian FL | 0.00 | | | | 321.00 | $321.00 |
| 12/5/12 | | Storage facility rental - Sebastian FL | 0.00 | | | | 321.00 | $321.00 |
| 1/20/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 33.00 | $33.00 |
| 2/20/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 33.00 | $33.00 |
| 3/20/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 38.00 | $38.00 |
| 5/5/12 | | Storage facility rental - Sebastian FL | 0.00 | | | | 321.00 | $321.00 |
| 5/21/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 37.97 | $37.97 |
| 6/21/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 37.97 | $37.97 |
| 7/21/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 37.92 | $37.92 |
| 8/21/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 37.92 | $37.92 |
| 9/21/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 40.11 | $40.11 |
| 10/20/12 | | Corporate Telephone - Ring Central | 0.00 | | | | 40.11 | $40.11 |
| | | | $0.00 | $0.00 | $0.00 | $0.00 | $2,904.00 | $40.11 |

|  | |
|--|--|
| Subtotal | $ 2,904.00 |
| Advances | |
| Total | $ 2,904.00 |

**APPROVED:**

Report 1

# Veracity Network Expense report

For Office Use Only

Mileage Rate [ $0.41 ]

**PURPOSE:** Investors

**EMPLOYEE INFORMATION:**

Name: brian mayo

Department: Executive

**PERIOD:** From: 6/1/2013  To: 6/15/2013

Position: President/CEO

Manager: BoD

| Date | Location | Description | Breakfast | Lunch | Dinner | Travel | Hotel | Entertainment | Misc | Total |
|------|----------|-------------|-----------|-------|--------|--------|-------|---------------|------|-------|
| 2/15/13 | | Investor meeting w/Ed Mallia | | | | 0.00 | | 51.07 | | $51.07 |
| 3/13/12 | | Investor meeting w/Bob Prindiville | | | | 0.00 | | 124.14 | | $124.14 |
| 5/7/13 | | Investor meeting w/ Ed Hardy | | | | 0.00 | | 58.82 | | $58.82 |
| 1/21/13 | | Investor meeting w/ Amy Honey | | | | 0.00 | | 101.00 | | $101.00 |
| 11/21/12 | | Investor meeting w/ Rob Votaw | | | | 0.00 | | 100.14 | | $100.14 |
| 11/9/12 | | Investor meeting w/ Rob Votaw | | | | 0.00 | | 30.18 | | $30.18 |
| 2/4/13 | | Investor meeting w/ Brian Clemente | | | | 0.00 | | 59.93 | | $59.93 |
| 12/20/12 | | Investor meeting with Artemis Group | | | | 0.00 | | 283.83 | | $283.83 |
| 11/26/12 | | Investor meeting with I4 Capital Partners | | | | 0.00 | | 75.90 | | $75.90 |
| 2/14/13 | | Investor meeting w/John Melliot (Bain) | | | | 0.00 | | 179.08 | | $179.08 |
| 4/20/12 | | Investor meeting w/Rusty Cappelen | | | | 0.00 | | 30.98 | | $30.98 |
| 4/15/13 | | Investor meeting w/Mark Titone | | | | 0.00 | | 24.27 | | $24.27 |
| 7/10/12 | | Recruiting meeting w/Charles Dozier | | | | 0.00 | | 42.79 | | $42.79 |
| 7/11/12 | | Strategy meeting w/Al Gapsch | | | | 0.00 | | 20.83 | | $20.83 |
| 1/10/12 | | Organizational meeting w/ Al Gapsch | | | | 0.00 | | 45.74 | | $45.74 |
| 4/28/12 | | Investor meeting w/John Taylor | | | | 0.00 | | 53.55 | | $53.55 |
| 5/6/12 | | Investor meeting w/John Melliot (Bain) | | | | 0.00 | | 59.71 | | $59.71 |
| | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,341.96 | $0.00 | |

|  |  |
|--|--|
| Subtotal | $ 1,341.96 |
| Advances | $ — |
| **Total** | **$ 1,341.96** |

**APPROVED:** _____

Report 3

# Veracity Network Expense report

For Office Use Only

Millage Rate $0.41

**PURPOSE:** Operational -2012

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

Position  Preisdent/CEO

Manager  BoD

**PERIOD:**

From  6/1/2013
To  6/30/2013

| Date | Description | Mileage | | | Phone | | | Amount | Total |
|------|-------------|---------|------|------|--------|------|------|--------|-------|
| 11/20/12 | Corporate Telephone - Ring Central | 0.00 | | | | | | 40.16 | $40.16 |
| 12/20/12 | Corporate Telephone - Ring Central | 0.00 | | | | | | 40.16 | $40.16 |
| 10/1/12 | Tolls - Orlando (14 Capital Partners mtgs) | 0.00 | 23.59 | | | | | 23.59 | $23.59 |
| 8/31/12 | Website Domain charges | 0.00 | | | | | | 70.31 | $70.31 |
| 1/5/12 | Phone | 0.00 | | | 213.99 | | | 213.99 | $213.99 |
| 4/27/12 | mail - NB Instruments | 0.00 | | | | | | 17.42 | $17.42 |
| 4/27/12 | mail supplies | 0.00 | | | | | | 2.46 | $2.46 |
| 1/14/12 | office supplies | 0.00 | | | | | | 9.62 | $9.62 |
| 1/15/12 | office supplies | 0.00 | | | | | | 84.64 | $84.64 |
| 1/4/12 | office services - copies | 0.00 | | | | | | 52.87 | $52.87 |
| 6/9/12 | office supplies | 0.00 | | | | | | 127.60 | $127.60 |
| 9/18/12 | mail - NB Instruments | 0.00 | | | | | | 2.49 | $2.49 |
| 11/2/12 | mail - contracts | 0.00 | | | | | | 18.95 | $18.95 |
| 11/10/12 | mail supplies | 0.00 | | | | | | 63.22 | $63.22 |
| 3/17/13 | office supplies | 0.00 | | | | | | 89.51 | $89.51 |
| 5/17/13 | office supplies | 0.00 | | | | | | 22.44 | $22.44 |
| 5/10/13 | mail - contracts | 0.00 | | | | | | 5.80 | $5.80 |
| | | $0.00 | $23.59 | $0.00 | $213.99 | $0.00 | $0.00 | $647.65 | |

| | |
|---|---|
| Subtotal | $ 885.23 |
| Advances | |
| Total | $ 885.23 |

APPROVED: _____

Report 2

# Veracity Network Expense report

For Office Use Only

**PURPOSE:** General

Milage Rate  $0.41

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

**PERIOD:**    From  6/1/2013
           To  6/15/2013

Position  President/CEO

Manager  BoD

| Date | Account | Description | Miles | Travel Lodging | Dinner | Misc | Entertainment | Public | Total |
|------|---------|-------------|-------|----------------|--------|------|---------------|--------|-------|
| 11/26/12 | | Travel - Vero Beach/Orlando (14 mtg) | 228 | 93.48 | | | | | $93.48 |
| 12/2/12 | | Travel - Vero Beach/Orlando (14 mtg) | 228 | 93.48 | | | | | $93.48 |
| 12/2/12 | | Dinner - Orlando Trip | | 0.00 | | 69.17 | | | $69.17 |
| 11/26/12 | | Dinner - Orlando Trip w/Al | | 0.00 | | 85.83 | | | $85.83 |
| 3/10/13 | | Travel - Boca Raton (New World Angels) | 208 | 85.28 | | | | | $85.28 |
| 3/10/13 | | Dinner - NWA trip | | 0.00 | | 50.83 | | | $50.83 |
| 10/4/12 | | Travel - Vero Beach/Orlando (14 mtg) | 228 | 93.48 | | | | | $93.48 |
| 10/11/12 | | Travel - Vero Beach/Orlando (14 mtg) | 228 | 93.48 | | | | | $93.48 |
| 10/19/12 | | Travel - Vero Beach/Orlando (14 mtg) | 228 | 93.48 | | | | | $93.48 |
| 3/16/13 | | Investor Meeting w/Mark Harstein | | 0.00 | | | | 43.42 | $43.42 |
| 3/13/13 | | Investor Meeting w/Doug Frye | | 0.00 | | | | 15.32 | $15.32 |
| 1/15/13 | | Investor Meeting w/Hugh Thompson | | 0.00 | | | | 74.20 | $74.20 |
| 1/11/13 | | Investor Meeting w/Tom Cook | | 0.00 | | | | 64.85 | $64.85 |
| 6/30/12 | | Investor Meeting w/Ralph Rosato | | 0.00 | | | | 20.12 | $20.12 |
| 4/10/13 | | Investor Mtg w/Mark Titone, Ed Mallia | | 0.00 | | | | 151.51 | $151.51 |
| 4/19/13 | | Investor Mtg w/Rob Votaw | | 0.00 | | | | 65.78 | $65.78 |
| 5/8/13 | | Investor Mtg w/John Mellot, John Taylor | | 0.00 | | | | 166.06 | $166.06 |
| | | | | $552.68 | $0.00 | $205.83 | $0.00 | $601.26 | |

| | | |
|---|---|---|
| | Subtotal | $ 1,359.77 |
| | Advances | $0.00 |
| | **Total** | $ 1,359.77 |

**APPROVED:**

Report 4

# Veracity Network Expense report

Milage Rate  $0.41

For Office Use Only

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name: brian mayo  | Position: President/CEO

Department: Executive  | Manager: BoD

**PERIOD:**  From 6/1/2013  To 6/15/2013

| Date | Description | | Travel | Meals | Phone | Miscellaneous | Sales | Total |
|------|-------------|--|--------|-------|-------|---------------|-------|-------|
| 3/19/13 | Conference/Office Supplies | 0.00 | | | | | 82.93 | $82.93 |
| 3/18/13 | Conference/Office Supplies | 0.00 | | | | | 29.32 | $29.32 |
| 3/19/13 | Office Equipment - Backup Drive | 0.00 | | | | | 85.59 | $85.59 |
| 12/10/11 | Office Equipment - Computer Accessories | 0.00 | | | | | 42.79 | $42.79 |
| 12/1/11 | Investor Meeting w/Tony Pinto | 0.00 | | | | 22.26 | | $22.26 |
| 6/12/13 | Office services - Norton renewal | 0.00 | | | | | 32.09 | $32.09 |
| 5/10/13 | Conference Registration | 0.00 | | | | | 35.00 | $35.00 |
| 5/6/12 | Investor Meeting w/Bob Prindiville | 0.00 | | | | 58.71 | | $58.71 |
| 1/5/13 | storage facility rental - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 2/5/13 | storage facility rental - Sebastian, Fl. | 0.00 | | | | | 321.00 | $321.00 |
| 3/5/13 | storage facility rental - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 4/5/13 | storage facility rental - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 5/5/13 | storage facility rental - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 6/5/13 | storage facility rental - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 10/25/12 | Travel - Atlanta (Bain)- car rental | 0.00 | 137.77 | | | | | $137.77 |
| 9/17/12 | Postage - India (NB Instruments) | 0.00 | | | | 66.68 | | $66.68 |
| 1/16/12 | Investor mtg w/Rusty Cappellen | 0.00 | | | | 14.83 | | $14.83 |
| | | $0.00 | $137.77 | $0.00 | $0.00 | $95.80 | $2,300.40 | |

**APPROVED:** _____

Subtotal  $  2,533.97

Advances

Total  $  2,533.97

Report 5

# Veracity Network Expense report

For Office Use Only

Milage Rate | $0.41

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name    brian mayo

Department    Executive

**PERIOD:**

From    8/1/2013

To    6/15/2013

Position    President/CEO

Manager    BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/2/13 | | Godaddy website hosting service | 0.00 | | | | | | 34.05 | $34.05 |
| 1/20/13 | | Telephone - Ringcentral | 0.00 | | | | 40.16 | | | $40.16 |
| 2/20/13 | | Telephone - Ringcentral | 0.00 | | | | 40.14 | | | $40.14 |
| 3/20/13 | | Telephone - Ringcentral | 0.00 | | | | 40.14 | | | $40.14 |
| 4/20/13 | | Telephone - Ringcentral | 0.00 | | | | 40.11 | | | $40.11 |
| 5/20/13 | | Telephone - Ringcentral | 0.00 | | | | 39.24 | | | $39.24 |
| 10/27/11 | | Communication Equipment | 0.00 | | | | | | 334.35 | $334.35 |
| 7/28/11 | | Godaday website hosting service | 0.00 | | | | | | 12.17 | $12.17 |
| 7/17/12 | | Web development - legenerds | 0.00 | | | | | | 37.00 | $37.00 |
| 1/31/13 | | Business cards - Vistaprint | 0.00 | | | | | | 24.88 | $24.88 |
| 11/24/12 | | Business cards - Vistaprint | 0.00 | | | | | | 26.67 | $26.67 |
| 3/31/12 | | travel - bus Newark to JFK | 0.00 | | 56.49 | | | | | $56.49 |
| 4/24/12 | | website development - crucial.com | 0.00 | | | | | | 66.33 | $66.33 |
| 4/26/12 | | legal expenses - myfloridacounty.com | 0.00 | | | | | | 56.93 | $56.93 |
| 8/31/12 | | web domain purchase -godaddy | 0.00 | | | | | | 70.31 | $70.31 |
| 8/2/12 | | legal - Whitney Guidebook Legal | 0.00 | | | | | | 362.00 | $362.00 |
| 6/10/12 | | web development - godaddy | 0.00 | | | | | | 35.88 | $35.88 |
| | | | $0.00 | | $56.49 | $0.00 | $199.79 | $0.00 | $1,060.57 | |

| | |
|---|---|
| **Subtotal** | $ 1,316.85 |
| **Advances** | |
| **Total** | $ 1,316.85 |

**APPROVED:** _____

Report 6

EXHIBIT 3 - BRIAN MAYO CLAIM AGAINST VERACITY NETWORK

Case 17-17238-PGH   Claim 3-1 Part 24   Filed 10/03/17   Page 1 of 1

**Veracity Network, Inc.**

9/14/2017 11:47 AM

Register: 23100 · Secured Note - B. Mayo

From 07/01/2011 through 09/14/2017

Sorted by: Date, Type, Number/Rcf

CASE # 17-17238-PGH

| Date | Number | Payee | Account | Memo | Increase | C | Decrease | Balance |
|------|--------|-------|---------|------|----------|---|----------|---------|
| 07/28/2011 | | Mayo, Brian | 0010 · Checking Acc... | Loan from Bria... | 150,000.00 | | | 150,000.00 |
| 08/31/2011 | Sept. Min... | Mayo, Brian | 1000 · Accounts Paya... | Min. Pmt due i... | | | 301.37 | 149,698.63 |
| 10/31/2011 | | Mayo, Brian | 0010 · Checking Acc... | Draw on Note | 50,000.00 | | | 199,698.63 |
| 10/14/2014 | | | 0010 · Checking Acc... | Funds Transfer | 60.00 | | | 199,758.63 |
| 11/17/2015 | | | Wells Fargo Checking | | 1,000.00 | | | 200,758.63 |
| 11/17/2015 | | | Wells Fargo Checking | | 1,000.00 | | | 201,758.63 |
| 11/30/2015 | 72 | | 6700 · Professional F... | Payment to atto... | 7,500.00 | | | 209,258.63 |

# Veracity Network Expense report

For Office Use Only

**PURPOSE:** General

Millage Rate  $0.41

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

**PERIOD:**

From  3/1/2012

To  5/21/2012

Position  President/CEO

Manager  BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/11/12 | | Storage facility rental - Sebastian, FL | | 0.00 | | | | | 321.00 | $321.00 |
| 5/12/12 | | moving truck rental - Sebastian, FL | | 0.00 | | | | | 250.00 | $250.00 |
| 5/12/12 | | moving crew - 5 people @$25/hr | | 0.00 | | | | | 1,375.00 | $1,375.00 |
| 5/11/12 | | drug supply for calibration | | 0.00 | | | | | | |
| 5/6/12 | | lunch meeting w/moving crew | | 0.00 | | 39.63 | | | 6.99 | $6.99 |
| 5/5/12 | | Meeting w/Charles and Braxton Dozier | | 0.00 | | 116.11 | | | | $39.63 |
| 5/6/12 | | Material supplies for move | | 0.00 | | | | 116.11 | 116.11 | $116.11 |
| 5/5/12 | | moving supplies | | 0.00 | | | | | 5.14 | $5.14 |
| 5/21/12 | | network domain charges | | 0.00 | | | | | 35.50 | $35.50 |
| 4/25/12 | | RCI corporate phone lines (Apr) | | 0.00 | | | 185.66 | | | $185.66 |
| 4/27/12 | | copy center | | 0.00 | | | 37.97 | | | $37.97 |
| 4/20/12 | | investor meeting w/John Taylor | | 0.00 | | 52.22 | | 322 | 184.04 | $184.04 |
| 3/31/12 | | Material supplies for field service | | 0.00 | | | | | 56.49 | $52.22 |
| 4/23/12 | | computer repairs - supplies | | 0.00 | | | | | 66.33 | $56.49 |
| | | | | 0.00 | | | | | 66.33 | $66.33 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |

|  |  | $0.00 | $0.00 | 201.96 | $0.00 | $223.63 | $496.86 | $2,300.49 | **Subtotal** | $ 2,732.08 |
|  |  |  |  |  |  |  |  |  | **Advances** | $ 1,200.00 |
|  |  |  |  |  |  |  |  |  | **Total** | $ 1,532.08 |

APPROVED:

# Veracity Network Expense report

*For Office Use Only*

**PURPOSE:** Phone Services

**EMPLOYEE INFORMATION:**
Name   brian mayo
Department   Executive

**PERIOD:**   From   10/1/2011
              To   4/1/2015

Position   President/CEO
Manager   BoD

Milage Rate   $0.41

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 10/20/11 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 11/20/11 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 12/20/11 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 1/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 2/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 3/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 4/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 5/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 6/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 7/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 8/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 9/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 10/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 11/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 12/20/12 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 1/20/13 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 2/20/13 | | Telephone Service (ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| | | | | $0.00 | $0.00 | $0.00 | $651.44 | $0.00 | $0.00 | |
| | | | | | | | | | Subtotal | $  651.44 |
| | | | | | | | | | Advances | $  |
| | | | | | | | | | Total | $   651.44 |

APPROVED: _____   5/11/2015

# Veracity Network Expense report

For Office Use Only

Milage Rate | $0.41

**PURPOSE:** General

**PERIOD:**  From _____  To _____

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

Position  President/CEO

Manager  BoD

| Date | Account | Description | Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/11/13 | | Lunch meeting w Veejay Ramasamy | 0.00 | | | 21.89 | | | | $21.89 |
| 9/7/13 | | lunch meeting w/investor Bob Prindiville | 0.00 | | | 16.05 | | | | $16.05 |
| 9/1/13 | | Dinner meeting w/consultant Mark Throne | 0.00 | | | 62.57 | | | | $62.57 |
| 8/19/13 | | Dinner meeting w/investor Hugh Thompson | 0.00 | | | 28.72 | | | | $28.72 |
| 10/22/13 | | Dinner meeting w/investor Jim Kenerson | 0.00 | | | 49.18 | | | | $49.18 |
| 10/28/13 | | Lunch meeting w/Bert Herzenberg | 0.00 | | | 13.67 | | | | $13.67 |
| 8/12/2013 | | airfare Newark, NJ to Orlando, FL | 0.00 | | 228.80 | | | | | $228.80 |
| 10/26/13 | | tolls - Florida | 0.00 | | 20.00 | | | | | $20.00 |
| 1/5/13 | | tolls - Florida | 0.00 | | 30.00 | | | | | $30.00 |
| 1/14/13 | | taxi - NYC | 0.00 | | 9.50 | | | | | $9.50 |
| 1/16/13 | | taxi - NYC | 0.00 | | 36.60 | | | | | $36.60 |
| 1/15/13 | | taxi - NYC | 0.00 | | 12.50 | | | | | $12.50 |
| 1/15/13 | | taxi - NYC | 0.00 | | 24.50 | | | | | $24.50 |
| 1/14/13 | | taxi - NYC | 0.00 | | 22.20 | | | | | $22.20 |
| 1/14/13 | | taxi - NYC | 0.00 | | 19.20 | | | | | $19.20 |
| 1/19/13 | | parking - Orlando | 0.00 | | 70.00 | | | | | $70.00 |
| 1/19/13 | | hotel - Fairfield, NYC | 0.00 | | 208.91 | | | | | $208.91 |
| | | | $0.00 | | $682.21 | $192.08 | $0.00 | $0.00 | $0.00 | |

**APPROVED:** _(signature)_ 12/27/2013  CGO

| | |
|---|---|
| Subtotal | $ 874.29 |
| Advances | |
| **Total** | $ 874.29 |

# Veracity Network Expense report

**Milage Rate** | $0.41 |

For Office Use Only

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name: brian mayo
Department: Executive

**PERIOD:**

From 1/1/2013
To   1/1/2014

Position: President/CEO
Manager: BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| /14/13 | | Postage - Fedex | 0.00 | | | | | | 39.50 | $39.50 |
| /10/13 | | Postage - USPS | 0.00 | | | | | | 19.95 | $19.95 |
| /19/13 | | Postage - USPS | 0.00 | | | | | | 19.95 | $19.95 |
| /13/13 | | Lunch interview w/Jordan Thompson | 0.00 | | | 25.30 | | | | $25.30 |
| /23/13 | | Dinner w/ investor Jim Keperson | 0.00 | | | 86.76 | | | | $86.76 |
| /23/13 | | Dinner w/consultant Ed Mathie | 0.00 | | | 36.93 | | | | $36.93 |
| /25/13 | | Dinner w/investor Robert Buan | 0.00 | | | 71.62 | | | | $71.62 |
| /11/13 | | Lunch meeting with consultant Ed Mathie | 0.00 | | | 27.82 | | | | $27.82 |
| /11/13 | | Dinner meeting w/investor Rusty Cappelin | 0.00 | | | 91.04 | | | | $91.04 |
| /9/13 | | Dinner w/investor Brian Reagan | 0.00 | | | 84.89 | | | | $84.89 |
| /9/13 | | Dinner meeting w/investor Amy Thoma | 0.00 | | | 49.78 | | | | $49.78 |
| /6/13 | | Lunch meeting w/consultant Per Heistad | 0.00 | | | 52.22 | | | | $52.22 |
| /0/13 | | Dinner meeting w/ investors Tim Cook | 0.00 | | | 132.44 | | | | $132.44 |
| /27/13 | | Lunch meeting w/lawyer John Moore | 0.00 | | | 41.73 | | | | $41.73 |
| /27/13 | | Lunch meeting /w lanchard | 0.00 | | | 15.76 | | | | $15.76 |
| /1/13 | | lunch meeting w/consultant Rob Votaw | 0.00 | | | 21.19 | | | | $21.19 |
| /1/13 | | lunch meeting w/Helene Caselline FDC | 0.00 | | | 20.62 | | | | $20.62 |
| | | | $0.00 | | $0.00 | $758.10 | $0.00 | $0.00 | $79.40 | |

| | | |
|---|---|---|
| Subtotal | $ | 837.50 |
| Advances | | |
| Total | $ | 837.50 |

**APPROVED:** _(signature)_ 12/27/2013  CCO

# Veracity Network Expense report

For Office Use Only

Mileage Rate | $0.41

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name | brian mayo
Department | Executive

Position | President/CEO
Manager | BoD

**PERIOD:**  From 10/1/2013  To 12/1/2013

| Date | Account | Description | Miles Driven | Mileage Claim | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/14/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/14/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/15/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/15/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/15/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/19/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/8/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/18/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/18/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/18/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/29/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/19/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/19/13 | | transit fare - NYC | | 0.00 | 2.75 | | | | | $2.75 |
| 11/8/13 | | transit fare - NJ | | 0.00 | 2.75 | | | | | $2.75 |
| 11/8/13 | | transit fare - NJ | | 0.00 | 15.00 | | | | | $15.00 |
| 11/19/13 | | transit fare - NJ | | 0.00 | 12.50 | | | | | $12.50 |
| 11/19/13 | | transit fare - NJ | | 0.00 | 10.00 | | | | | $10.00 |
| 11/16/13 | | transit fare - NJ | | $0.00 | 13.00 | | | | | $13.00 |
| | | | | $0.00 | $86.25 | $0.00 | $0.00 | $0.00 | $0.00 | |

Subtotal | $ | 86.25
Advances | $ |
Total | $ | 86.25

APPROVED:

12/27/2013  COO

# Veracity Network Expense report

*For Office Use Only*

**PURPOSE:** General

Mileage Rate [ $0.41 ]

**EMPLOYEE INFORMATION:**

Name: brian mayo

Department: Executive

Position: President/CEO

Manager: BoD

**PERIOD:**  From 6/1/2013  To 1/1/2014

| Date | Account # | Description | # of Miles / Other | Mileage Reimb. | Travel | Meals | Meals / Phone / Entertainment | Misc. | Total |
|------|-----------|-------------|--------------------|----------------|--------|-------|-------------------------------|-------|-------|
| 7/5/13 | | storage facility - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 8/5/13 | | storage facility - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 9/5/13 | | storage facility - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 10/5/13 | | storage facility - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 11/5/13 | | storage facility - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 12/5/13 | | storage facility - Sebastian, FL | 0.00 | | | | | 321.00 | $321.00 |
| 8/31/13 | | web services - godaddy | 0.00 | | | | | 4.99 | $4.99 |
| 9/20/13 | | Phone services - Ringcentral/CA | 0.00 | | | | 38.30 | | $38.30 |
| 9/10/13 | | web services - myhosting | 0.00 | | | | | 77.40 | $77.40 |
| 10/7/13 | | financial services - SPIE | 0.00 | | | | | 19.08 | $19.08 |
| 10/20/13 | | Phone services - Ringcentral/CA | 0.00 | | | | 38.16 | | $38.16 |
| 11/20/13 | | Phone services - Ringcentral/CA | 0.00 | | | | 38.16 | | $38.16 |
| 12/20/13 | | Phone services - Ringcentral/CA | 0.00 | | | | 38.16 | | $38.16 |
| 8/20/13 | | Phone services - Ringcentral/CA | 0.00 | | | | 38.30 | | $38.30 |
| 7/20/13 | | Phone services - Ringcentral/CA | 0.00 | | | | 38.30 | | $38.30 |
| 6/20/13 | | Phone services - Ringcentral/CA | 0.00 | | | | 39.24 | | $39.24 |
| 6/12/13 | | Engineering Software - Norton | | | | | | 32.09 | $32.09 |
| | | | | $0.00 | $0.00 | $0.00 | $268.62 | $2,059.56 | |
| | | | | | | | Subtotal | $ | 2,328.18 |
| | | | | | | | Advances | | |
| | | | | | | | Total | $ | 2,328.18 |

**APPROVED:** _[signature]_  12/27/2013  COO

# Veracity Network Expense report

For Office Use Only

Mileage Rate **$0.41**

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

**PERIOD:**

From  10/1/2013

To  12/1/2013

Position  President/CEO

Manager  BoD

| Date | Account | Description | Parking Tolls | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/14/13 | | Transit fare - NJ | 0.00 | 30.00 | | | | | | $30.00 |
| 11/19/13 | | lunch | 0.00 | | | 9.58 | | | | $9.58 |
| 11/4/13 | | dinner | 0.00 | | | 132.96 | | | | $132.96 |
| 11/19/13 | | dinner | 0.00 | | | 18.19 | | | | $18.19 |
| 11/16/13 | | lunch | 0.00 | | | 22.82 | | | | $22.82 |
| 11/16/13 | | breakfast | 0.00 | | | 8.75 | | | | $8.75 |
| 11/15/13 | | dinner | 0.00 | | | 50.55 | | | | $50.55 |
| 11/13/13 | | dinner meeting w/ Bill Mayo | 0.00 | | | 99.99 | | | | $99.99 |
| 11/15/13 | | breakfast | 0.00 | | | 20.00 | | | | $20.00 |
| 11/15/13 | | lunch | 0.00 | | | 30.26 | | | | $30.26 |
| 11/15/13 | | breakfast | 0.00 | | | 9.53 | | | | $9.53 |
| 11/14/13 | | lunch | 0.00 | | | 18.00 | | | | $18.00 |
| 11/18/13 | | lunch | 0.00 | | | 9.96 | | | | $9.96 |
| 11/14/13 | | Office Supplies - Staples | 0.00 | | | | | | 8.25 | $8.25 |
| 11/16/13 | | Hotel /Courtyard, New York City | 0.00 | 451.09 | | | | | | $451.09 |
| 11/17/13 | | Airfare - Orlando, FL / Newark, NJ | 0.00 | 228.80 | | | | | | $228.80 |
| | | | | | | | | | | $0.00 |

|  | | | | $0.00 | $709.89 | $430.59 | $0.00 | $0.00 | $8.25 | |
| | | | | | | | Subtotal | $ | 1,148.73 | |
| | | | | | | | Advances | | | |
| | | | | | | | Total | $ | 1,148.73 | |

**APPROVED:**  _(signature)_  12/27/2013  CEO

# Veracity Network Expense report

For Office Use Only

**PURPOSE:** IT development

**EMPLOYEE INFORMATION:**

Name: brian mayo

Department: Executive

Position: President/CEO

Manager: BoD

**PERIOD:**

From June 1 2013
To June 15 201

Milage Rate  $0.41

| Date | Description | | Subtotal | Total |
|---|---|---|---|---|
| | | 0.00 | | $0.00 |
| 3/15/13 | web SSL renewal - godaddy | 0.00 | 237.96 | $237.96 |
| 3/15/13 | web domain renewal | 0.00 | 15.17 | $15.17 |
| 3/22/13 | web accounting correction - godaddy.com | 0.00 | 0.27 | $0.27 |
| 5/8/13 | website email - go daddy.com | 0.00 | 25.80 | $25.80 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | 0.00 | | $0.00 |
| | | $0.00 | $0.00 | $0.00 |
| | | | Subtotal $ | 279.20 |
| | | | Advances | |
| | | | Total $ | 279.20 |

APPROVED: _6/25/2013_

Report 7



# Veracity Network Expense report

*For Office Use Only*

**PURPOSE:** Phone Services

Mileage Rate: $0.41

**EMPLOYEE INFORMATION:**

Name: brian mayo

Department: Executive

**PERIOD:**

Position: President/CEO

Manager: BoD

From: 3/1/2013
To: 4/1/2015

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 3/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 4/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 5/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 6/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 7/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 8/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 9/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 10/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 11/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 12/20/13 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 1/20/14 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 2/20/14 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 39.13 | | | $39.13 |
| 3/20/14 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 39.13 | | | $39.13 |
| 4/20/14 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 39.13 | | | $39.13 |
| 5/20/14 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 39.24 | | | $39.24 |
| 6/20/14 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |
| 7/20/14 | | Telepone Service (Ringcentral.com) | | 0.00 | | | 38.32 | | | $38.32 |

| | | | | $0.00 | $0.00 | $0.00 | $654.79 | $0.00 | $0.00 | Subtotal | $ | 654.79 |

Advances

Total | $ | 654.79

**APPROVED:** _(signature)_  5/4/2015

# Veracity Network Expense report

**PURPOSE:** Phone Service

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

Mileage Rate  $0.41

**PERIOD:**

From  7/1/201

To  4/1/2015

Position  Preisdent/CEO

Manager  BoD

For Office Use Only

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 7/20/14 | | Phone Service (ringcental.com) | 0.00 | | | | 39.21 | | | $39.21 |
| 8/20/14 | | Phone Service (ringcental.com) | 0.00 | | | | 39.21 | | | $39.21 |
| 9/20/14 | | Phone Service (ringcental.com) | 0.00 | | | | 39.21 | | | $39.21 |
| 10/20/14 | | Phone Service (ringcental.com) | 0.00 | | | | 38.08 | | | $38.08 |
| 11/20/14 | | Phone Service (ringcental.com) | 0.00 | | | | 38.08 | | | $38.08 |
| 12/20/14 | | Phone Service (ringcental.com) | 0.00 | | | | 38.08 | | | $38.08 |
| 1/20/15 | | Phone Service (ringcental.com) | 0.00 | | | | 38.30 | | | $38.30 |
| 2/20/15 | | Phone Service (ringcental.com) | 0.00 | | | | 38.32 | | | $38.32 |
| 3/20/15 | | Phone Service (ringcental.com) | 0.00 | | | | 38.32 | | | $38.32 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | $0.00 | $0.00 | $0.00 | $346.81 | $0.00 | $0.00 | $0.00 |

| | | |
|--|--|--|
| Subtotal | $ | 346.81 |
| Advances | $ | |
| Total | $ | 346.81 |

APPROVED: _[signature]_  5/6/2015

Exhibit 4a

## SECURED, REVOLVING, DEMAND PROMISSORY NOTE

**US $200,000.00**                                              **Dated: July 28, 2011**

       **FOR VALUE RECEIVED,** Veracity Network, Inc. (the "Borrower") hereby promises to pay to Brian Mayo (the "Lender"), at such place that the Lender may designate in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Two Hundred Thousand US Dollars (US $200,000.00) or such lesser principal amount, as may be due as shown on the grid (the "Grid") attached to this Secured, Revolving, Demand Promissory Note (the "Note") from time to time, together with interest on the unpaid principal amount owing pursuant to this Note from time to time as recorded on the Grid. The entries made on the Grid shall be presumptive evidence of the existence and amounts of the obligations of the Borrower thereon recorded absent manifest error.

1. **Payments.** All principal and accrued interest due pursuant to this Note shall be payable by the Borrower ON DEMAND. Borrower shall make regular installments of not less than $1,000 per month in accordance the Grid until the entire balance is paid in full or the Lender demands early payment of the outstanding balance, whichever occurs first. All installments shall be due no later than the last day of each month and shall be applied against any accrued interest first, with the remainder, if any, being applied against the principal balance.

2. **Revolving Loans.**
    a. Subject to the terms and conditions hereof, during the period from the date hereof to the date of Demand, Lender agrees to make revolving loans to the Borrower in an aggregate principal amount at any time outstanding up to Two Hundred Thousand US Dollars (US $200,000.00), and Borrower may borrow, repay and re-borrow such revolving loans. Borrowings may be made by the Borrower from time to time from the Lender (each such borrowing called a "Borrowing") with interest accruing from the date the amount of the Borrowing is received from the Lender (a "Utilization Day") upon the Borrower's written request. The principal amount of such Borrowing, together with the then outstanding aggregate principal balance of Borrowings, shall not exceed Two Hundred Thousand US Dollars (US $200,000.00).

    b. Notwithstanding anything to the contrary in the Note, Lender shall not be required to make any revolving loan to the Borrower, if, upon Borrower's written request for a Borrowing, Lender believes, in Lender's sole discretion, that an event or occurrence exists, which is reasonably likely to materially and adversely affect (i) the business, assets, liabilities, results of operations or financial condition of the Borrower, or (ii) the ability of the Borrower to perform its obligations pursuant to this Note or the Security Agreement between Borrower and Lender dated as of the date of this Note (the "Security Agreement").

3. **Interest.** Borrower promises to pay interest in arrears (calculated on the basis of a 365-day year for the actual number of days elapsed) on the daily principal balances from time to time outstanding from the Utilization Day at a rate per annum equal to Five percent (5%) but in no event greater than the maximum rate of interest permitted by applicable law.

4. **Default.** The entire principal and interest due on this Note shall become immediately due and payable, and the Note shall be deemed to have the maximum rate of interest permitted by law from the date of this Note if: (i) Borrower fails to pay the principal and accrued interest when due, or (ii) Borrower is in breach of any provision of the Security Agreement. While in default,

this obligation shall bear interest at the maximum rate permitted by law per annum. Any judgment, which is rendered by a court of competent jurisdiction on this Note as a result of a default hereunder, shall accrue interest at the default rate of interest set forth in this Note, rather than at the then applicable statutory rate of interest for money judgment. Notwithstanding the rates of interest set forth in this Note, it is the intention of Borrower and Holder that the interest charged shall in no event ever exceed the maximum allowed by law; and any sums paid or collected which would render this obligation usurious shall be refunded or credited to Borrower.

5. **Security.** This Note is secured by the Security Agreement.

6. **Prepayment.** Prepayment of this Note, in whole or in part, may be made on the outstanding amount due under this Note without penalty from time to time by the Borrower.

7. **Seniority.** The amounts due pursuant to this Note shall be senior to any debts and obligations or liabilities of any kind, whether now existing or hereafter arising.

8. **Waivers.** Borrower hereby waives demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notice, filing of suit and diligence in collecting this Note, in enforcing any of the security rights or in proceeding against any collateral securing this Note, and agrees that this Note may be enforced by Lender against Borrower without the necessity at any time of resorting to or exhausting any of the collateral for the Note, and waives the right to require the Lender to proceed against any of the collateral, or to require the Lender to pursue any other remedy or enforce any right.

9. **Enforcement Costs.** In case suit shall be brought for the collection of this Note, or it is necessary to place this Note in the hands of an attorney for collection, Borrower and all endorsers of this Note agree to pay reasonable attorneys' fees and costs for making such collection, including but not limited to, all fees, taxes, and costs incident to any appellate, post-judgment, or bankruptcy proceedings which may result, whether the holder of this Note is obligated therefor or not. Attorneys' fees include paralegal fees, administrative costs and all other reasonable and customary charges billed by counsel to Payee.

10. **Binding Effect.** All of the terms and provisions of this Note shall be binding upon, inure to the benefit of, and be enforceable by the parties and their respective administrators, executors, other legal representatives, heirs and permitted assigns, whether so expressed or not.

11. **Amendments.** Modifications and amendments of this Note may be made solely in a writing signed by the Lender and the Borrower.

12. **Governing Law.** This Note and all transactions contemplated by this Note shall be governed by, and construed in accordance with, the internal laws of the State of Florida, without regard to principles of conflicts of laws.

13. **Jurisdiction and Venue.** Any civil action or legal proceeding arising out of or relating to this Note shall be brought in the courts of record of the State of Florida in Indian River County. Each party consents to the jurisdiction of such court in any such civil action or legal proceeding and waives any objection to the laying of venue of any such civil action or legal proceeding in such court. Service of any court paper may be effected on such party by mail, as provided in this Note, or in such other manner as may be provided under applicable laws, rules of procedure or local rules.

14. **WAIVER OF JURY TRIAL.** THE BORROWER ACKNOWLEDGES THAT ANY DISPUTE OR CONTROVERSY BETWEEN THE BORROWER AND THE LENDER WOULD BE BASED ON DIFFICULT AND COMPLEX ISSUES OF LAW AND FACT. ACCORDINGLY, BY EXECUTION OR ACCEPTANCE HEREOF, AS THE CASE MAY BE, EACH OF THE LENDER AND THE BORROWER HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING OF ANY KIND OR NATURE IN ANY COURT OR TRIBUNAL IN WHICH AN ACTION MAY BE COMMENCED BY OR AGAINST THE BORROWER ARISING OUT OF THIS NOTE.

THE FOREGOING WAIVERS HAVE BEEN MADE WITH THE ADVICE OF COUNSEL AND WITH A FULL UNDERSTANDING OF THE LEGAL CONSEQUENCES THEREOF.

15. **Entire Agreement.** This Agreement, and the Note represent the entire understanding and agreement among the parties with respect to the subject matter of the same, and supersede all other negotiations, understandings, and representations (if any) made by and among such parties.

**FLORIDA DOCUMENTARY STAMP TAX HAS BEEN PAID IN FULL AND PROPER NOTATIONS MADE TO THE UNIFORM COMMERCIAL CODE FINANCING STATEMENT FILED IN CONNECTION WITH THIS NOTE.**

**IN WITNESS WHEREOF,** the undersigned hereby executes this Note under seal as of the date written above.

**BORROWER:**

VERACITY NETWORK, INC.
A Delaware corporation

By: _Chris Butler_

Name: _Chris Butler_

Title: _CFO_

**LENDER:** For the purpose of agreeing to and accepting the provisions of Sections 9, 10, and 14 of this Note.

_Brian Mayo_

Brian Mayo, individually

GRID SHOWING PAYMENT AMOUNTS

# Veracity Network Expense report

For Office Use Only

Milage Rate | $0.41

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

**PERIOD:**   From  1/1/2014

To  4/1/2015

Position  Preisdent/CEO

Manager  BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/24/15 | | Airfare (PBI/BOS) - Boston Harbor Angels | 0.00 | | 534.96 | | | | | $534.96 |
| 7/28/14 | | website godaddy.com | 0.00 | | | | | | 15.17 | $15.17 |
| 7/28/14 | | tolls - sunpass | 0.00 | | 25.00 | | | | | $25.00 |
| 7/28/14 | | dinner w/John Hession | 0.00 | | | 122.19 | | | | $122.19 |
| 7/29/14 | | train | 0.00 | | 5.30 | | | | | $5.30 |
| 7/29/14 | | breakfast | 0.00 | | | 10.70 | | | | $10.70 |
| 7/21/14 | | gas - New Orleans | 0.00 | | 40.00 | | | | | $40.00 |
| 7/21/14 | | dinner | 0.00 | | | 40.07 | | | | $40.07 |
| 7/21/14 | | gas - Pensacola | 0.00 | | 46.43 | | | | | $46.43 |
| 7/21/14 | | gas - Osceola | 0.00 | | 45.45 | | | | | $45.45 |
| 7/21/14 | | gas - Midway | 0.00 | | 49.71 | | | | | $49.71 |
| 7/22/14 | | breakfast - New Orleans | 0.00 | | | 30.50 | | | | $30.50 |
| 7/22/14 | | lunch - Alabama | 0.00 | | | 36.43 | | | | $36.43 |
| 7/22/14 | | hotel - Madison, FL | 0.00 | | 104.96 | | | | | $104.96 |
| 7/22/14 | | parking - New Orleans | 0.00 | | 3.00 | | | | | $3.00 |
| 7/22/14 | | supplies - New Orleans | 0.00 | | | | | | 27.25 | $27.25 |
| 7/22/14 | | gas - New Orleans | 0.00 | | 28.67 | | | | | $28.67 |
| | | | $0.00 | $0.00 | $883.48 | $239.89 | $0.00 | $0.00 | $42.42 | Subtotal | $ 1,165.79 |
| | | | | | | | | | | Advances | |
| | | | | | | | | | | Total | $ 1,165.79 |

**APPROVED:**  _(signature)_  5/4/2015

# Veracity Network Expense report

For Office Use Only

Milage Rate [ $0.41 ]

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name __brian mayo__

Department __Executive__

Position __President/CEO__

Manager __BoD__

**PERIOD:**

From __7/1/2014__

To __4/1/2015__

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|----------------|----------------|--------|-------|-------|---------------|-------|-------|
| 7/22/14 | | gas - cottondale, fl | | 0.00 | 35.62 | | | | | $35.62 |
| 7/22/14 | | gas - madison, fl | | 0.00 | 31.83 | | | | | $31.83 |
| 7/23/14 | | trailer rental adjustment - uhaul | | 0.00 | 14.20 | | | | | $14.20 |
| 7/23/14 | | lunch - ocala, fl | | 0.00 | | 24.78 | | | | $24.78 |
| 7/23/14 | | gas - ocala, fl | | 0.00 | 42.49 | | | | | $42.49 |
| 7/23/14 | | trailer rental - uhaul | | 0.00 | 46.63 | | | | | $46.63 |
| 7/24/14 | | hotel - Harahan, LA | | 0.00 | 156.72 | | | | | $156.72 |
| 6/4/14 | | Software incense - Norton | | 0.00 | | | | | 85.59 | $85.59 |
| 4/29/14 | | breakfast - Ft Lauderdale | | 0.00 | | 6.35 | | | | $6.35 |
| 4/29/14 | | taxi - Las Vegas | | 0.00 | 19.10 | | | | | $19.10 |
| 4/29/14 | | dinner w/John Quento - Las Vegas | | 0.00 | | 68.29 | | | | $68.29 |
| 4/29/14 | | dinner w/ Sherilynne Raden - Las Vegas | | 0.00 | | 128.64 | | | | $128.64 |
| 5/2/14 | | breakfast - Las Vegas | | 0.00 | | 7.76 | | | | $7.76 |
| 5/2/14 | | hotel - Las Vegas, NV | | 0.00 | 233.52 | | | | | $233.52 |
| 5/19/14 | | website services - godaddy.com | | 0.00 | | | | | 19.99 | $19.99 |
| 3/31/14 | | website services - dropbox.com | | 0.00 | | | | | 75.00 | $75.00 |
| 4/3/14 | | conference fee - Growth Capital Conference | | 0.00 | | | | | 295.00 | $295.00 |
| | | | | $0.00 | $580.11 | $233.82 | $0.00 | $0.00 | $475.58 | |

**APPROVED:** _(signature)_ 5/4/2015

| | |
|---|---|
| Subtotal | $ 1,291.51 |
| Advances | |
| **Total** | $ 1,291.51 |

# Veracity Network Expense report

For Office Use Only

Milage Rate | $0.41

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

**PERIOD:**  From  10/1/2013

To  4/1/2015

Position  President/CEO

Manager  BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/8/14 | | hotel - Las Vegas, NV | | 0.00 | 57.12 | | | | | $57.12 |
| 4/8/14 | | airfare - FLL/LAS | | 0.00 | 413.00 | | | | | $413.00 |
| 2/28/14 | | website service - dropbox.com | | 0.00 | | | | | 75.00 | $75.00 |
| 1/29/14 | | dinner w/ Al Gapsch - Jefferson, LA | | 0.00 | | 47.68 | | | | $47.68 |
| 1/29/14 | | hotel - Marianna, FL | | 0.00 | 220.78 | | | | | $220.78 |
| 1/29/14 | | gas - Ocala, FL | | 0.00 | 34.67 | | | | | $34.67 |
| 1/30/14 | | Lunch w/ Al Gapsch - Marianna, FL | | 0.00 | | 18.03 | | | | $18.03 |
| 1/30/14 | | dinner w/ Al Gapsch - New Orleans, LA | | 0.00 | | 156.10 | | | | $156.10 |
| 1/30/14 | | airfare - MCO/CLT | | 0.00 | 223.50 | | | | | $223.50 |
| 1/30/14 | | airfare - CLT/BOS | | 0.00 | 240.00 | | | | | $240.00 |
| 1/31/14 | | parking - Boston | | 0.00 | 9.00 | | | | | $9.00 |
| 1/31/14 | | lunch - Kenner, LA | | 0.00 | | 21.07 | | | | $21.07 |
| 1/31/14 | | dinner - Boston, MA | | 0.00 | | 24.35 | | | | $24.35 |
| 1/31/14 | | airfare - NO/BOS | | 0.00 | 25.00 | | | | | $25.00 |
| 1/31/14 | | hotel - Harahan, LA | | 0.00 | 493.84 | | | | | $493.84 |
| 2/5/14 | | airfare - MCO/BOS | | 0.00 | 150.00 | | | | | $150.00 |
| 2/6/14 | | parking - Boston | | 0.00 | 3.00 | | | | | $3.00 |
| | | | | $0.00 | $1,869.91 | $267.23 | $0.00 | $0.00 | $75.00 | |

Subtotal  $  2,212.14

Advances

Total  $  2,212.14

APPROVED:  _____  5/6/2015

# Veracity Network Expense report

For Office Use Only

**PURPOSE:** General

Milage Rate [ $0.41 ]

**PERIOD:**

From __1/1/2014__
To __4/1/2014__

**EMPLOYEE INFORMATION:**

| | |
|---|---|
| Name | brian mayo |
| Department | Executive |

| | |
|---|---|
| Position | President/CEO |
| Manager | BoD |

| Date | Description | Mileage | Travel | Meals | Entertainment | Other | Total |
|---|---|---|---|---|---|---|---|
| 2/9/14 | car rental - Boston, MA | 0.00 | 305.92 | | | | $305.92 |
| 2/9/14 | gas - Boston, MA | 0.00 | 12.76 | | | | $12.76 |
| 2/9/14 | computer services | 0.00 | | | | 17.45 | $17.45 |
| 2/15/14 | parking - Miami | 0.00 | 9.25 | | | | $9.25 |
| 2/15/14 | parking Miami | 0.00 | 10.00 | | | | $10.00 |
| 2/15/14 | dinner w/ Danny Katz, Gary Heron | 0.00 | | 113.74 | | | $113.74 |
| 2/15/14 | gas - Ft Lauderdale,FL | 0.00 | 37.13 | | | | $37.13 |
| 3/19/15 | gas | 0.00 | 5.67 | | | | $5.67 |
| 3/19/15 | dinner - Boston | 0.00 | | 35.53 | | | $35.53 |
| 3/19/15 | car rental - Boston, MA | 0.00 | 211.53 | | | | $211.53 |
| 3/19/15 | lunch - Boston | 0.00 | | 12.57 | | | $12.57 |
| 3/18/15 | lunch - Boston | 0.00 | | 12.20 | | | $12.20 |
| 3/18/15 | tolls - Boston | 0.00 | 7.50 | | | | $7.50 |
| 3/13/15 | parking - boston | 0.00 | 36.00 | | | | $36.00 |
| 3/13/15 | parking - boston | 0.00 | 40.00 | | | | $40.00 |
| 3/19/15 | parking - Palm Beach | 0.00 | 4.23 | | | | $4.23 |
| 3/11/15 | dinner w/ Bill Mayo | 0.00 | | 83.34 | | | $83.34 |

| | Mileage | Travel | Meals | Entertainment | Other |
|---|---|---|---|---|---|
| | $0.00 | $679.99 | $257.38 | $0.00 | $17.45 |

**APPROVED:** _____  __3/6/2015__

| | | |
|---|---|---|
| Subtotal | $ | 954.82 |
| Advances | | |
| Total | $ | 954.82 |

# Veracity Network Expense report

For Office Use Only

Milage Rate  $0.41

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

Position  President/CEO

Manager  BoD

**PERIOD:**

From  1/1/2014

To  4/1/2015

| Date | Description | | | | | |
|---|---|---|---|---|---|---|
| 3/12/15 | breakfast - Boston | 0.00 | | 4.32 | | $4.32 |
| 3/11/15 | transit - Boston | 0.00 | 20.00 | | | $20.00 |
| 3/13/15 | parking - Palm Beach | 0.00 | 3.17 | | | $3.17 |
| 3/11/15 | transit - Boston | 0.00 | 10.00 | | | $10.00 |
| 3/11/15 | transit - Boston | 0.00 | 20.00 | | | $20.00 |
| 3/11/15 | transit - Boston | 0.00 | | 9.77 | | $9.77 |
| 3/11/15 | lunch - Palm Beach | 0.00 | | | | |
| 3/19/15 | parking - Boston | 0.00 | 20.00 | | | $20.00 |
| 3/13/15 | lunch - Boston | 0.00 | | 14.97 | | $14.97 |
| 7/23/14 | gas | 0.00 | 31.83 | | | $31.83 |
| 7/22/14 | gas | 0.00 | 36.43 | | | $36.43 |
| 7/21/14 | lunch - Midway, FL | 0.00 | | 8.14 | | $8.14 |
| 7/21/14 | gas | 0.00 | 46.43 | | | $46.43 |
| 7/22/14 | gas | 0.00 | 28.67 | | | $28.67 |
| 7/22/14 | lunch | 0.00 | | 4.01 | | $4.01 |
| 7/9/14 | lunch - Orlando | 0.00 | | 17.88 | | $17.88 |
| 7/21/14 | gas | 0.00 | 40.00 | | | $40.00 |
| 7/21/14 | gas | 0.00 | | 40.07 | | $40.07 |
| 7/21/14 | dinner | 0.00 | | | | |
| | | $0.00 | $256.53 | $99.16 | $0.00 | |

APPROVED: _____ 5/6/2015

| | | |
|---|---|---|
| Subtotal | $ | 355.69 |
| Advances | | $0.00 |
| Total | $ | 355.69 |

# Veracity Network Expense report

*For Office Use Only*

**PURPOSE:** General

Mileage Rate | $0.41 |

**EMPLOYEE INFORMATION:**

Name  brian mayo
Department  Executive

**PERIOD:**
From ___
To ___

Position  President/CEO
Manager  BoD

| Date | Description | Mileage | | | | | Total |
|---|---|---|---|---|---|---|---|
| 7/23/14 | gas -Silver Springs, FL. | 0.00 | 42.49 | | | | $42.49 |
| 7/29/14 | parking - Orlando | 0.00 | 7.00 | | | | $7.00 |
| 7/30/14 | lunch | 0.00 | | 13.86 | | | $13.86 |
| 7/30/14 | gas | 0.00 | 25.20 | | | | $25.20 |
| 7/29/14 | transit | 0.00 | 2.65 | | | | $2.65 |
| 7/29/14 | lunch - Boston | 0.00 | | 10.70 | | | $10.70 |
| 7/29/14 | transit | 0.00 | 6.25 | | | | $6.25 |
| 7/30/14 | taxi | 0.00 | 24.00 | | | | $24.00 |
| 7/28/14 | dinner w/Charlie Cameron | 0.00 | | 102.19 | | | $102.19 |
| 7/28/14 | transit | 0.00 | 6.25 | | | | $6.25 |
| 7/28/14 | gas | 0.00 | 49.71 | | | | $49.71 |
| 7/21/14 | gas | 0.00 | 45.45 | | | | $45.45 |
| 7/21/14 | breakfast | 0.00 | | 4.16 | | | $4.16 |
| 7/21/14 | lunch | 0.00 | | 9.92 | | | $9.92 |
| 7/21/14 | wood supplies | 0.00 | | | | 6.55 | $6.55 |
| 3/1/15 | conference fee - Boston Harbor Angels | 0.00 | | | | 400.00 | $400.00 |
| 3/23/15 | Corporate registration - FL | 0.00 | | | | 900.00 | $900.00 |
| | | $0.00 | $209.00 | $140.83 | $0.00 | $1,306.55 | **Subtotal** $1,656.38 |

**Subtotal** $ 1,656.38
**Advances**
**Total** $  1,656.38

**APPROVED:** _(signature)_  3/6/2015

# Veracity Network Expense report

For Office Use Only

**PURPOSE:** General

Milage Rate | $0.41

**EMPLOYEE INFORMATION:**

Name: brian mayo

Department: Executive

**PERIOD:**

From: 1/1/2014
To: 4/1/2015

Position: President/CEO

Manager: BoD

| Date | Description | | | | | | Total |
|---|---|---|---|---|---|---|---|
| 3/5/15 | airfare PBI/BOS | 0.00 | | | | $547.96 | $547.96 |
| 7/7/14 | airfare MCO/BOS | 0.00 | 312.00 | | | | $312.00 |
| 7/23/14 | trailer rental | 0.00 | 60.83 | | | | $60.83 |
| 4/29/14 | airfare FLL/LAS | 0.00 | 413.00 | | | | $413.00 |
| 11/13/14 | airfare MCO/NEW | 0.00 | 588.00 | | | | $588.00 |
| 7/21/14 | hotel - Harahan, LA | 0.00 | 156.72 | | | | $156.72 |
| 7/23/14 | hotel - Madison, FL | 0.00 | 104.96 | | | | $104.96 |
| 4/29/14 | conference fees - Capital Growth Expo | 0.00 | | | | 295.00 | $295.00 |
| 4/29/14 | hotel - Las Vegas | 0.00 | 290.64 | | | | $290.64 |
| 5/1/14 | breakfast | 0.00 | | 5.13 | | | $5.13 |
| 4/27/14 | copies | 0.00 | | | | 12.82 | $12.82 |
| 5/1/14 | shuttle service | 0.00 | 25.00 | | | | $25.00 |
| 4/30/14 | dinner w/ Melvin Jocelyn | 0.00 | | 128.64 | | | $128.64 |
| 5/1/14 | lunch | 0.00 | | 9.52 | | | $9.52 |
| 4/26/14 | copies | 0.00 | | | | 73.38 | $73.38 |
| 4/24/14 | brochures - printing services | 0.00 | | | | 100.10 | $100.10 |
| 4/29/14 | dinner | 0.00 | | 68.29 | | | $68.29 |
| | | $0.00 | $2,499.11 | $211.58 | $0.00 | $0.00 | $481.30 |

**APPROVED:** [signature] 5/6/2015

Subtotal | $ | 3,191.99
Advances |
Total | $ | 3,191.99

# Veracity Network Expense report

For Office Use Only

Milage Rate [ $0.41 ]

**PURPOSE:** General

**PERIOD:**  From  5/5/2015
To  5/6/2015

**EMPLOYEE INFORMATION:**

Name  brian mayo

Department  Executive

Position  President/CEO

Manager  BcD

| Date | Account | Description | Airfare Hotel | Mileage Reimb | Travel | Hotel | Phone | Entertainment | Misc. | Total |
|------|---------|-------------|---------------|---------------|--------|-------|-------|---------------|-------|-------|
| 5/5/15 | | airfare - David Prense NYC/MCO | 0.00 | 692.52 | | | | | | $692.52 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | 0.00 | 0.00 | | | | | | $0.00 |
| | | | | | $0.00 | $692.52 | $0.00 | $0.00 | $0.00 | |

| | | |
|---|---|---|
| Subtotal | $ | 692.52 |
| Advances | | |
| Total | $ | 692.52 |

**APPROVED:**  _(signature)_  5/6/2015

expenses 23

# Veracity Network Expense report

For Office Use Only

Milage Rate [ $0.41 ]

**PURPOSE:** General

**EMPLOYEE INFORMATION:**

Name    brian mayo

Department    Executive

**PERIOD:**    From    6/5/2015
           To    7/21/2015

Position    President/CEO

Manager    BoD

| Date | Account | Description | # Miles Driven | Mileage Reimb. | Travel | Meals | Phone | Entertainment | Misc. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/17/15 | | car rental | 0.00 | 41.14 | | | | | | $41.14 |
| 5/8/15 | | website godaddy | 0.00 | | | | | | 52.12 | $52.12 |
| 5/11/15 | | tolls-sunpass | 0.00 | | 10.00 | | | | | $10.00 |
| 5/12/15 | | business cards - vistaprint | 0.00 | | | | | | 24.02 | $24.02 |
| 4/20/15 | | phone service - Apr | 0.00 | | | | 38.81 | | | $38.81 |
| 5/20/15 | | phone service - May | 0.00 | | | | 38.81 | | | $38.81 |
| 6/20/15 | | phone service - Jun | 0.00 | | | | 38.81 | | | $38.81 |
| 7/20/15 | | phone service - Jul | 0.00 | | | | 38.81 | | | $38.81 |
| 5/5/15 | | storage facility - Sebastian | 0.00 | | | | | | 342.40 | $342.40 |
| 6/5/15 | | storage facility - Sebastian | 0.00 | | | | | | 342.40 | $342.40 |
| 7/5/15 | | storage facility - Sebastian | 0.00 | | | | | | 342.40 | $342.40 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | 0.00 | | | | | | $0.00 |
| | | | | $0.00 | $51.14 | $0.00 | $155.24 | $0.00 | $1,103.34 | |
| | | | | | | | | | Subtotal | $ 1,309.72 |
| | | | | | | | | | Advances | |
| | | | | | | | | | Total | $ 1,309.72 |

APPROVED:    7/28/2015

Exhibit 4b

# SECURITY AGREEMENT

**THIS AGREEMENT** is dated the ⟨24th⟩ day of August, 2011, and is effective as of July 28, 2011, and is entered into by and between **VERACITY NETWORK, INC.** (hereinafter referred to as either "Borrower" or "Debtor"), in favor of **BRIAN MAYO** (hereinafter referred to as the "Secured Party").

## W I T N E S S E T H:

**WHEREAS**, Borrower has executed a Secured, Revolving, Demand Promissory Note dated July 28, 2011 in the original principal amount of $200,000.00 (hereinafter referred to as the "Note") in favor of the Secured Party; and

**WHEREAS**, as a further inducement to the Secured Party to accept the Note from Borrower, and in order to evidence further the security interest held by the Secured Party in all tangible and intangible assets of Borrower, Borrower desires to grant a security interest in favor of Secured Party and desires to evidence such grant and pledge by executing a Security Agreement in favor of the Secured Party.

**NOW THEREFORE**, for good and valuable consideration in hand paid and received, including the mutual promises and sums of money set forth herein and in the Note, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

The above recitals are affirmed as being true and correct and are hereby incorporated herein by reference.

SECTION 1. <u>Grant of Security</u>.   Borrower hereby assigns, hypothecates, and pledges to the Secured Party and hereby grants, conveys, sets over, and assigns to the Secured Party a continuing security interest in all of Borrower's assets and all personal property of Borrower, including without limitation, all of its accounts, inventory, equipment, leasehold interests and all other of its tangible and intangible property (the "Collateral").

SECTION 2. <u>Security for Obligations</u>.   The Collateral secures the payment of the obligation evidenced by the Note, and renewals and extension thereof, of Borrower to the Secured Party under the Note, or otherwise, whether for principal, interest, fees, or expenses, including but not limited to attorneys' fees and costs and including appellate attorneys' fees and costs (all such obligations being hereinafter collectively referred to as the "Obligations").

SECTION 3. <u>Representations and Warranties</u>.   Borrower represents and warrants to the Secured Party as follows:

(a)     The execution, delivery and performance by Borrower of this Agreement do not result in or require the creation of any lien, security interest or other charge or encumbrance (except as provided in or contemplated by this Agreement) upon or with respect to the Collateral.

(b)    This Agreement is a legal, valid and binding obligation of Borrower enforceable against Borrower in accordance with its respective terms.

(c)    The Borrower is located at the address specified below.

(d)    Borrower owns the Collateral free, clear, and unencumbered by any lien, security interest, or charge, except for the security interest created by this Agreement. No effective financing statement or other instrument similar in effect covering all or any part of the Collateral is on file in any recording office.

(e)    This Agreement creates a valid and perfected security interest in the Collateral, securing the payment of the Obligations.

(f)    No authorization, approval, or other action by and no notice to or filing with any governmental authority or regulatory body is required either (i) for the grant by Borrower of the security interest granted hereby or for the execution, delivery or performance of the terms of this Agreement by Borrower or (ii) for the perfection of or the exercise by the Secured Party of the Secured Party's rights and remedies hereunder, other than Borrower filing a Uniform Commercial Code Financing Statement.

SECTION 4. <u>Further Assurances</u>.

(a)    Borrower shall at Borrower's own expense promptly execute and deliver all further instruments and documents and take all further action that may be necessary or desirable or that the Secured Party may request in order to perfect and protect any security interest granted or purported to be granted hereby or to enable the Secured Party to exercise and enforce his rights and remedies hereunder with respect to any Collateral.   Without limiting the generality of the foregoing, Borrower shall execute and file such financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary, or desirable or as Secured Party may request in order to perfect and preserve the security interests granted or purported to be granted hereby.

(b)    Borrower will furnish to the Secured Party upon request and/or at such intervals as the Secured Party may establish statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Secured Party may reasonably request all in reasonable detail.

SECTION 5. <u>Taxes</u>.   Borrower shall pay promptly when due all property and other taxes, assessments, and governmental charges or levies imposed upon and all claims (including claims for labor, materials, and supplies) against the Collateral, except to the extent the validity thereof is being contested in good faith by appropriate proceedings.

SECTION 6. <u>Insurance</u>.   Borrower shall at its own expense maintain in force insurance with respect to the Collateral in such amounts, against such risks, in such form, and with such insurers, as shall be selected by Borrower and approved by the Secured Party.   Borrower shall, if so requested by the Secured Party, deliver to the

Secured Party original or duplicate policies or certificates of such insurance and, as often as the Secured Party may reasonably request, a report of a reputable insurance broker with respect to such insurance. If requested by the Secured Party, at any time the Secured Party shall be named as an additional insured and loss payee on said insurance policies.

SECTION 7. Transfers and Other Liens. Borrower shall not:

(a)    Sell, transfer, convey, lease, assign (by operation of law or otherwise) or otherwise dispose of all or any part of Borrower's interest in any portion of the Collateral; or

(b)    Create or suffer to exist any lien, security interest or other charge or encumbrance (except for the security interest created by this Agreement) upon or with respect to any of the Collateral to secure the debt of any person or entity.

SECTION 8. Secured Party Appointed Attorney-in-Fact. To the extent permitted by law and not otherwise, and after ten (10) days advance written notice to Borrower, Borrower hereby appoints the Secured Party as Borrower's attorney-in-fact with full authority in the place and stead of Borrower and in the name of Borrower and hereby authorizes the Secured Party upon the occurrence of any Event of Default, as hereinafter defined, to take such action and to execute such instruments, which the Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement, as follows:

(i)    to ask, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for monies or sums due and to become due under or in respect of all or any portion of the Collateral;

(ii)    to receive, endorse, and collect any drafts or other instruments, documents and chattel paper, in connection with clause (i) above; and

(iii)    to file any claims, or take any action, or institute any proceedings which the Secured Party may deem necessary or desirable for the collection of any of the sums due under the Note or of any of the Collateral or otherwise to enforce the rights of the Secured Party with respect to any of the Collateral.

SECTION 9. Secured Party May Perform. In the event Borrower fails to perform any agreement contained herein which is deemed an Event of Default, as hereinafter defined, the Secured Party may itself perform, or cause performance of, such agreement; and the expenses of the Secured Party incurred in connection therewith shall be payable by Borrower under Section 13.

SECTION 10.    The Secured Party's Duties. The powers conferred on the Secured Party hereunder are discretionary and are *solely* to protect the Secured Party's interest in the Collateral and shall not impose any duty upon the Secured Party to exercise any such powers. Except for the safe custody of any Collateral in the Secured Party's possession and the accounting for moneys actually received by it hereunder, the Secured Party shall have no duty as to any Collateral or as to the taking of any

necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.

SECTION 11.  Events of Default.  The following events shall constitute events of default (hereinafter referred to as "Events of Default"):

(a)  Failure by Borrower or any guarantor  to pay promptly when the same shall become due all or any portion of the Obligations, including, but not limited to, any principal or interest due under the Note or due under any other instrument evidencing the Obligations; or

(b)  Failure by Borrower or any guarantor to comply with or perform any provision of this Agreement or any provision of any document contemplated by or delivered in connection with this Agreement on Borrower's part to be complied with or performed; or

(c)  Any representations or warranties made or given, or to be made or given, by Borrower in this Agreement, or in any certificate, agreement, instrument or statement contemplated by or made or delivered in connection with this Agreement, shall have been incorrect, false, or misleading in any material respect when made; or

(d)  Breach of, or a violation of, any covenant of Borrower made or given in connection with this Agreement; or

(e)  Subjection of the Collateral, or any part thereof, to attachment, levy, of execution or other judicial process; or

(f)  The occurrence of an assignment for the benefit of creditors by Borrower; the adjudication in bankruptcy of Borrower; the filing of a voluntary petition by Borrower under any of the provisions of the federal bankruptcy laws, or in any other insolvency proceeding; the filing of any answer or other pleading by Borrower admitting the material allegations of any petition filed against Borrower or failure of Borrower in any bankruptcy or insolvency proceeding; the filing of a petition under any of the provision of the federal bankruptcy laws against Borrower or the failure of Borrower to pay the said party's respective debts as they become due; or

(g)  The issuance of a notice of tax lien or the institution of proceedings in connection with the enforcement of a tax lien against Borrower or the failure by Borrower to pay, withhold, collect, or remit any tax or tax deficiency when assessed or due; or

(h)  Application for, consent to, or appointment without application of a receiver, trustee or liquidator for Borrower, or for any part of the Collateral or other assets of Borrower.

SECTION 12.  Remedies.  If any Event of Default shall have occurred and be continuing:

(a)    The Secured Party may exercise with respect to the Collateral, in addition to other rights and remedies provided for under this Agreement, or under the Note, or under any other instrument evidencing or securing the Obligations, or otherwise available to the Secured Party, all the rights and remedies of a secured party under the Uniform Commercial Code (hereinafter referred to as the "Code") when a debtor, which term *debtor* shall include for purposes of this Agreement Borrower, is in default (whether or not the Code applies to the affected Collateral) and also may (i) require Borrower to, and Borrower hereby agrees that it will, at Borrower's expense and upon request of the Secured Party forthwith assemble all or part of the Collateral requested by the Secured Party and make it available to the Secured Party at a place to be designated by the Secured Party which is reasonably convenient to both parties and (ii) without notice, except as specified below, sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of the Secured Party's offices or elsewhere, for cash or on credit (Borrower shall be credited with the net proceeds of such sale only when such proceeds are actually received by the Secured Party) or for future delivery, and at such price or prices and upon such other terms as is commercially reasonable.  The nature of any such sale as "commercially reasonable" shall be governed by the Uniform Commercial Code.  Borrower agrees, that to the extent notice of sale shall be required by law, notice to Borrower at least ten (10) days prior to the time and place of any public or private sale is to be held shall constitute reasonable notification.  The Secured Party shall not be obligated to make any sale of Collateral regardless of notice of sale having been given.  The Secured Party may postpone and adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may without further notice be made at the time and place to which it was so adjourned.  Re-notice to Borrower shall not then be required, and Borrower does hereby waive the necessity of such re-notice.

(b)    All cash proceeds (including proceeds from insurance) received by the Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Collateral may in the discretion of the Secured Party be held by the Secured Party as collateral for and/or then or at any time thereafter be applied (after payment of any amounts payable to the Secured Party pursuant to Section 13) in whole or in part by the Secured Party against all or any part of the sums due to the Secured Party under the Note or under any other instrument evidencing the Obligations in such order as the Secured Party shall elect.  Any surplus of such cash or cash proceeds held by the Secured Party remaining after payment in full of all of the principal and interest due under the Note or under any other instrument evidencing the Obligations shall be paid over to Borrower or to such party as may be lawfully entitled to receive such surplus.

SECTION 13.  Indemnity and Expenses.

(a)    Borrower shall and does hereby indemnify the Secured Party against any and all claims, losses, and liabilities growing out of or resulting from this Agreement (including, without limitation to, enforcement of this Agreement).

(b)    Borrower shall upon demand pay to the Secured Party the amount of any and all reasonable expenses, including the reasonable fees and disbursements of Secured Party's attorneys and of any experts and agents, which the Secured Party

may incur in connection with (i) the administration of this Agreement (ii) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, any of the Collateral; (iii) the exercise or enforcement of any of the rights of the Secured Party hereunder; or (iv) the failure by Borrower to perform or observe any of the provision hereof.

SECTION 14.  Amendments.  No amendment or waiver of any provision of this Agreement nor consent to any departure by Borrower herefrom shall in any event be effective unless the same shall be in writing and signed by the Secured Party, and then such wavier or consent shall be effective only in the specific instance and for the specific purpose for which it is given.

SECTION 15.  Addresses for Notices.  All notices and other communications provided for hereunder shall be in writing (including telegraphic communication) and, if to the Secured Party, mailed, telegraphed, faxed, or delivered to Secured Party, addressed to the Secured Party at 620 Reef Rd. Vero Beach, Florida 32963; if to Borrower, mailed, telegraphed, faxed, or delivered to Borrower, addressed to the Borrower at 620 Reef Rd., Vero Beach, Florida 32963, or as to either party at such other address as shall be designated by such party in a written notice to the other party supplying a new address for notices under the terms of this Section.  All such notices and other communications shall, when mailed, telegraphed, faxed, or delivered, respectively, be effective when deposited in the mails or delivered to the telegraph company, placed on the facsimile machine, or delivered respectively, addressed as aforesaid.

SECTION 16.  Continuing Security Interest; Transfer of Note.  This Agreement shall create a continuing security interest in the Collateral and shall (i) remain in full force and effect until written termination of this Agreement by the Secured Party, (ii) be binding upon Borrower, and Borrower's successors and assigns, and (iii) inure to the benefit of the Secured Party and the Secured Party's heirs, legal representatives, successors, participants, transferees and assigns.  Without limiting the generality of the foregoing clause (iii), the Secured Party may assign or otherwise transfer the Note, or any other instrument evidencing the Obligations, or this Agreement, or any other evidence of indebtedness held by the Secured Party to any other person or entity; and such other person or entity shall thereupon become vested with all the benefits in respect thereof granted to the Secured Party herein or otherwise.  Upon the termination of this Agreement by the Secured Party, all rights to the Collateral shall revert to Borrower.

SECTION 17.  Governing Law; Terms.  `This Agreement shall be governed by and constructed in accordance with the laws of the State of Florida.  Venue for any dispute hereunder shall lie in Indian River County, Florida.

SECTION 18.  Miscellaneous.

(a)    Time is of the essence as to all matters pertaining to this Agreement.

   (b) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

   (c) This Agreement is expressly cross-collateralized and cross-defaulted with all loan and security documents executed by and between Borrower, the Secured Party, or any guarantor or co-borrower.

   (d) Borrower expressly waives any and all rights or entitlements Borrower may have to a trial by jury in any dispute in connection with this instrument.

   (e) Waiver by Secured Party of any right or remedy under this Agreement on any occasion shall not constitute a waiver by Secured Party of the same right or remedy hereunder in the future.

  **IN WITNESS WHEREOF**, the undersigned have caused these presents to be executed on the dates set forth below.

**"BORROWER" or "DEBTOR"**

**VERACITY NETWORK, INC.**

**"SECURED PARTY"**

**BRIAN MAYO**

**STATE OF** _Florida_ )

COUNTY OF *Indian River*                          )ss:
                                                 )

I HEREBY CERTIFY that before me, a Notary Public, personally appeared *Christie Butler*, as *CFO* of Veracity Network, Inc., who did acknowledge and swear before me that said person executed the foregoing instrument for the uses and purposes therein set forth. I further state that **(check one)** ___✓___ I have examined the current driver's license of the aforesaid person **or** _____ I am familiar with the identity of the aforesaid person and have confirmed said person's identity.

**IN WITNESS WHEREOF**, I have hereunto set my hand and official seal at the County and State aforesaid this ___24th___ day of ___August___, 2011.

NOTARY PUBLIC, STATE OF FC
(Name: _____)

My commission expires:

(Affix Seal)

J. LOTT
Notary Public, State of Florida
Commission# DD895876
My comm. expires June 30, 2013

**STATE OF FLORIDA**                 )
COUNTY OF *Indian River* )        )ss:

I HEREBY CERTIFY that before me, a Notary Public, personally appeared **BRIAN MAYO**, who did acknowledge and swear before me that said person executed the foregoing instrument for the purposes therein set forth. I further state that **(check one)** ___✓___ I have examined the current driver's license of the aforesaid person, **or** _____ I am familiar with the identity of the aforesaid person, and have confirmed said person's identity.

**WITNESS** my hand and official seal in the state and county last aforesaid this ___24th___ day of ___August___, 2011.

NOTARY PUBLIC, STATE OF FLORIDA
(Name: _____)

My commission expires:              (Affix Seal)

J. LOTT
Notary Public, State of Florida
Commission# DD895876
My comm. expires June 30, 2013

F:\Barry\Corporate\Mayo\Veracity\Security Agreement.doc

Exhibit 4c

## AMENDMENT TO SECURED, REVOLVING, DEMAND PROMISSORY NOTE

This Amendment is dated the 15th Day of December, 2015, and is effective as of November 11, 2015, and amends the contract dated July 28, 2011, between Veracity Network, Inc. (the "Borrower"), in favor of Brian Mayo (the "Lender").

All terms and conditions of the original Agreement are to remain intact and in force except those detailed in this Amendment, which are mutually agreed upon by both parties.

**Whereas,** Borrower has executed a Secured, Revolving Demand Promissory More dated July 28, 2011 in the original principal amount of $200,000.00 (the "Note") in favor of the Lender; and

**Whereas,** the Lender is willing to increase the amount of principal of the Note, from time to time, and Borrower desires to borrow increased principal amounts ("Additional Principal Amounts").

**NOW THEREFORE,** for good and valuable consideration in hand paid and received, including the mutual promises and sums of money set forth in the Secured, Revolving, Demand Promissory Note dated July 28, 2011 the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to certain mutually agreed upon sums of cash, from time to time, over and above the original Note amount ($200,000.00).

The above recitals are affirmed as being true and correct and are hereby incorporated herein by reference.

Both parties agree that the following sections hereby replace the original sections of the Note, dated July 28, 2011.

SECTION 2 Revolving Loans.

a. Subject to the term and conditions hereof, during the period from the date hereof to the date of Demand, Lender agrees to make revolving loans to the Borrower in an aggregate principal amount at any time outstanding up to One Million Dollars (US $1,000,000.00), and Borrower may borrow, repay, and re-borrow such revolving loans Borrowings may be made by the Borrower from time to time from the Lender (each such borrow called a "Borrowing") with interest accruing from the date the amount of the Borrowing is received from the Lender (a "Utilization Day") upon the Borrower's written request. The principal amount of such Borrowing, together with the then outstanding aggregate principal balance of Borrowings, shall not exceed One Million US Dollars (US $1,000,000.00).

b. Notwithstanding anything to the contrary in the Note, Lender shall not be required to make any revolving loan to the Borrower for any or no reason.

**IN WITNESS WHEREOF,** the undersigned hereby execute this Amendment as of the date written above.

**Borrower:**

Veracity Network, Inc.

A Delaware Corporation

By: _____

Name: Al Gapsch

Title: Chief Operating Officer

**Lender:**

_____

Brian Mayo, individually

## EXECUTIVE EMPLOYMENT AGREEMENT

This EXECUTIVE EMPLOYMENT AGREEMENT (this "Agreement") is made, entered into and effective as of the **1st** day of **August, 2011**, by and between Veracity Network, Inc., a Delaware corporation ("Veracity"), and **Brian T. Mayo** ("Executive").

### RECITAL:

The Board of Directors of Veracity (the "Board") believes it is in Veracity's best interest to employ Executive as Veracity's **President and CEO**, and Executive accepts such employment, pursuant to the terms and conditions of this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing recital and the covenants, agreements, representations, warranties, terms and conditions set forth in this Agreement, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Veracity and Executive, intending to be legally bound, hereby agree as follows:

**1.**    **Employment.**  Veracity hereby employs Executive as **President and CEO** of Veracity, and Executive hereby accepts such employment, all upon the terms and conditions contained in this Agreement.

**A.**    **Executive's Representation.**  Executive represents, warrants and covenants to Veracity that Executive is not bound, nor will Executive become bound, by any covenant, contract, agreement or other obligation that may or does prevent Executive in any manner from (i) performing Executive's duties as **President and CEO** of Veracity, and/or (ii) fulfilling Executive's obligations pursuant to this Agreement.

**2.**    **Employment Period.**  Unless sooner terminated pursuant to the terms and conditions of this Agreement, the term of this Agreement shall commence on the date first above written, and shall automatically renew on an annual basis.

**3.**    **Compensation.**

**A.**    **Base Salary.**  Executive shall be entitled to receive a base salary during the term of this Agreement of at least **One Hundred Eighty Thousand Dollars** (**$180,000**) per year (the "Base Salary"), payable in accordance with the normal payroll policies of Veracity. The Base Salary shall be subject to all appropriate withholding taxes.

(i)    **Increases to Base Salary.**  The Board shall review the Base Salary on not less than an annual basis.  The Board, in its sole and absolute discretion, may elect to increase the Base Salary at any time, but shall not ever decrease the Base Salary below its then-current amount.  Any increase in the Base Salary shall constitute an amendment to this Agreement solely as to the amount of the Base Salary, without waiver or modification of any other terms or conditions of this Agreement.

**B.**    **Annual Bonus.**  Executive shall be entitled to receive an annual bonus ("Annual Bonus") in accordance with the Veracity Network Annual Bonus Program.

**C.**    **INITIAL STOCK INCENTIVE** to grant **Zero (0)** shares of common stock, plus an additional **Two Hundred Fifty Thousand (250,000)** options at fair market value, with the vesting schedule as determined by the board of directors.

Initials _____

**4.**    **Benefits.**    During the term of this Agreement, Executive shall be entitled to receive the following benefits from Veracity (collectively, "Benefits"):

**A.**    **Health Insurance.**    Veracity shall obtain on behalf of Executive, and maintain, health insurance coverage as the same is available to Veracity's other executive level employees;

**B.**    **Disability Insurance. ONCE THE COMPANY PUTS THIS PROGRAM INTO PLACE,** Veracity shall obtain on behalf of Executive, pay all premium amounts related to, and maintain, disability insurance in an amount equal to the maximum benefit allowed by the carrier of the Base Salary plus bonus, which the premium amounts for such disability insurance shall not exceed Ten Thousand Dollars ($10,000.00) per year;

**C.**    **Life Insurance.**    Veracity shall obtain on behalf of Executive, pay all premium amounts related to, and maintain, life insurance on the life of Executive, with such beneficiary(ies) as Executive may select in Executive's sole discretion, in an amount equal to $25,000. **ONCE THIS BENEFIT IS IMPLEMENTED,** this amount will increase to at least one times (1X) Base Salary, which the premium amounts for such life insurance shall not exceed ten percent (10%) of Base Salary;

**D.**    **Vehicle Allowance.**    Executive shall not be entitled to a vehicle allowance;

**E.**    **Retirement Plan. ONCE THE COMPANY PUTS THIS PROGRAM INTO PLACE,** Executive may participate in Veracity's 401(k) or similar retirement plan as the same is available to Veracity's other executive level employees;

**F.**    **Time-Off.**    Executive shall be entitled to such reasonable periods of paid time-off as are available to Veracity's other executive level employees and as may be mutually agreed upon by the Board and Executive from time to time. In no event, however, shall such periods of paid time-off be less than four (4) weeks per year. Executive shall be entitled to an additional unpaid week off per year, providing that the executive notifies Human Resources in writing at least one month in advance;

**G.**    **Employment Location.**    Executive shall be employed at Veracity's Sebastian, Florida location. If the company moves more than 30 miles from the Sebastian location, then the executive will be entitled to compensation by Veracity for any and all relocation expenses and any transportation related expenses as a result; and

**H.**    **Other Benefits.**    Executive shall be entitled to any benefit that is available to other Veracity employees

**5.**    **Business Expenses and Reimbursements.**    Executive shall be entitled to reimbursement by Veracity for ordinary and necessary business expenses incurred by Executive in the performance of Executive's duties (collectively, "Business Expenses"), which such Business Expenses shall be approved by Veracity in its sole and absolute discretion, and further provided that:

**A.**    Each such Business Expense is of a nature qualifying it as a deductible expense on the Federal income tax return of Veracity as a business expense, and not as deductible compensation to Executive; and

**B.**    Executive furnishes Veracity with adequate records and other documentary evidence required by applicable statutes, regulations and Veracity's policies for the substantiation of such Business Expenses as a deductible business expense of Veracity, and not as deductible compensation to Executive.

Initials

**6.** **"Key Employee" Insurance.** Veracity shall have the right to obtain on the life of Executive, pay all premium amounts related to, and maintain, "key employee" insurance naming Veracity as beneficiary. Selection of such insurance policy shall be in the sole and absolute discretion of the Board. Executive shall cooperate fully with Veracity, the Board, and the insurer in applying for, obtaining and maintaining such life insurance, by executing and delivering such further and other documents as Veracity, the Board and/or the insurer may request from time to time, and doing all matters and things which may be convenient or necessary to obtain such insurance, including, without limitation, submitting to any physical examinations and providing any medical information required by the insurer.

**7.** **Duties.** Executive shall utilize Executive's best efforts to do all of the following:

**A.** **Performance Requirements.** Executive shall perform all duties in connection with Executive's position as **President and CEO** of Veracity, or as otherwise designated by the Board, including, without limitation, participation in the general overall management of Veracity, and other such duties that as from time to time may be delegated or assigned to Executive by the Board;

**B.** **Direction and Control of the Board.** Executive shall at all times report to, and Executive's activities shall at all times be subject to the direction and control of, the Board;

**C.** **Adherence to Policies and Rules.** Executive shall abide by all by-laws, policies, rules and regulations as may be established from time to time by Veracity, the shareholders of Veracity and/or the Board; and

**D.** **Devotion of Professional Efforts.** Executive shall devote all of Executive's business and professional time, efforts, energy and skills to the performance of Executive's duties pursuant to this Agreement.

**(i)** **Exceptions.** Notwithstanding Section 7(D), Executive may: (a) invest Executive's personal assets in businesses in which Executive's participation is solely that of a passive investor, provided, however, the form or manner of such investment shall not require services on the part of Executive that conflict with Executive's duties pursuant to this Agreement; and (b) Executive shall be permitted to serve other public and private organizations, including without limitation, on the board of directors of such organizations, so long as such service does not compromise Executive's devotion of time and efforts to Veracity, and does not present a conflict of interest with regard to Veracity.

**8.** **Termination of Executive's Employment with Veracity.**

**A.** **Termination by Executive Without "Good Reason".** Executive, upon at least sixty (60) days' prior written notice to Veracity, shall have the right to terminate Executive's employment with Veracity at any time, for any reason or for no reason. Upon such termination by Executive, Veracity shall pay Executive all Base Salary, Annual Bonus (if already awarded), Stock Options, Business Expenses and Benefits which are due and accrued through the effective date of termination of Executive's employment with Veracity. All such amounts shall be payable to Executive within thirty (30) days of the effective date of termination of Executive's employment with Veracity.

**B.** **Termination by Executive for "Good Reason".** Executive, effective immediately upon written notice to Veracity, shall have the right to terminate Executive's employment with Veracity at any time, for any one of the following reasons (collectively, "Good Reason"):

Initials

(i)     Veracity's violation or breach of any material provision of this Agreement, including, without limitation, Executive being required to report to, or otherwise being subject to the direction and control of any other officer(s) and/or authority(ies) other than the Board;

(i)     material changes to Executive's title, working conditions or duties such that Executive's power, duties or working conditions are diminished, reduced or otherwise changed to include powers, duties or working conditions which are inconsistent with Executive's title and duties as set forth in this Agreement;

(ii)     any action by Veracity which does or would significantly diminish the opportunity for Executive to earn an annual bonus;

(iii)     any action by Veracity which does or would significantly diminish the aggregate value of the benefits;

(iv)     relocation of Executive's employment location outside of the State of Florida;

(v)     Veracity's failure to obtain in writing assumption of its rights and obligations pursuant to this Agreement within fifteen (15) days of a Change in Control (as defined in Section 8(G) below); and/or

(vi)     the deterioration of Executive's relationship with the Board and/or Veracity's officers, as determined by Executive in Executive's sole discretion, so as to make the performance of Executive's duties as set forth in this Agreement impossible or impracticable,

following written notification by Executive setting forth the specific nature of such Good Reason and Veracity's failure to cure to the satisfaction of Executive within fifteen (15) days (or longer in the event that such request cannot be reasonably responded to within a shorter period of time and further provided that Veracity has exercised good faith and due diligence in curing) of such notification.

Upon such termination by Executive for Good Reason, Veracity shall pay Executive all Base Salary, Annual Bonus (if already awarded), Stock Options, Business Expenses and Benefits which are due, have accrued, or will otherwise become due or accrue through the end of the term of this Agreement, or twelve (12) months, whichever is the greater amount of time (as if Executive's employment with Veracity was not prematurely terminated).  All such amounts shall be payable to Executive within ten (10) days of the effective date of termination of Executive's employment with Veracity. For purposes of Veracity's Stock Option Plans, Executive shall be deemed to be involuntarily terminated whereby all stock options granted in which Executive is or becomes fully vested shall be exercisable by Executive for a period of five years following the effective date of the termination of Executive's employment with Veracity or the remainder of the original exercise period as defined in the Stock Option Grant, whichever is less.

C.     **Termination Upon Executive's Death**.  In the event of the death of Executive during the term of this Agreement, Executive's employment with Veracity shall terminate effective as of the date of Executive's death.  Veracity shall pay Executive's estate all Base Salary, Annual Bonus (if already awarded), Stock Options, Business Expenses and Benefits which are due and accrued through the date of Executive's death.  All such amounts shall be payable to Executive's estate within ten (10) days of Executive's death.

4

Initials

**D.     Termination by Veracity Without "Cause".**  Veracity, upon at least sixty (60)days' prior written notice to Executive, shall have the right to terminate Executive's employment with Veracity at any time, for any reason or for no reason.   Upon such termination by Veracity, Veracity shall pay Executive all Base Salary, Annual Bonus, Stock Options, Business Expenses and Benefits which are due, have accrued, or will otherwise become due or accrue through the end of the term of this Agreement, or ten (10) months, whichever is the greater amount of time (as if Executive's employment with Veracity was not prematurely terminated).  All such amounts shall be payable to Executive within thirty (30) days of the effective date of termination of Executive's employment with Veracity. For purposes of Veracity's Stock Option Plans, Executive shall be deemed to be involuntarily terminated whereby all stock options granted in which Executive is or becomes fully vested shall be exercisable by Executive for a period of five years following the effective date of the termination of Executive's employment with Veracity or the remainder of the original exercise period as defined in the Stock Option Grant, whichever is less.

**E.     Termination by Veracity for Cause.**  Veracity, effective immediately upon written notice to Executive, shall have the right to terminate Executive's employment with Veracity at any time, for Cause (as defined below). Upon such termination by Veracity, Veracity shall pay Executive all Base Salary, Annual Bonus (if already awarded), Stock Options, Business Expenses and Benefits which are due and accrued through the effective date of termination of Executive's employment with Veracity.  All such amounts shall be payable to Executive within ten (10) days of the effective date of termination of Executive's employment with Veracity.

**(i)     Cause.**  For purposes of this Agreement, "Cause" shall mean Executive's (a) conviction of a felony or of any crime involving moral turpitude, and/or (b) being found guilty or otherwise pleading guilty to willful gross neglect or willful gross misconduct in performing Executive's duties pursuant to this Agreement.

**F.     Termination Upon Change of Control.**  In the event of Executive's termination of employment with Veracity upon, due to, or as a direct or indirect result of a Change of Control (as defined below), provided that Executive complies with Sections 8(H) 9, 10 and 12, Executive shall receive the following:

**(i)     Severance.**  Executive shall receive all Base Salary, Annual Bonus (if already awarded), Stock Options, Business Expenses and Benefits which are due, have accrued, or will otherwise become due or accrue for a period of twelve (12) months  (as if Executive's employment with Veracity was not prematurely terminated). All such amounts shall be payable to Executive within thirty (30) days of the effective date of termination of Executive's employment with Veracity; and

**(ii)     Acceleration of Stock Options.**

Immediately prior to the effective date of the Change of Control, one hundred percent (100%) of all outstanding Stock Options granted by Veracity to Executive together with any options issued in a tender offer in exchange for such outstanding Stock Options shall fully vest.  All such Options shall be exercisable by Executive for a period of five (5) years following the effective date of the termination of Executive's employment with Veracity or the remainder of the original exercise period as defined in the Stock Option Grant, whichever is less.

**G.     Definition of "Change of Control".**   For purposes of this Agreement, "Change of Control" means when:

5

Initials _ /Am(B)M_

(i)      any "person" (as defined by the Securities Exchange Act of 1934), other than a trustee or other fiduciary holding securities of Veracity under an employee benefit plan of Veracity, becomes the "beneficial owner" (as defined by Rule 13(d)(3) promulgated under the Securities Exchange Act of 1934), directly or indirectly, of securities of Veracity representing fifty percent (50%) or more of (a) the outstanding shares of common stock of Veracity or (b) the combined voting power of Veracity's then-outstanding securities;

(ii)      Veracity is party to a merger or consolidation, or series of related transactions, which results in the then-outstanding voting securities immediately prior thereto to fail to continue to represent at least fifty percent (50%) of the combined voting power of Veracity's voting securities or such surviving or other entity outstanding immediately after such merger or consolidation;

(iii)      there is a sale or disposition of all or substantially all of Veracity's assets, or consummation of any transaction or series of transactions having a similar effect, unless at least fifty percent (50%) of the combined voting power of the voting securities of the acquiring entity is held by persons who held the option securities of Veracity immediately prior to such transaction or series of transactions;

(iv)      there is a dissolution or liquidation of Veracity, unless after such liquidation or dissolution all or substantially all of the assets of Veracity are held in an entity at least fifty percent (50%) of the combined voting power of the voting securities of which is held by persons who held the voting securities of Veracity immediately prior to such liquidation or dissolution; and/or

(v)      any transaction or series of related transactions that has the substantial effect of any one or more of the foregoing occurrences.

**H.      Release.**  Veracity may condition the payments required pursuant to Section 8(F) upon delivery by Executive of a signed mutual release of known and unknown claims related to Executive's employment with Veracity.

**9.      Nonsolicitation and Noncompetition.**

**A.      Nonsolicitation.**  Executive shall not, at any time during the term of this Agreement, and for twelve (12) months after the effective date of the expiration or termination of the term of this Agreement, directly or indirectly, contact or proposition, or otherwise attempt to induce, nor accept the initiative of a third party in such regard, alone or by combining or conspiring with a third party, any employees, agents, consultants, representatives, contractors, vendors, suppliers, distributors, manufacturers, clients, customers or other business contacts of Veracity to terminate or modify their relationship with, or compete against, Veracity.

**B.      Noncompetition.**  Executive shall not, at any time during the term of this Agreement, and for twelve (12) months after the effective date of the expiration or termination of the term of this Agreement, directly or indirectly, personally or as an owner, officer, director, partner, employee, member, agent, consultant, representative, independent contractor, or in any other capacity whatsoever of any corporation or other entity, own, manage, operate, control or conduct any business or enterprise , or any other business in direct or indirect competition with Veracity or its affiliates and subsidiaries ("Competitive Business").  Any Competitive Business conducted through Internet, wireless or other similar telecommunication media that is viewable or usable anywhere within the world is prohibited pursuant to this Agreement.

**10.      Confidentiality.**

**A.      The Confidential Information.**  During the term of this Agreement, Executive may have access to, be trusted or become acquainted with, and/or may acquire,

Initials

knowledge and/or possession or control of various confidential, trade secret and/or proprietary information of Veracity and/or its clients and customers, including, without limitation, trade secrets, know-how, inventions (whether or not patentable), computer programs, techniques, processes, ideas, schematics, testing procedures, internal documentation, design and function specifications, product requirements, problem reports, analysis and performance information, client and customer lists, lead sheets and other technical, business, product, marketing and financial information, plans and data (collectively, the "Confidential Information").

**B.**   **Exclusions from the Confidential Information.**   The Confidential Information shall not include information that:   (i) becomes public without breach of this Agreement by Executive; (ii) was received by Executive from a third party not under any obligation of confidentiality to Veracity; or (iii) is required to be disclosed by Executive by law or a final order of a court or other governmental agency or authority of competent jurisdiction; provided, however, reasonable notice prior to any such disclosure shall be given to Veracity to allow sufficient time to obtain injunctive relief, protective order or similar remedy.

**C.**   **Non-disclosure of the Confidential Information.**   At all times from the date of this Agreement, Executive shall:  (i) not use or disclose (except as expressly authorized by this Agreement) the Confidential Information without the prior written consent of Veracity; (ii) take all reasonable measures to maintain the Confidential Information in confidence;  (iii) disclose the Confidential Information only to those who (a) have a confidentiality obligation in writing with Veracity and (b) are necessary for Executive to perform Executive's duties pursuant to this Agreement; and (iv) promptly report to Veracity any violation of the foregoing.

**D.**   **Executive's Acknowledgements.**   Executive acknowledges and agrees that the Confidential Information, and all copies and manifestations of the same, are, and shall remain at all times, the exclusive property of Veracity and/or its clients and customers. Executive acknowledges and agrees that the Confidential Information is a special and unique asset of Veracity and/or its clients and customers, created and/or obtained by Veracity and/or its clients or customers at considerable time and/or expense, from which Veracity and/or its clients and customers may or does derive independent economic value from the Confidential Information not being generally known to the public or third parties.

**E.**   **Return of Veracity Property.**   Executive shall, immediately upon Veracity's request, or the effective date of the termination of Executive's employment with Veracity: (i) all copies and manifestations of the Confidential Information that Executive may have or has access to; (ii) all documents, other materials and equipment provided by Veracity and/or its clients and customers; and (iii) all documents and materials that Executive prepared during Executive's employment with Veracity (collectively, the "Veracity Property"). Executive acknowledges and agrees that the Veracity Property is, and shall remain at all times, the exclusive property of Veracity.

**11,**   **Works-Made-for-Hire**.

**A.**   **Results Deemed Works-Made-for-Hire**.   The results of Executive's employment pursuant to this Agreement, including, without limitation, any works of authorship resulting from the performance of Executive's duties during Executive's employment with Veracity and any works in progress (collectively, "Results"), shall be deemed works-made-for-hire for the benefit of Veracity.  Veracity shall be deemed the sole owner throughout the universe of any and all such Results, whether or not now or hereafter known, existing, contemplated, recognized or developed, with the right to use the same in perpetuity in any manner Veracity, in its sole and absolute discretion, determines, without any further payment to Executive whatsoever.

**B.**   **Assignment and Waiver.**   If, for any reason, any of such Results shall not be legally deemed a work-made-for-hire, and/or there are any rights which do not accrue to

7

Initials _/s/_

Veracity pursuant to this Section, then Executive hereby irrevocably assigns and agrees to assign to Veracity any and all of Executive's right, title and interest thereto, including, without limitation, any and all copyrights, patents, trade secrets, trademarks and/or other rights of whatsoever nature therein, whether or not now or hereafter known, existing, contemplated, recognized or developed, and Veracity shall have the right to use the same in perpetuity throughout the universe in any manner it determines, in its sole discretion, without any further payment to Executive whatsoever. To the extent Executive has any rights in the Results that cannot be assigned in the manner described above, Executive hereby unconditionally and irrevocably waives the enforcement of such rights. This Section is subject to, and shall not be deemed to limit, restrict, or constitute any waiver by Veracity of, any rights of ownership to which Veracity may be entitled by operation of law.

      **C.**    **Further Assurances.** Executive shall, from time to time, as may be requested by Veracity, do any and all things which Veracity may deem useful, necessary or desirable to establish or document Veracity's exclusive ownership of any and all rights in any Results, including, without limitation, the execution of appropriate invention, copyright, trademark, and/or patent applications or assignments.

      **12.**    **Non-Disparagement.** Executive shall not, in any communications in any media, criticize, ridicule or make any statement which disparages or is derogatory of Veracity, Veracity's products or services, or any of Veracity's present, former or future shareholders, officers, directors, employees, affiliates and/or subsidiaries.

      **13.**    **Equitable Relief.** Veracity has entered into this Agreement in order to obtain the benefit of Executive's unique skills, talent, and experience. The parties enter into this Agreement with the understanding that the provisions of Sections 1(A), 9, 10, 11 and 12 are material terms of this Agreement, and that the Base Salary to be paid to Executive pursuant to this Agreement has been based in part on the value to Veracity of those Sections. Executive acknowledges and agrees that any breach or threatened breach of Section 1(A), 9, 10, 11 or 12 will result in irreparable damage to Veracity and, accordingly, Veracity may obtain injunctive relief, a decree of specific performance and/or any other equitable relief for any breach or threatened breach of Sections 1(A), 9, 10, 11 or 12, in addition to any other remedies available to Veracity, without being required to show any actual damage, or to post an injunction bond.

      **14.**    **Reasonableness of Restrictions.** The parties agree that the restrictions and remedies contained in Section 9, 10, 11, 12 and 13 are reasonable, recognizing the competitive nature of the business of Veracity, the nationwide and worldwide scope of similar businesses, the specialized expertise and knowledge Executive possesses, the unique and extraordinary nature of Executive's services, and the importance to Veracity of the Confidential Information to which Executive may be exposed during Executive's employment with Veracity. In addition, Executive hereby acknowledges and agrees that the faithful observance by Executive of the covenants contained in this Agreement will not cause Executive any undo hardship, financial or otherwise, and that the enforcement of each of the covenants contained in Sections 1(A), 9, 10, 11 and 12 will not impair Executive's ability to obtain employment. Therefore, it is Executive's intention and the intention of Veracity that the restrictions and remedies contained in Sections 1(A), 9, 10, 11, 12 and 13 shall be enforceable to the fullest extent permissible by law. If it shall be found by a court of competent jurisdiction that any such restriction or remedy is unenforceable but would be enforceable if some part thereof were deleted or the period or geographical area of application reduced, then such restriction or remedy shall apply with such modification as shall be necessary to make it enforceable. The period of time during which Executive is prohibited from engaging in certain activities pursuant to this Agreement shall be extended by the length of time during which Executive is in breach of the terms of any provision of this Agreement.

      **15.**    **Indemnification.**

Initials

**A.**    <u>Indemnification of Executive</u>.  Veracity agrees that if Executive is made a party, or is threatened to be made a party, to any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding"), by reason of the fact that Executive is or was a director, officer or employee of Veracity or is or was serving at the request of Veracity as a director, officer, member, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether or not the basis of such Proceeding is Executive's alleged action in an official capacity while serving as a director, officer, member, employee or agent, Executive shall be indemnified and held harmless by Veracity to the fullest extent legally permitted or authorized by Veracity's Articles of Incorporation, Bylaws or resolutions of the Board or, if greater, by the laws of the State of Florida, against all cost, expense, liability and loss (including, without limitation, attorney's fees, judgments, fines, ERISA excise taxes or other liabilities or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by Executive in connection therewith, and such indemnification shall continue as to Executive even if Executive has ceased to be a director, member, employee or agent of Veracity or other entity and shall inure to the benefit of Executive's heirs, executors and administrators.

**B.**    <u>Advancement of Costs</u>.  Veracity shall advance to the Executive all reasonable costs and expenses incurred by Executive in connection with a Proceeding within twenty (20) days after receipt by Veracity of a written request for such advance.  Such request shall include an undertaking by Executive to repay the amount of such advance if it shall ultimately be determined that Executive is not entitled to be indemnified against such costs and expenses; provided that the amount of such entitled to be indemnified against such costs and expenses; provided that the amount of such obligation to repay shall be limited to the after-tax amount of any such advance except to the extent Executive is able to offset such taxes incurred on the advance by the tax benefit, if any, attributable to a deduction for the repayment.

**C.**    <u>No Presumption of Standard of Conduct</u>.  Neither the failure of Veracity (including the Board, independent legal counsel or stockholders) to have made a determination prior to the commencement of any Proceeding concerning payment of amounts claimed by Executive under Section 15(B) above that indemnification of Executive is proper because he has met the applicable standard of conduct, nor a determination by Veracity (including the Board, independent legal counsel or stockholders) that Executive has not met such applicable standard of conduct, shall create a presumption in any judicial proceeding that Executive has not met the applicable standard of conduct.

**D.**    <u>D & O Insurance</u>.  Veracity shall maintain a directors' and officers' liability insurance policy covering Executive in an amount of no less than One Million ($1,000,000) Dollars.  In the event that Veracity does not maintain a directors' and officers' liability insurance policy covering Executive, even after Executive is no longer employed by Veracity, then Veracity shall be responsible for no less than One Million ($1,000,000) Dollars in identical liability coverage protecting the Executive.

**16.**    <u>Contingency Related to Veracity Network, Inc. and Survival</u>.

A.    <u>Contingency.</u>  In the event Veracity does not acquire the assets of Veracity Network, Inc. on or before August 31, 2011, this agreement shall terminate at the discretion of Executive. If Executive chooses to terminate the contract under this Section, Executive must give Veracity written notice of termination by September 1, 2011 and there shall be no further rights or obligations of either party except for Section 12 of this agreement.  All other rights and obligations including Sections 1(A), 9, 10, and 11 shall cease at the time of notice under this Section.

B.    <u>Survival.</u>  If Executive does not terminate this agreement under Section 16 (A), Executive's obligations under Sections 1(A), 9, 10, 11, 12, 15 and 17 shall remain in full force

Initials _____

**If to Veracity:**                           **With a copy to:**

Veracity Network, Inc.                        Gunster, Yoakley & Stewart, P.A.
620 Reef Road                                 777 South Flagler Drive, Suite 500 East
Vero Beach, FL 32963                          West Palm Beach, Florida  33401
Telefax: (772) 231-8738                       Telefax: (561) 655-5677
Attention: Board of Directors                 Attention: David G. Bates, Esq.

or to such other address as any party may designate by notice complying with the terms of this Section. Each such communication shall be deemed delivered (i) on the date delivered if hand delivered; (ii) on the date of transmission with confirmed answer back if by electronic transmission; and (iii) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed.

      **G.**    **Governing Law.**  This Agreement and all transactions contemplated by this Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Florida, without regard to principles of conflicts of laws.

      **H.**    **Jurisdiction and Venue.**  The parties acknowledge that a substantial portion of the negotiations, anticipated performance and execution of this Agreement occurred or shall occur in Indian River County, Florida.  Any civil action or legal proceeding arising out of or relating pursuant to this Agreement shall be brought in the courts of record of the State of Florida in Indian River County or the United States District Court, Southern District of Florida. Each party consents to the jurisdiction of such court in any such civil action or legal proceeding and waives any objection to the laying of venue of any such civil action or legal proceeding in such court.  Service of any court paper may be effected on such party by mail or in such other manner as may be provided under applicable laws, rules of procedure or local rules.

      **I.**    **Enforcement Costs.**  If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees, court costs and all reasonable expenses even if not taxable as court costs (including, without limitation, all such fees, costs and expenses incident to appeals), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

      **J.**    **Headings for Reference Only**.  The headings contained in this Agreement are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of this Agreement.

      **K.**    **Advice of Counsel**.  EACH PARTY ACKNOWLEDGES THAT IT HAS BEEN ADVISED BY ITS OWN COUNSEL, OR HAS HAD THE OPPORTUNITY TO CONSULT WITH COUNSEL, WITH RESPECT TO THIS AGREEMENT.

      **L.**    **Construction.**  This Agreement is a negotiated document and shall not be construed more strongly against any party regardless of who is responsible for its preparation.

      **M.**    **Agreement May Be Signed in Counterparts.**  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.  Confirmation of execution

Initials

by electronic transmission of a facsimile signature page shall be binding on a party so confirming.

**N.**    **Entire Agreement**.  This Agreement represents the entire understanding and agreement between the parties with respect to its subject matter, and supersedes all other negotiations, understandings and representations (if any) made by and between the parties.

Veracity and Executive have each executed this Agreement as of the day and year first above written.

**Veracity Network, Inc.:**

(Signature)

Print Name:  **Brian T. Mayo**
Title:    **President and CEO**
Date:___8/1/2011_____

**Executive:**

(Signature)    COO

Print Name:  **Paul Micciche**
Date:___8/1/11_____

12                                                      Initials

Exhibit 6

## Veracity Network, Inc.

10/3/2017 3:06 PM

Register: 21000 · Accounts Payable
From 01/01/2011 through 10/03/2017
Sorted by: Date, Type, Number/Ref

| Date | Number | Vendor | Account | Memo | Billed | C | Paid | Balance |
|------|--------|--------|---------|------|-------|---|------|---------|
| 05/18/2011 | Orig. Sto... | Mayo, Brian | -split- | | | | 1.00 | -1.00 |
| 05/31/2011 | 5/31/11 | Ryan, Elaine | 1800 · Consultants / I... | | 92.15 | | | 91.15 |
| 06/30/2011 | 6/30/11 E... | Mayo, Brian | split- | | 19,828.83 | | | 19,919.98 |
| 06/30/2011 | 6/30/11 E... | Mayo, Brian | split- | | 2,614.14 | | | 22,534.12 |
| 06/30/2011 | 416794 | Gunster | 6700 · Professional F... | | 2,399.80 | | | 24,933.92 |
| 06/30/2011 | 416800 | Gunster | 9200 · Organizational... | | 463.84 | | | 25,397.76 |
| 07/31/2011 | July IC | Dozier, Charles | 1800 · Consultants / I... | | 2,000.00 | | | 27,397.76 |
| 07/31/2011 | July IC | Graaf, Alton | 1800 · Consultants / I... | | 3,000.00 | | | 30,397.76 |
| 07/31/2011 | July IC | Micciche, Paul | 1800 · Consultants / I... | | 2,500.00 | | | 32,897.76 |
| 07/31/2011 | July IC | Rivera, Alberto | 1800 · Consultants / I... | | 2,000.00 | | | 34,897.76 |
| 07/31/2011 | July IC | Zimmerman, Gary | 1800 · Consultants / I... | | 2,000.00 | | | 36,897.76 |
| 07/31/2011 | 7/13/11 EP | Zimmerman, Gary | split- | | 182.00 | | | 37,079.76 |
| 07/31/2011 | 7/31/11 EP | Micciche, Paul | 1700 · Computer and ... | | 142.98 | | | 37,222.74 |
| 07/31/2011 | 7-11 Inte... | Mayo, Brian | 3400 · Interest Expense | | 61.64 | | | 37,284.38 |
| 07/31/2011 | 417787 | Gunster | 6700 · Professional F... | | 15,066.80 | | | 52,351.18 |
| 08/01/2011 | 5002 | Dozier, Charles | 0010 · Checking Acc... | | | | 4,000.00 | 48,351.18 |
| 08/01/2011 | 5001 | Graaf, Alton | 0010 · Checking Acc... | | | | 6,000.00 | 42,351.18 |
| 08/01/2011 | 5005 | Micciche, Paul | 0010 · Checking Acc... | | | | 7,500.00 | 34,851.18 |
| 08/01/2011 | 5003 | Rivera, Alberto | 0010 · Checking Acc... | | | | 4,000.00 | 30,851.18 |
| 08/01/2011 | 5004 | Zimmerman, Gary | 0010 · Checking Acc... | | | | 4,000.00 | 26,851.18 |
| 08/01/2011 | 5007 | Micciche, Paul | 0010 · Checking Acc... | | | | 142.98 | 26,708.20 |
| 08/01/2011 | 5008 | NCNP | 0010 · Checking Acc... | | | | 850.00 | 25,858.20 |
| 08/01/2011 | 5006 | Zimmerman, Gary | 0010 · Checking Acc... | | | | 182.00 | 25,676.20 |
| 08/01/2011 | August IC | Dozier, Charles | 1800 · Consultants / I... | | 2,000.00 | | | 27,676.20 |
| 08/01/2011 | August IC | Graaf, Alton | 1800 · Consultants / I... | | 3,000.00 | | | 30,676.20 |
| 08/01/2011 | August IC | Micciche, Paul | 1800 · Consultants / I... | | 5,000.00 | | | 35,676.20 |
| 08/01/2011 | August IC | Rivera, Alberto | 1800 · Consultants / I... | | 2,000.00 | | | 37,676.20 |
| 08/01/2011 | August IC | Zimmerman, Gary | 1800 · Consultants / I... | | 2,000.00 | | | 39,676.20 |
| 08/01/2011 | August S... | NCNP | 0000 · Advertising an... | | 850.00 | | | 40,526.20 |
| 08/03/2011 | 2868 | Short Run Printing S... | 6600 · Printing and R... | | 129.32 | | | 40,655.52 |
| 08/03/2011 | 2869 | Short Run Printing S... | 6600 · Printing and R... | | 326.48 | | | 40,982.00 |
| 08/03/2011 | 3942 | Sign-A-Rama | 0000 · Advertising an... | | 100.70 | | | 41,082.70 |
| 08/09/2011 | 5009 | Short Run Printing S... | 0010 · Checking Acc... | | | | 455.80 | 40,626.90 |
| 08/09/2011 | 5010 | Sign-A-Rama | 0010 · Checking Acc... | | | | 100.70 | 40,526.20 |
| 08/16/2011 | 8/16/11 E... | Mayo, Brian | split- | | 676.03 | | | 41,202.23 |
| 08/20/2011 | 8/20/11 EP | Zimmerman, Gary | split- | | 1,646.04 | | | 42,848.27 |
| 08/20/2011 | 8/20/11 E... | Mayo, Brian | split- | | 3,087.55 | | | 45,935.82 |
| 08/24/2011 | 5017 | Gunster | 0010 · Checking Acc... | | | | 15,066.80 | 30,869.02 |
| 08/31/2011 | BofA-HC... | Zimmerman, Gary | 0010 · Checking Acc... | | | | 1,646.04 | 29,222.98 |
| 08/31/2011 | Sept. Min... | Mayo, Brian | 3100 · Secured Note -... | | 301.37 | | | 29,524.35 |

## Veracity Network, Inc.

10/3/2017 3:06 PM

Register: 21000 · Accounts Payable
From 01/01/2011 through 10/03/2017
Sorted by: Date, Type, Number/Ref

| Date | Number | Vendor | Account | Memo | Billed | C | Paid | Balance |
|---|---|---|---|---|---|---|---|---|
| 08/31/2011 | 8-11 Inte... | Mayo, Brian | 63400 · Interest Expense | | 636.99 | | | 30,161.34 |
| 08/31/2011 | 60995 | Rossway Moore Tayl... | 56700 · Professional F... | | 939.54 | | | 31,100.88 |
| 08/31/2011 | 306328 | Stevens & Lee | 19100 · Intangible Ass... | | 5,356.85 | | | 36,457.73 |
| 08/31/2011 | 309353 | Stevens & Lee | 19100 · Intangible Ass... | | 6,418.87 | | | 42,876.60 |
| 08/31/2011 | 313597 | Stevens & Lee | 19100 · Intangible Ass... | | 446.42 | | | 43,323.02 |
| 08/31/2011 | 318153 | Stevens & Lee | 19100 · Intangible Ass... | | 1,830.00 | | | 45,153.02 |
| 08/31/2011 | 322046 | Stevens & Lee | 19100 · Intangible Ass... | | 7,131.29 | | | 52,284.31 |
| 08/31/2011 | 419180 | Gunster | 19100 · Intangible Ass... | | 24,113.48 | | | 76,397.79 |
| 08/31/2011 | 419185 | Gunster | -split- | | 25,635.47 | | | 102,033.26 |
| 08/31/2011 | Credit for... | Stevens & Lee | 13200 · Retainers and ... | | | | 5,000.00 | 97,033.26 |
| 09/01/2011 | Sept IC | Dozier, Charles | 51800 · Consultants / I... | | 3,000.00 | | | 100,033.26 |
| 09/01/2011 | Sept IC | Graaf, Alton | 51800 · Consultants / I... | | 5,000.00 | | | 105,033.26 |
| 09/01/2011 | Sept IC | Micciche, Paul | 51800 · Consultants / I... | | 5,000.00 | | | 110,033.26 |
| 09/01/2011 | Sept IC | Rivera, Alberto | 51800 · Consultants / I... | | 3,000.00 | | | 113,033.26 |
| 09/01/2011 | Sept IC | Zack, Thomas | 51800 · Consultants / I... | | 1,000.00 | | | 114,033.26 |
| 09/01/2011 | Sept IC | Zimmerman, Gary | 51800 · Consultants / I... | | 2,000.00 | | | 116,033.26 |
| 09/01/2011 | 9/1/11 E... | Mayo, Brian | -split- | | 634.78 | | | 116,668.04 |
| 09/01/2011 | Sept IC - 2 | Zack, Thomas | 51800 · Consultants / I... | | 1,000.00 | | | 117,668.04 |
| 09/01/2011 | 9/1/11 E... | Mayo, Brian | 58300 · Tradeshows an... | | 887.67 | | | 118,555.71 |
| 09/01/2011 | 9/1/11 E... | Mayo, Brian | -split- | | 702.43 | | | 119,258.14 |
| 09/01/2011 | 777208 | Apptix, Inc | 51700 · Computer and ... | | 103.46 | | | 119,361.60 |
| 09/02/2011 | BofA-H6... | Dozier, Charles | 0010 · Checking Acc... | | | | 3,000.00 | 116,361.60 |
| 09/02/2011 | BofA-H4... | Graaf, Alton | 0010 · Checking Acc... | | | | 5,000.00 | 111,361.60 |
| 09/02/2011 | BofA-H7... | Micciche, Paul | 0010 · Checking Acc... | | | | 5,000.00 | 106,361.60 |
| 09/02/2011 | BofA-H6... | Rivera, Alberto | 0010 · Checking Acc... | | | | 3,000.00 | 103,361.60 |
| 09/02/2011 | BofA-H7... | Zack, Thomas | 0010 · Checking Acc... | | | | 1,000.00 | 102,361.60 |
| 09/02/2011 | BofA-H6... | Zimmerman, Gary | 0010 · Checking Acc... | | | | 2,000.00 | 100,361.60 |
| 09/06/2011 | BofA-GH... | Zack, Thomas | 0010 · Checking Acc... | | | | 1,000.00 | 99,361.60 |
| 09/08/2011 | BofA-31... | Apptix, Inc | 0010 · Checking Acc... | | | | 103.46 | 99,258.14 |
| 09/12/2011 | 4917278 | Monster | 62600 · Employee Exp... | | 300.00 | | | 99,558.14 |
| 09/14/2011 | BofA-5Z... | Mayo, Brian | 0010 · Checking Acc... | | | | 1,000.00 | 98,558.14 |
| 09/16/2011 | BofA-VB... | Gunster | 0010 · Checking Acc... | | | | 2,863.64 | 95,694.50 |
| 09/26/2011 | BofA-KQ... | Monster | 0010 · Checking Acc... | | | | 300.00 | 95,394.50 |
| 09/27/2011 | BofA-T2... | Rossway Moore Tayl... | 0010 · Checking Acc... | | | | 939.54 | 94,454.96 |
| 09/27/2011 | BofA-BV... | Ryan, Elaine | 0010 · Checking Acc... | | | | 92.15 | 94,362.81 |
| 09/30/2011 | 9/30/11 EP | Butler, Chris | 61900 · Office Expense | | 446.34 | | | 94,809.15 |
| 09/30/2011 | 420121 | Gunster | 19100 · Intangible Ass... | | 1,768.37 | | | 96,577.52 |
| 09/30/2011 | 420125 | Gunster | 56700 · Professional F... | | 1,585.48 | | | 98,163.00 |
| 10/01/2011 | Oct IC | Dozier, Charles | 51800 · Consultants / I... | | 3,000.00 | | | 101,163.00 |
| 10/01/2011 | Oct IC | Graaf, Alton | 51800 · Consultants / I... | | 5,000.00 | | | 106,163.00 |

## Veracity Network, Inc.

10/3/2017 3:06 PM

Register: 21000 · Accounts Payable
From 01/01/2011 through 10/03/2017
Sorted by: Date, Type, Number/Ref

| Date | Number | Vendor | Account | Memo | Billed | C | Paid | Balance |
|------|--------|--------|---------|------|-------:|---|-----:|--------:|
| 10/01/2011 | Oct IC | Micciche, Paul | ·1800 · Consultants / I... | | 5,000.00 | | | 111,163.00 |
| 10/01/2011 | Oct IC | Rivera, Alberto | ·1800 · Consultants / I... | | 3,000.00 | | | 114,163.00 |
| 10/01/2011 | Oct IC | Zimmerman, Gary | ·1800 · Consultants / I... | | 2,000.00 | | | 116,163.00 |
| 10/01/2011 | Oct IC | Zack, Thomas | ·1800 · Consultants / I... | | 2,000.00 | | | 118,163.00 |
| 10/03/2011 | BofA-GX... | Dozier, Charles | 0010 · Checking Acc... | | | | 3,000.00 | 115,163.00 |
| 10/03/2011 | BofA-GV... | Graaf, Alton | 0010 · Checking Acc... | | | | 5,000.00 | 110,163.00 |
| 10/03/2011 | BofA-GY... | Micciche, Paul | 0010 · Checking Acc... | | | | 5,000.00 | 105,163.00 |
| 10/03/2011 | BofA-GY... | Rivera, Alberto | 0010 · Checking Acc... | | | | 3,000.00 | 102,163.00 |
| 10/03/2011 | BofA-GZ... | Zack, Thomas | 0010 · Checking Acc... | | | | 2,000.00 | 100,163.00 |
| 10/03/2011 | BofA-GY... | Zimmerman, Gary | 0010 · Checking Acc... | | | | 2,000.00 | 98,163.00 |
| 10/08/2011 | Oct 8, 2011 | AT&T | ·1700 · Computer and ... | | 276.50 | | | 98,439.50 |
| 10/14/2011 | BofA-L8... | Gunster | 0010 · Checking Acc... | | | | 24,113.48 | 74,326.02 |
| 10/14/2011 | BofA-4G... | Gunster | 0010 · Checking Acc... | | | | 25,635.47 | 48,690.55 |
| 10/19/2011 | BofA-3B... | AT&T | 0010 · Checking Acc... | | | | 276.50 | 48,414.05 |
| 10/31/2011 | 421167 | Gunster | 6700 · Professional F... | | 721.24 | | | 49,135.29 |
| 11/01/2011 | Nov IC | Dozier, Charles | 1800 · Consultants / I... | | 3,000.00 | | | 52,135.29 |
| 11/01/2011 | Nov IC | Graaf, Alton | ·1800 · Consultants / I... | | 5,000.00 | | | 57,135.29 |
| 11/01/2011 | Nov IC | Rivera, Alberto | ·1800 · Consultants / I... | | 3,000.00 | | | 60,135.29 |
| 11/01/2011 | Nov IC | Micciche, Paul | ·1800 · Consultants / I... | | 5,000.00 | | | 65,135.29 |
| 11/01/2011 | Nov IC | Zack, Thomas | ·1800 · Consultants / I... | | 2,000.00 | | | 67,135.29 |
| 11/01/2011 | 11/1/12 E... | Mayo, Brian | split- | | 1,259.86 | | | 68,395.15 |
| 11/01/2011 | 11/1/12 E... | Mayo, Brian | split- | | 317.96 | | | 68,713.11 |
| 11/02/2011 | BofA-4P... | Dozier, Charles | 0010 · Checking Acc... | | | | 3,000.00 | 65,713.11 |
| 11/02/2011 | BofA-4L... | Graaf, Alton | 0010 · Checking Acc... | | | | 5,000.00 | 60,713.11 |
| 11/02/2011 | BofA-4P... | Micciche, Paul | 0010 · Checking Acc... | | | | 5,000.00 | 55,713.11 |
| 11/02/2011 | BofA-4P... | Rivera, Alberto | 0010 · Checking Acc... | | | | 3,000.00 | 52,713.11 |
| 11/02/2011 | BofA-4Q... | Zack, Thomas | 0010 · Checking Acc... | | | | 2,000.00 | 50,713.11 |
| 11/03/2011 | BofA-2N... | Stevens & Lee | 0010 · Checking Acc... | | | | 16,183.43 | 34,529.68 |
| 11/08/2011 | Nov 8, 2... | AT&T | ·1700 · Computer and ... | | 119.63 | | | 34,649.31 |
| 12/01/2011 | Dec IC | Dozier, Charles | ·1800 · Consultants / I... | | 3,000.00 | | | 37,649.31 |
| 12/01/2011 | Dec IC | Graaf, Alton | ·1800 · Consultants / I... | | 5,000.00 | | | 42,649.31 |
| 12/01/2011 | Dec IC | Micciche, Paul | ·1800 · Consultants / I... | | 5,000.00 | | | 47,649.31 |
| 12/01/2011 | Dec IC | Rivera, Alberto | ·1800 · Consultants / I... | | 3,000.00 | | | 50,649.31 |
| 12/01/2011 | Dec IC | Zack, Thomas | ·1800 · Consultants / I... | | 2,000.00 | | | 52,649.31 |
| 12/05/2011 | BofA-R2... | Dozier, Charles | 0010 · Checking Acc... | | | | 3,000.00 | 49,649.31 |
| 12/05/2011 | BofA-R0... | Graaf, Alton | 0010 · Checking Acc... | | | | 5,000.00 | 44,649.31 |
| 12/05/2011 | BofA-R2... | Micciche, Paul | 0010 · Checking Acc... | | | | 5,000.00 | 39,649.31 |
| 12/05/2011 | BofA-R2... | Rivera, Alberto | 0010 · Checking Acc... | | | | 3,000.00 | 36,649.31 |
| 12/05/2011 | BofA-R3... | Zack, Thomas | 0010 · Checking Acc... | | | | 2,000.00 | 34,649.31 |
| 12/05/2011 | BofA-S8... | Butler, Chris | 0010 · Checking Acc... | | | | 446.34 | 34,202.97 |

## Veracity Network, Inc.

10/3/2017 3:06 PM

Register: 21000 · Accounts Payable
From 01/01/2011 through 10/03/2017
Sorted by: Date, Type, Number/Ref

| Date | Number | Vendor | Account | Memo | Billed | C | Paid | Balance |
|------|--------|--------|---------|------|--------|---|------|---------|
| 12/06/2011 | BofA-ON... | AT&T | 0010 · Checking Acc... | | | | 119.63 | 34,083.34 |
| 12/08/2011 | BofA-M7... | Gunster | 0010 · Checking Acc... | | | | 4,075.09 | 30,008.25 |
| 12/08/2011 | Dec 8,2011 | AT&T | 1700 · Computer and ... | | 119.63 | | | 30,127.88 |
| 01/06/2012 | BofA-GN... | AT&T | 0010 · Checking Acc... | | | | 119.63 | 30,008.25 |
| 04/04/2012 | 4/4/12 E... | Butler, Chris | -split- | | 162.84 | | | 30,171.09 |
| 05/21/2012 | 5/21/12 E... | Mayo, Brian | -split- | | 1,532.08 | | | 31,703.17 |
| 06/05/2012 | 01562012 | Techsol | -split- | | 1,845.19 | | | 33,548.36 |
| 06/05/2012 | 01572012 | Techsol | 2100 · Repairs - Cont... | | 1,500.00 | | | 35,048.36 |
| 06/14/2012 | 5061 | Mayo, Brian | 0010 · Checking Acc... | | | | 1,532.08 | 33,516.28 |
| 06/15/2012 | 5062 | Techsol | 0010 · Checking Acc... | | | | 3,345.19 | 30,171.09 |
| 07/24/2012 | BofAXN... | Butler, Chris | 0010 · Checking Acc... | | | | 162.84 | 30,008.25 |
| 11/11/2012 | 03222012 | Techsol | 7200 · Repairs and M... | | 1,398.03 | | | 31,406.28 |
| 11/15/2012 | 111512E... | Dozier, Charles | -split- | | 1,339.58 | | | 32,745.86 |
| 11/16/2012 | 03202012 | Techsol | 7200 · Repairs and M... | | 1,552.90 | | | 34,298.76 |
| 11/30/2012 | BofA-3S... | Dozier, Charles | 0010 · Checking Acc... | | | | 1,339.58 | 32,959.18 |
| 12/05/2012 | BofA-BC... | Techsol | 0010 · Checking Acc... | | | | 3,388.65 | 29,570.53 |
| 12/05/2012 | 03392012 | Techsol | 7200 · Repairs and M... | | 437.72 | | | 30,008.25 |
| 01/31/2013 | | Rosenblatt, Marc | -split- | | 405.86 | | | 30,414.11 |
| 02/28/2013 | | Rosenblatt, Marc | -split- | | 1,198.39 | | | 31,612.50 |
| 03/13/2013 | 077777 | Rosenblatt, Marc | -split- | | 1,183.79 | | | 32,796.29 |
| 03/13/2013 | 077778 | Rosenblatt, Marc | 4900 · Office Expense | | 99.41 | | | 32,895.70 |
| 03/21/2013 | BofA K... | Rosenblatt, Marc | 0010 · Checking Acc... | | | | 1,283.20 | 31,612.50 |
| 03/31/2013 | | Rosenblatt, Marc | -split- | | 268.13 | | | 31,880.63 |
| 04/30/2013 | | Rosenblatt, Marc | -split- | | 441.10 | | | 32,321.73 |
| 05/30/2013 | 05302013 | Techsol | 2200 · Repairs - Parts... | | 267.95 | | | 32,589.68 |
| 05/31/2013 | | Rosenblatt, Marc | -split- | | 463.71 | | | 33,053.39 |
| 06/15/2013 | 6/15/201... | Mayo, Brian | -split- | | 1,359.77 | | | 34,413.16 |
| 06/15/2013 | 06/15/13 ... | Mayo, Brian | -split- | | 2,533.97 | | | 36,947.13 |
| 06/15/2013 | 6/15/13 E... | Mayo, Brian | -split- | | 1,316.85 | | | 38,263.98 |
| 06/15/2013 | 06/15/13 ... | Mayo, Brian | -split- | | 279.20 | | | 38,543.18 |
| 06/15/2013 | 06/15/13 ... | Mayo, Brian | 4300 · Meals and Ent... | | 1,341.96 | | | 39,885.14 |
| 06/30/2013 | | Rosenblatt, Marc | -split- | | 713.05 | | | 40,598.19 |
| 06/30/2013 | 6/30/13 E... | Mayo, Brian | -split- | | 885.23 | | | 41,483.42 |
| 06/30/2013 | 6/30/13 E... | Mayo, Brian | -split- | | 2,904.00 | | | 44,387.42 |
| 06/30/2013 | 3484 | Softweb Creations, L... | 2100 · Repairs - Cont... | | 1,500.00 | | | 45,887.42 |
| 07/04/2013 | 070413E... | Softweb Creations, L... | -split- | | 610.94 | | | 46,498.36 |
| 07/04/2013 | 070413E... | Dozier, Charles | -split- | VOID: | | X | | 46,498.36 |
| 07/04/2013 | 0704201... | Dozier, Charles | -split- | | 579.42 | | | 47,077.78 |
| 07/05/2013 | 070513E... | Techsol | -split- | | 1,745.95 | | | 48,823.73 |
| 07/05/2013 | 070513E... | Techsol | -split- | | 941.78 | | | 49,765.51 |

## Veracity Network, Inc.

10/3/2017 3:06 PM

Register: 21000 · Accounts Payable
From 01/01/2011 through 10/03/2017
Sorted by: Date, Type, Number/Ref

| Date | Number | Vendor | Account | Memo | Billed | C | Paid | Balance |
|------|--------|--------|---------|------|-------:|---|-----:|--------:|
| 07/05/2013 | 01702013 | Techsol | 2100 · Repairs - Cont… | | 625.00 | | | 50,390.51 |
| 07/12/2013 | 3486 | Softweb Creations, L… | 2100 · Repairs - Cont… | | 1,250.00 | | | 51,640.51 |
| 07/14/2013 | 071413E… | Softweb Creations, L… | split- | | 353.38 | | | 51,993.89 |
| 07/14/2013 | 01762013 | Techsol | 2100 · Repairs - Cont… | | 625.00 | | | 52,618.89 |
| 07/16/2013 | BofA DX… | Dozier, Charles | 0010 · Checking Acc… | | | | 579.42 | 52,039.47 |
| 07/24/2013 | BofA-VL… | Softweb Creations, L… | 0010 · Checking Acc… | | | | 1,500.00 | 50,539.47 |
| 07/31/2013 | | Rosenblatt, Marc | split- | | 453.21 | | | 50,992.68 |
| 08/15/2013 | BofA-RL… | Softweb Creations, L… | 0010 · Checking Acc… | | | | 964.32 | 50,028.36 |
| 08/20/2013 | BofA-B4… | Dozier, Charles | 0010 · Checking Acc… | | | X | | 50,028.36 |
| 08/20/2013 | BofA-7V… | Techsol | 0010 · Checking Acc… | | | | 1,250.00 | 48,778.36 |
| 08/21/2013 | 082113E… | Techsol | 2200 · Repairs - Parts… | | 174.88 | | | 48,953.24 |
| 08/28/2013 | 070513Inv | Dozier, Charles | 2100 · Repairs - Cont… | | 600.00 | | | 49,553.24 |
| 08/29/2013 | BofA-CX… | Techsol | 0010 · Checking Acc… | | | | 3,130.56 | 46,422.68 |
| 08/31/2013 | | Rosenblatt, Marc | split- | | 698.57 | | | 47,121.25 |
| 09/03/2013 | BofA-TP… | Dozier, Charles | 0010 · Checking Acc… | | | | 600.00 | 46,521.25 |
| 09/15/2013 | | Softweb Creations, L… | 2100 · Repairs - Cont… | | 1,500.00 | | | 48,021.25 |
| 09/18/2013 | | Dozier, Charles | 2100 · Repairs - Cont… | | 650.00 | | | 48,671.25 |
| 09/20/2013 | | Dozier, Charles | split- | | 252.27 | | | 48,923.52 |
| 09/20/2013 | | Heineck, Carl L. | 2100 · Repairs - Cont… | | 1,000.00 | | | 49,923.52 |
| 09/21/2013 | | Gapsch, Al | -split- | | 1,017.67 | | | 50,941.19 |
| 09/21/2013 | | Gapsch, Al | -split- | | 215.42 | | | 51,156.61 |
| 09/30/2013 | | Softweb Creations, L… | 0010 · Checking Acc… | | | | 1,250.00 | 49,906.61 |
| 09/30/2013 | | Softweb Creations, L… | 0010 · Checking Acc… | | | | 1,500.00 | 48,406.61 |
| 09/30/2013 | 3508 | Softweb Creations, L… | 2100 · Repairs - Cont… | | 1,500.00 | | | 49,906.61 |
| 09/30/2013 | 3509 | Softweb Creations, L… | 2100 · Repairs - Cont… | | 1,250.00 | | | 51,156.61 |
| 10/01/2013 | | Techsol | 7200 · Repairs and M… | | 5,002.47 | | | 56,159.08 |
| 10/04/2013 | AWD | Gapsch, Al | 0010 · Checking Acc… | | | | 1,233.09 | 54,925.99 |
| 10/04/2013 | AWD | Heineck, Carl L. | 0010 · Checking Acc… | | | | 1,000.00 | 53,925.99 |
| 10/04/2013 | AWD | Softweb Creations, L… | 0010 · Checking Acc… | | | | 1,500.00 | 52,425.99 |
| 10/12/2013 | AWD | Dozier, Charles | 0010 · Checking Acc… | | | | 902.27 | 51,523.72 |
| 10/12/2013 | AWD | Rosenblatt, Marc | 0010 · Checking Acc… | | | | 4,642.02 | 46,881.70 |
| 10/12/2013 | AWD | Techsol | 0010 · Checking Acc… | | | | 5,002.47 | 41,879.23 |
| 10/16/2013 | 03172013 | Techsol | 7200 · Repairs and M… | | 2,526.00 | | | 44,405.23 |
| 10/17/2013 | AWD | Techsol | 0010 · Checking Acc… | | | | 2,526.00 | 41,879.23 |
| 10/17/2013 | AWD | Techsol | 0010 · Checking Acc… | | | | 1,490.00 | 40,389.23 |
| 10/17/2013 | 03192013 | Techsol | split- | | 1,490.00 | | | 41,879.23 |
| 10/19/2013 | | Dozier, Charles | 8400 · Travel Expens… | | 133.66 | | | 42,012.89 |
| 10/25/2013 | AWD | Dozier, Charles | 0010 · Checking Acc… | | | | 133.66 | 41,879.23 |
| 10/31/2013 | | Softweb Creations, L… | 0010 · Checking Acc… | | | | 1,250.00 | 40,629.23 |
| 11/06/2013 | | Amptek, Inc | 0010 · Checking Acc… | | | | 2,500.00 | 38,129.23 |

## Veracity Network, Inc.

10/3/2017 3:06 PM

Register: 21000 · Accounts Payable
From 01/01/2011 through 10/03/2017
Sorted by: Date, Type, Number/Ref

| Date | Number | Vendor | Account | Memo | Billed | C | Paid | Balance |
|---|---|---|---|---|---|---|---|---|
| 11/06/2013 | | Amptek, Inc | ;7200 · Repairs and M... | | 2,526.00 | | | 40,655.23 |
| 11/21/2013 | AWD | Amptek, Inc | 0010 · Checking Acc... | | | | 26.00 | 40,629.23 |
| 11/25/2013 | AWD | Techsol | 0010 · Checking Acc... | | | | 1,493.89 | 39,135.34 |
| 11/25/2013 | D | Techsol | -split- | | 1,493.89 | | | 40,629.23 |
| 12/10/2013 | AWD | Techsol | 0010 · Checking Acc... | | | | 1,431.92 | 39,197.31 |
| 12/10/2013 | 03292014 | Techsol | split- | | 1,431.92 | | | 40,629.23 |
| 12/31/2013 | | Mayo, Brian | split- | | 837.50 | | | 41,466.73 |
| 12/31/2013 | | Mayo, Brian | 8400 · Travel Expense | | 86.25 | | | 41,552.98 |
| 12/31/2013 | | Mayo, Brian | -split- | | 1,148.73 | | | 42,701.71 |
| 12/31/2013 | | Mayo, Brian | -split- | | 2,328.18 | | | 45,029.89 |
| 12/31/2013 | | Mayo, Brian | -split- | | 874.29 | | | 45,904.18 |
| 01/15/2014 | | ThompCO | 0010 · Checking Acc... | | | | 60.00 | 45,844.18 |
| 01/15/2014 | | ThompCO | ;2200 · Repairs - Parts... | | 60.00 | | | 45,904.18 |
| 01/23/2014 | 002302014 | Techsol | split- | | 1,470.82 | | | 47,375.00 |
| 01/25/2014 | | Techsol | ;1700 · Computer and ... | | 5,023.81 | | | 52,398.81 |
| 01/25/2014 | 1470.82 | Techsol | split- | | 1,470.82 | | | 53,869.63 |
| 01/30/2014 | | Techsol | 0010 · Checking Acc... | | | | 6,494.63 | 47,375.00 |
| 02/14/2014 | | Techsol | 0010 · Checking Acc... | | | | 2,706.73 | 44,668.27 |
| 02/14/2014 | | ThompCO | 0010 · Checking Acc... | | | | 3,867.50 | 40,800.77 |
| 02/14/2014 | | ThompCO | 1800 · Consultants / I... | | 3,867.50 | | | 44,668.27 |
| 02/14/2014 | | Techsol | split- | | 2,706.73 | | | 47,375.00 |
| 02/23/2014 | | Techsol | split- | | 930.34 | | | 48,305.34 |
| 02/24/2014 | | Melissa M. Medlock,... | 0010 · Checking Acc... | | | | 1,000.00 | 47,305.34 |
| 02/24/2014 | | Techsol | 0010 · Checking Acc... | | | | 1,593.49 | 45,711.85 |
| 02/24/2014 | | Mayo, Brian | 0010 · Checking Acc... | | | | 5,000.00 | 40,711.85 |
| 02/24/2014 | | Techsol | 0010 · Checking Acc... | | | | 5,000.00 | 35,711.85 |
| 02/24/2014 | | Techsol | split- | | 1,593.49 | | | 37,305.34 |
| 02/24/2014 | | Melissa M. Medlock,... | 6700 · Professional F... | | 1,000.00 | | | 38,305.34 |
| 02/24/2014 | | Techsol | 1800 · Consultants / I... | | 5,000.00 | | | 43,305.34 |
| 03/05/2014 | | Techsol | 0010 · Checking Acc... | | | | 930.34 | 42,375.00 |
| 03/17/2014 | 004902014 | Techsol | -split- | | 1,493.49 | | | 43,868.49 |
| 03/27/2014 | | ThompCO | 0010 · Checking Acc... | | | | 3,485.00 | 40,383.49 |
| 03/27/2014 | | Techsol | 0010 · Checking Acc... | | | | 1,493.49 | 38,890.00 |
| 03/27/2014 | | ThompCO | ;2100 · Repairs - Cont... | | 3,485.00 | | | 42,375.00 |
| 03/27/2014 | | Techsol | split- | | 1,493.49 | | | 43,868.49 |
| 04/12/2014 | 75439880 | CSC | ;2500 · Dues and Subs... | | 138.89 | | | 44,007.38 |
| 04/17/2014 | 010202014 | Techsol | split- | | 1,497.29 | | | 45,504.67 |
| 04/23/2014 | | Techsol | 0010 · Checking Acc... | | | | 1,497.29 | 44,007.38 |
| 04/23/2014 | | Techsol | split- | | 1,497.29 | | | 45,504.67 |
| 07/28/2014 | | Techsol | 0010 · Checking Acc... | | | | 700.00 | 44,804.67 |

## Veracity Network, Inc.

10/3/2017 3:06 PM

Register: 21000 · Accounts Payable
From 01/01/2011 through 10/03/2017
Sorted by: Date, Type, Number/Ref

| Date | Number | Vendor | Account | Memo | Billed | C | Paid | Balance |
|------|--------|--------|---------|------|-------:|---|-----:|--------:|
| 01/01/2015 | | Techsol | -split- | | 1,494.42 | | | 46,299.09 |
| 01/01/2015 | | Techsol | -split- | | 1,295.42 | | | 47,594.51 |
| 01/01/2015 | | Techsol | -split- | | 1,345.42 | | | 48,939.93 |
| 01/01/2015 | | Mayo, Brian | -split- | | 3,191.99 | | | 52,131.92 |
| 01/01/2015 | | Mayo, Brian | -split- | | 954.82 | | | 53,086.74 |
| 01/01/2015 | | Mayo, Brian | -split- | | 1,656.38 | | | 54,743.12 |
| 01/01/2015 | | Mayo, Brian | -split- | | 355.69 | | | 55,098.81 |
| 01/01/2015 | 002402014 | Techsol | 4900 · Office Expense | | 972.58 | | | 56,071.39 |
| 01/01/2015 | 004902014 | Techsol | -split- | | 1,593.49 | | | 57,664.88 |
| 01/01/2015 | 020202014 | Techsol | -split- | | 1,494.42 | | | 59,159.30 |
| 01/01/2015 | 022202014 | Techsol | -split- | | 1,494.42 | | | 60,653.72 |
| 01/01/2015 | 0229202... | Techsol | -split- | | 1,345.42 | | | 61,999.14 |
| 01/01/2015 | 0238202... | Techsol | -split- | | 1,345.42 | | | 63,344.56 |
| 01/01/2015 | 0241202... | Techsol | -split- | | 1,345.42 | | | 64,689.98 |
| 01/01/2015 | 0263202... | Techsol | -split- | | 1,345.42 | | | 66,035.40 |
| 01/01/2015 | 0291202... | Techsol | -split- | | 1,345.42 | | | 67,380.82 |
| 01/01/2015 | 0289950... | Techsol | -split- | | 2,500.00 | | | 69,880.82 |
| 02/01/2015 | 0291102... | Techsol | -split- | | 2,500.00 | | | 72,380.82 |
| 03/01/2015 | 0291802... | Techsol | -split- | | 2,500.00 | | | 74,880.82 |
| 03/30/2015 | AWD | Mayo, Brian | Wells Fargo Checking | | | | 5,000.00 | 69,880.82 |
| 03/30/2015 | AWD | Techsol | Wells Fargo Checking | | | | 5,000.00 | 64,880.82 |
| 04/01/2015 | 0292102... | Techsol | -split- | | 2,500.00 | | | 67,380.82 |
| 04/08/2015 | AWD | Mayo, Brian | Wells Fargo Checking | | | | 5,000.00 | 62,380.82 |
| 04/15/2015 | AWD | Techsol | Wells Fargo Checking | | | | 5,000.00 | 57,380.82 |
| 05/01/2015 | | ZCA Advisors, Inc. | Consulting | | 25,000.00 | | | 82,380.82 |
| 05/01/2015 | 0292702... | Techsol | -split- | | 2,500.00 | | | 84,880.82 |
| 05/04/2015 | AWD | Endeavor Global Part... | Wells Fargo Checking | | | | 25,000.00 | 59,880.82 |
| 05/04/2015 | | Endeavor Global Part... | Consulting | | 25,000.00 | | | 84,880.82 |
| 05/05/2015 | | Mayo, Brian | 8400 · Travel Expens... | | 692.52 | | | 85,573.34 |
| 05/07/2015 | AWD | ZCA Advisors, Inc. | Wells Fargo Checking | | | | 15,000.00 | 70,573.34 |
| 05/22/2015 | AWD | ZCA Advisors, Inc. | Wells Fargo Checking | | | | 10,000.00 | 60,573.34 |
| 05/22/2015 | AWD | Mayo, Brian | Wells Fargo Checking | | | | 5,000.00 | 55,573.34 |
| 05/22/2015 | AWD | Techsol | Wells Fargo Checking | | | | 5,000.00 | 50,573.34 |
| 05/28/2015 | 10314 | Endeavor Global Part... | Consulting | | 10,000.00 | | | 60,573.34 |
| 06/01/2015 | 0293002... | Techsol | -split- | | 2,500.00 | | | 63,073.34 |
| 06/05/2015 | AWD | Endeavor Global Part... | Wells Fargo Checking | | | | 5,000.00 | 58,073.34 |
| 06/05/2015 | AWD | CSC | Wells Fargo Checking | | | | 138.89 | 57,934.45 |
| 06/05/2015 | AWD | CSC | Wells Fargo Checking | | | | 143.62 | 57,790.83 |
| 06/05/2015 | | CSC | 2500 · Dues and Subs... | | 143.62 | | | 57,934.45 |
| 06/22/2015 | AWD | Techsol | Wells Fargo Checking | | | | 2,500.00 | 55,434.45 |

## Veracity Network, Inc.

10/3/2017 3:06 PM

Register: 21000 · Accounts Payable
From 01/01/2011 through 10/03/2017
Sorted by: Date, Type, Number/Ref

| Date | Number | Vendor | Account | Memo | Billed | C | Paid | Balance |
|------|--------|--------|---------|------|-------:|---|-----:|--------:|
| 06/30/2015 | AWD | Mayo, Brian | Wells Fargo Checking | | | | 5,000.00 | 50,434.45 |
| 07/01/2015 | 0293402... | Techsol | -split- | | 2,500.00 | | | 52,934.45 |
| 07/09/2015 | AWD | Mayo, Brian | Wells Fargo Checking | | | | 2,500.00 | 50,434.45 |
| 07/09/2015 | AWD | Techsol | Wells Fargo Checking | | | | 2,500.00 | 47,934.45 |
| 07/28/2015 | 10428 | Endeavor Global Part... | Consulting | | 10,000.00 | | | 57,934.45 |
| 08/02/2015 | 0295202... | Techsol | -split- | | 2,500.00 | | | 60,434.45 |
| 08/03/2015 | AWD | Endeavor Global Part... | Wells Fargo Checking | | | | 10,000.00 | 50,434.45 |
| 08/27/2015 | AWD | Mayo, Brian | Wells Fargo Checking | | | | 5,000.00 | 45,434.45 |
| 08/27/2015 | AWD | Techsol | Wells Fargo Checking | | | | 2,500.00 | 42,934.45 |
| 09/01/2015 | 0302202... | Techsol | -split- | | 2,500.00 | | | 45,434.45 |
| 09/11/2015 | AWD | Techsol | Wells Fargo Checking | | | | 2,500.00 | 42,934.45 |
| 09/15/2015 | AWD | Mayo, Brian | Wells Fargo Checking | | | | 5,000.00 | 37,934.45 |
| 09/23/2015 | AWD | Mayo, Brian | Wells Fargo Checking | | | | 2,500.00 | 35,434.45 |
| 10/01/2015 | 0302402... | Techsol | -split- | | 2,500.00 | | | 37,934.45 |
| 10/13/2015 | AWD | Techsol | Wells Fargo Checking | | | | 2,500.00 | 35,434.45 |
| 11/01/2015 | 0303302... | Techsol | -split- | | 2,500.00 | | | 37,934.45 |

Exhibit 8

# BRIDGE LOAN AGREEMENT

This Bridge Loan Agreement ("Agreement") is made and effective June 15, 2015,

**BETWEEN:**   **Veracity Network, Inc.** (the "Lendee"), a corporation with its main office located at: 745 North Drive, Suite C, Melbourne, FL 32934.

**AND:**   **Endeavor Global Partners, Corp.** (the "Guarantor"), a limited liability company, with its main office located at: 110 Old Hickory Road, Fairfield Ct. 06824

**AND:**   __Brian Mayo__   (the "Lender"), residing at:

  __620 Reef Road, Vero Beach, FL 32963__

WHEREAS, Lender is willing to lend Lendee the aggregate sum ("Principal") of $130,000.00 be evidenced by this Bridge Loan Agreement.

In consideration of the mutual covenants and conditions herein contained, the parties hereby agree, represent and warrant as follows:

1. **Consideration**

   a.) The Lendee shall provide repayment of Principal in approximately 90 days from the date of this agreement.

   b.) The Lendee shall provide interest on the unpaid principal thereof at the rate of 35% of Principal, payable within 90 days from the date of this agreement.

   c.)  In the event the Lendee defaults on any installment of interest or principal, then the Lender may, at his option, with 30 day notice to the Lendee, declare breach of this Agreement. The Lendee shall have 60 days to cure any and all default conditions. If the Lendee fails to cure all defaults, the Lender may demand entire principal and the interest accrued thereon immediately due and payable and may proceed to enforce the collection thereof.

   d.) Whereas the Lendee and Guarantor have certain common interests, Guarantor unconditionally and irrevocably guarantees full repayment of Principal to Lender, if Lendee does not repay Principal to Lender under the terms of this Agreement. Lender may demand entire Principal thereon immediately due and payable and may proceed to enforce the collection thereof.

   e.)The Lendee will authorize the issue of company Warrants (hereinafter called "Warrants") for Veracity Network Common Stock in the aggregate number of warrants equal to 10% of the Principal (10,000 Warrants per $100,000 of Principal) to be dated June 15, 2015. These warrants will be issued to Lender. These warrants shall have a purchase strike price of the current Fair Market Value ("FMV") of $7.50 per common share. The date by which these warrants must be exercised shall be June 15, 2020. The Warrants shall expire after June 15, 2020, if they have not been exercised. Lendee agrees to be bound under all terms and conditions in the Veracity Network's Stockholders Agreement.

2.  **Representations and Warranties by the Lendee**

a.   Lendee is a corporation duly organized and existing in good standing under the laws of the State of Delaware has the corporate power to own its own property and to carry on in the business as it is now being conducted.

b.   There is no action or proceeding pending or, to the knowledge of the Lendee, threatened against the Lendee before any court or administrative agency, the determination of which might result in any material adverse change in the business of the Lendee.

c.   The Lendee has title to the respective properties and assets including the properties and assets reflected on the financial statement for the year ending 2014.

d.   The Lendee is not a party to any contract or agreement or subject to any restriction which materially and adversely affects its business, property or assets, or financial condition, and neither the execution nor delivery of this Agreement, nor the confirmation of the transactions contemplated herein, nor the fulfillment of the terms hereof, nor the compliance with the terms and provisions hereof and of the Notes, will conflict with or result in the breach of the terms, conditions or provisions or constitute a default, under the Articles of Incorporation or Code of Regulations of the Lendee or of any Agreement or instrument to which the Lendee is now a party.

e.   The Lendee owns or possesses adequate licenses or other rights to use, all patents, trademarks, trade names, trade secrets, and copyrights used in its business. No one has asserted to the Lendee that its operations infringe on the patents, trademarks, trade secrets or other rights utilized in the operation of its business.

3.  **Representations and Warranties by the Lender**

The Lender represents and warrants that:

a.   The Lender is subscribing Warrants for investment purposes and not with the view to or for sale in connection with any distribution thereof and has no present intent to sell, give or otherwise transfer Warrants or shares resulting from the exercise of such Warrants.

b.   The Lender states that he is a resident of the State of Florida.

c.   The Lender understands that this is a highly speculative investment in a Lendee which is insolvent both from a legal and an equity standpoint.

d.   Individual represents and warrants that he has high net worth exclusive of his residences and that he is a sophisticated investor who is knowledgeable about investments.

**4. Covenants**

a.   The Lendee covenants that so long as this Agreement is in existence, upon request, it will deliver to the Lender thereof (i) as soon as practical, in any event within 30 days after the end of such quarterly period, in each fiscal year, consolidated income and surplus statements of the Lendee; (ii) as soon as practical, and in any event within 30 days after the end of each fiscal year, a consolidated income and surplus statement of the Lendee, and (iii) with reasonable promptness, such other financial data as the Lender may request in writing.

b.   The Lendee covenants that, so long as any of the Principal is outstanding, it will permit any Lender to visit and inspect, at the Lender's expense, any of the property of the Lendee, including its books and records, and to discuss affairs, finances and accounts with its officers.

**5. Event of Default**

a.   The breach of any of the events or conditions contained in Section 6 of this Agreement shall constitute an event of default under this Agreement. The Lender may give written notice of such breach and if the Lendee shall within 30 days after receipt of such written notice have failed to correct such occurrence or condition, then the Lender may, at his option and without notice, declare the entire principal and interest accrued thereon immediately due and payable and may proceed with collection.

b.   If the Lendee has made a material misrepresentation in connection with this Agreement or with the transactions contemplated by this Agreement, or if the Lendee makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Lendee; or if any proceeding involving the Lendee is commenced under any bankruptcy, reorganization, arrangement, insolvency, statute or law, such event shall be deemed a default which will immediately entitled Lender, at their option and without notice, to declare the entire amount of interest accrued thereon immediately due and payable and proceed to enforce the collection thereof.

c.   In case of default in the payment of any installment or principal, the Lender may, at his option and without notice, declare the entire principal and the interest accrued thereof immediately due and payable and may proceed to enforce the collection thereof.

**6. Miscellaneous**

a.   Any and all notices, approvals or other communications to be sent to the parties shall be deemed validly and properly given if made in writing and delivered by hand or by registered or certified mail, return receipt requested, and addressed to the Lendee at its principal office or to the Lender at the addresses given to the Lendee by such Lender.

b.   This Agreement may not be modified, amended or terminated except by written agreement executed by all the parties hereto.

c.   The waiver of any breach or default hereunder shall not be considered valid unless in writing and signed by the party giving such notice and no waiver shall be deemed a waiver of any subsequent breach or default of same.

d.   The paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit the contents of such.

e.   The validity, construction, interpretation and enforceability of this Agreement executed pursuant to this Agreement shall be determined and governed by the laws of the State of New

York.

f.    This Agreement shall be binding upon and inure to the benefit of the Lendee and its successors and assigns.

g.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

h.    Whereas, there is no minimum amount for this Bridge Loan Agreement, and Lendee requires a certain minimum aggregate amount of loan proceeds, Lendee reserves the right to void this agreement within 5 business days and return the full principal to the Lender.

IN WITNESS WHEREOF, Lendee, Lender, and Guarantor have executed this agreement on June 15, 2015.

**LENDER**

_____
Authorized Signature, Lender

_____
Print Name          Brian Mayo

**GUARANTOR**

_____
David Fresne, President
Authorized Signature, Guarantor,
Endeavor Global Partners, Corp.

**LENDEE**

_____
Brian Mayo – President and CEO
Authorized Signature, Lendee,
Veracity Network, Inc.

**Veracity Network Wiring Instructions:**

Bank: Wells Fargo
ABA Number: 121000248
Account Name: Veracity Network, Inc.
Account Number: 7496010781

The State University of New Jersey

# RUTGERS

Material Science and Engineering • School of Engineering
607 Taylor Road • Piscataway • New Jersey 08854 • USA
Phone: (732) 445-2330 • Fax: (732) 445-5977
email: wemayo@optonline.net

October 2, 2017

Mr. Joseph Falzone
Bankruptcy Clerk of the Court
Flagler Waterview Bldg.
1515 N. Flagler Dr. #801
West Palm Beach, FL  33401

Ref: Case Number 17-17238-PGH (Veracity Network Inc. EIN 45-2406311)

Dear Mr. Falzone:

As Trustee of the Mayo Family 2000 Irrevocable Trust, I am herewith submitting a document related to my proof of claim in the above cited Bankruptcy case. The document relates to a loan made to Veracity Network in the amounts of $50,000.00 (6/29/15) .

Please feel free to call me at 412-699-0413 or e-mail me at wemayo@optonline.net if there are any questions.

Sincerely,

William E. Mayo
Trustee
Mayo Family 2000 Irrevocable Trust

Enc/    Bridge Loan Agreement dated 6/29/15 for $50,000

# BRIDGE LOAN AGREEMENT

U.S. BANKRUPTCY COURT
SO. DISTRICT OF FLORIDA-WPB

OCT 0 5 2017

FILED _____ RECEIVED

This Bridge Loan Agreement ("Agreement") is made and effective June 29, 2015.

| | |
|---|---|
| **BETWEEN:** | **Veracity Network, Inc.** (the "Lendee"), a corporation with its main office located at: 745 North Drive, Suite C, Melbourne, FL 32934. |
| **AND:** | **Endeavor Global Partners, Corp.** (the "Guarantor"), a limited liability company, with its main office located at: 110 Old Hickory Road, Fairfield Ct. 06824 |
| **AND:** | **Mayo Family 2000 Irrevocable Trust (William E. Mayo, trustee)** (the "Lender"), residing at 35 Hutchinson Road, Allentown, NJ 08501 |

WHEREAS, Lender is willing to lend Lendee the aggregate sum ("Principal") of $ 50,000.00 be evidenced by this Bridge Loan Agreement.

In consideration of the mutual covenants and conditions herein contained, the parties hereby agree, represent and warrant as follows:

### 1. Consideration

a.) The Lendee shall provide repayment of Principal in approximately 90 days from the date of this agreement.

b.) The Lendee shall provide interest on the unpaid principal thereof at the rate of 35% of Principal, payable within 90 days from the date of this agreement.

c.) In the event the Lendee defaults on any installment of interest or principal, then the Lender may, at his option, with 30 day notice to the Lendee, declare breach of this Agreement. The Lendee shall have 60 days to cure any and all default conditions. If the Lendee fails to cure all defaults, the Lender may demand entire principal and the interest accrued thereon immediately due and payable and may proceed to enforce the collection thereof.

d.) Whereas the Lendee and Guarantor have certain common interests, Guarantor unconditionally and irrevocably guarantees full repayment of Principal to Lender, if Lendee does not repay Principal to Lender under the terms of this Agreement. Lender may demand entire Principal thereon immediately due and payable and may proceed to enforce the collection thereof.

e.) The Lendee will authorize the issue of company Warrants (hereinafter called "Warrants") for Veracity Network Common Stock in the aggregate number of warrants equal to 10% of the Principal (10,000 Warrants per $100,000 of Principal) to be dated June 15, 2015. These warrants will be issued to Lender. These warrants shall have a purchase strike price of the current Fair Market Value ("FMV") of $7.50 per common share. The date by which these warrants must be exercised shall be June 15, 2020. The Warrants shall expire after June 15, 2020, if they have not been exercised. Lendee agrees to be bound under all terms and conditions in the Veracity Network's Stockholders Agreement.

2. **Representations and Warranties by the Lendee**

    a.   Lendee is a corporation duly organized and existing in good standing under the laws of the State of Delaware has the corporate power to own its own property and to carry on in the business as it is now being conducted.

    b.   There is no action or proceeding pending or, to the knowledge of the Lendee, threatened against the Lendee before any court or administrative agency, the determination of which might result in any material adverse change in the business of the Lendee.

    c.   The Lendee has title to the respective properties and assets including the properties and assets reflected on the financial statement for the year ending 2014.

    d.   The Lendee is not a party to any contract or agreement or subject to any restriction which materially and adversely affects its business, property or assets, or financial condition, and neither the execution nor delivery of this Agreement, nor the confirmation of the transactions contemplated herein, nor the fulfillment of the terms hereof, nor the compliance with the terms and provisions hereof and of the Notes, will conflict with or result in the breach of the terms, conditions or provisions or constitute a default, under the Articles of Incorporation or Code of Regulations of the Lendee or of any Agreement or instrument to which the Lendee is now a party.

    e.   The Lendee owns or possesses adequate licenses or other rights to use, all patents, trademarks, trade names, trade secrets, and copyrights used in its business. No one has asserted to the Lendee that its operations infringe on the patents, trademarks, trade secrets or other rights utilized in the operation of its business.

3. **Representations and Warranties by the Lender**

The Lender represents and warrants that:

    a.   The Lender is subscribing Warrants for investment purposes and not with the view to or for sale in connection with any distribution thereof and has no present intent to sell, give or otherwise transfer Warrants or shares resulting from the exercise of such Warrants.

    b.   The Lender states that he is a resident of the State of New Jersey.

    c.   The Lender understands that this is a highly speculative investment in a Lendee which is insolvent both from a legal and an equity standpoint.

    d.   Individual represents and warrants that he has high net worth exclusive of his residences and that he is a sophisticated investor who is knowledgeable about investments.

4. **Covenants**

    a.   The Lendee covenants that so long as this Agreement is in existence, upon request, it will deliver to the Lender thereof (i) as soon as practical, in any event within 30 days after the end of such quarterly period, in each fiscal year, consolidated income and surplus statements of the Lendee; (ii) as soon as practical, and in any event within 30 days after the end of each fiscal year, a consolidated income and surplus statement of the Lendee, and (iii) with reasonable promptness, such other financial data as the Lender may request in writing.

b.  The Lendee covenants that, so long as any of the Principal is outstanding, it will permit any Lender to visit and inspect, at the Lender's expense, any of the property of the Lendee, including its books and records, and to discuss affairs, finances and accounts with its officers.

## 5.  Event of Default

a.  The breach of any of the events or conditions contained in Section 6 of this Agreement shall constitute an event of default under this Agreement. The Lender may give written notice of such breach and if the Lendee shall within 30 days after receipt of such written notice have failed to correct such occurrence or condition, then the Lender may, at his option and without notice, declare the entire principal and interest accrued thereon immediately due and payable and may proceed with collection.

b.  If the Lendee has made a material misrepresentation in connection with this Agreement or with the transactions contemplated by this Agreement, or if the Lendee makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Lendee; or if any proceeding involving the Lendee is commenced under any bankruptcy, reorganization, arrangement, insolvency, statute or law, such event shall be deemed a default which will immediately entitled Lender, at their option and without notice, to declare the entire amount of interest accrued thereon immediately due and payable and proceed to enforce the collection thereof.

c.  In case of default in the payment of any installment or principal, the Lender may, at his option and without notice, declare the entire principal and the interest accrued thereof immediately due and payable and may proceed to enforce the collection thereof.

## 6.  Miscellaneous

a.  Any and all notices, approvals or other communications to be sent to the parties shall be deemed validly and properly given if made in writing and delivered by hand or by registered or certified mail, return receipt requested, and addressed to the Lendee at its principal office or to the Lender at the addresses given to the Lendee by such Lender.

b.  This Agreement may not be modified, amended or terminated except by written agreement executed by all the parties hereto.

c.  The waiver of any breach or default hereunder shall not be considered valid unless in writing and signed by the party giving such notice and no waiver shall be deemed a waiver of any subsequent breach or default of same.

d.  The paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit the contents of such.

e.  The validity, construction, interpretation and enforceability of this Agreement executed pursuant to this Agreement shall be determined and governed by the laws of the State of New York.

f.  This Agreement shall be binding upon and inure to the benefit of the Lendee and its successors and assigns.

g.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

h.  Whereas, there is no minimum amount for this Bridge Loan Agreement, and Lendee

requires a certain minimum aggregate amount of loan proceeds, Lendee reserves the right to void this agreement within 5 business days and return the full principal to the Lender.

IN WITNESS WHEREOF, Lendee, Lender, and Guarantor have executed this agreement on June 29, 2015.

**LENDER**                                    **GUARANTOR**

_____              _____
Authorized Signature, Lender                   David Fresne, President
                                              Authorized Signature, Guarantor,
                                              Endeavor Global Partners, Corp.

William E. Mayo, Trustee of Mayo Family 2000 Irrevocable Trust
Print Name

**LENDEE**

_____

Brian Mayo – President and CEO
Authorized Signature, Lendee,
Veracity Network, Inc.

**Veracity Network Wiring Instructions:**

    Bank: Wells Fargo
    ABA Number: ████0248
    Account Name: Veracity Network, Inc.
    Account Number: ████0781

The State University of New Jersey

# RUTGERS

Material Science and Engineering ● School of Engineering
607 Taylor Road ● Piscataway ● New Jersey 08854 ● USA
Phone: (732) 445-2330 ● Fax: (732) 445-5977
email: wemayo@optonline.net

October 2, 2017

Mr. Joseph Falzone
Bankruptcy Clerk of the Court
Flagler Waterview Bldg.
1515 N. Flagler Dr. #801
West Palm Beach, FL 33401

Ref: Case Number 17-17238-PGH (Veracity Network Inc. EIN 45-2406311)

Dear Mr. Falzone:

Attached are two documents related to my proof of claim in the above cited Bankruptcy case. Both documents relate to loans made to Veracity Network in the amounts of $50,000.00 (6/15/15) and $100,000.00 (3/15/15).

Please feel free to call me at 412-699-0413 or e-mail me at wemayo@optonline.net if there are any questions.

Sincerely,

William E. Mayo

Enc/    Bridge Loan Agreement dated 6/15/15 for $50,000
        Promissory Note Agreement dated 3/15/15 for $100,000

# PROMISSORY NOTE AGREEMENT

U.S. BANKRUPTCY COURT
SO. DISTRICT OF FLORIDA-WPB

OCT 05 2017

FILED _____ RECEIVED _____

This Promissory Note Agreement ("Agreement") is made and effective March 15, 2015.

**BETWEEN:**         **Veracity Network, Inc.** (the "Company"), a corporation organized and existing under the laws of Delaware, with its main office located at: 745 North Drive, Suite C, Melbourne, FL 32934.

**AND:**             **William Mayo** (the "Note Holder"), residing at: 35 Hutchinson Road, Allentown, NJ 08501.

WHEREAS, Note Holder is willing to lend Company the aggregate sum of $100,000.00 be evidenced by Convertible Promissory Notes.

In consideration of the mutual covenants and conditions herein contained, the parties hereby agree, represent and warrant as follows:

1. **Issue of Note**

    a.   The Company will authorize the issue of its Convertible Note (hereinafter called "Note") in the aggregate principal amount of $100,000.00 to be dated March 15, 2015 to mature on March 15, 2020 to bear interest on the unpaid principal thereof at the rate of 10% per annum until maturity, payable on the 1st day of each quarter in each year, commencing on March 15t, 2016, and after maturity at the rate of 5% per annum until paid.

    b.   For the purposes of calculating interest for any period for which the interest shall be payable, such interest shall be calculated on the basis of a 30-day month and a 365-day year. The Company will promptly and punctually pay to Note Holder or their nominee the interest on any of the Notes held by Note Holder without presentment of the Notes. In the event that Note Holder shall sell or transfer any of the Notes, he shall notify the Company of the name and address of the transferee. In the event the Company defaults on any installment of interest or principal, then any Holder of this Note may, at his option, with 30 day notice to the Company, declare breach of this Agreement. The Company shall have 60 days to cure any and all default conditions. If the Company fails to cure all defaults, the Holder of this Note may demand entire principal and the interest accrued thereon immediately due and payable and may proceed to enforce the collection thereof.

    c.   The Company will also authorize the issue of shares of its common stock (hereinafter called "The Stock") and will authorize the issuance of and reserve for such purchase such a number of additional shares of common stock (hereinafter called the "Conversion Stock") as may from time to time be the maximum number required for issuance upon conversion of the Note pursuant to the conversion privileges hereinafter stated.

**2.  Representations and Warranties by the Company**

a.  Company is a corporation duly organized and existing in good standing under the laws of the State of Delaware has the corporate power to own its own property and to carry on in the business as it is now being conducted.

b.  There is no action or proceeding pending or, to the knowledge of the Company, threatened against the Company before any court or administrative agency, the determination of which might result in any material adverse change in the business of the Company.

c.  The Company has title to the respective properties and assets including the properties and assets reflected on the financial statement for the year ending 2014.

d.  The Company is not a party to any contract or agreement or subject to any restriction which materially and adversely affects its business, property or assets, or financial condition, and neither the execution nor delivery of this Agreement, nor the confirmation of the transactions contemplated herein, nor the fulfillment of the terms hereof, nor the compliance with the terms and provisions hereof and of the Notes, will conflict with or result in the breach of the terms, conditions or provisions or constitute a default, under the Articles of Incorporation or Code of Regulations of the Company or of any Agreement or instrument to which the Company is now a party.

e.  The Company has not declared, set aside, paid or made any dividend or other distributions with respect to its capital stock and has not made or caused to be made directly or indirectly, any payment or other distribution of any nature whatsoever to any of the holders of its capital stock except for regular salary payments for services rendered and the reimbursement of business expenses.

f.  The Company owns or possesses adequate licenses or other rights to use, all patents, trademarks, trade names, trade secrets, and copyrights used in its business. No one has asserted to the Company that its operations infringe on the patents, trademarks, trade secrets or other rights utilized in the operation of its business.

**3.  Representations and Warranties by the Note Holder**

The Note Holder represents and warrants that:

a.  The Note Holder is subscribing for the Notes and Stock for investment purposes and not with the view to or for sale in connection with any distribution thereof and has no present intent to sell, give or otherwise transfer the Notes or Stock.

b.  The Note Holder states that he is a resident of the State of New Jersey.

c.  The Note Holder understands that this is a highly speculative investment in a Company which is insolvent both from a legal and an equity standpoint.

d.  Individual represents and warrants that he has high net worth exclusive of his residences and that he is a sophisticated investor who is knowledgeable about investments.

### 4.  Conversion

a.   Automatic Trigger – When, and if, the Company shall issue or sell any share of its stock in consideration for an aggregate amount in excess of $1M, the principal amount owed to the Holder plus any accrued interest shall be converted to common stock. The conversion price per share shall be the same as the issued or sold shares less 10%. The Note Holder shall assume all rights, privileges, and obligations as other shareholders.

### 5.  Covenants

a.   The Company covenants that so long as the Note is in existence, it will deliver to the Holder thereof (i) as soon as practical, in any event within 30 days after the end of such quarterly period, in each fiscal year, consolidated income and surplus statements of the *Company; (ii)* as soon as practical, and in any event within 30 days after the end of each fiscal year, a consolidated income and surplus statement of the Company, and (iii) with reasonable promptness, such other financial data as the Holder may request in writing.

b.   The Company covenants that, so long as any of the Note is outstanding, it will permit any Holder of the Notes to visit and inspect, at the Holder's expense, any of the property of the Company, including its books and records, and to discuss affairs, finances and accounts with its officers.

### 6.  Event of Default

a.   The breach of any of the events or conditions contained in Section 6 of this Agreement shall constitute an event of default under this Agreement. Any one or more of the Holders of the Note may give written notice of such breach and if the Company shall within 30 days after receipt of such written notice have failed to correct such occurrence or condition, then the Holder of any one of the Note may, at its option and without notice, declare the entire principal and interest accrued thereon immediately due and payable and may proceed with collection.

b.   If the Company has made a material misrepresentation in connection with this Agreement or with the transactions contemplated by this Agreement, or if the Company makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Company; or if any proceeding involving the Company is commenced under any bankruptcy, reorganization, arrangement, insolvency, statute or law, such event shall be deemed a default which will immediately entitled Holders of the Note, at their option and without notice, to declare the entire amount of interest accrued thereon immediately due and payable and proceed to enforce the collection thereof.

c.   In case of default in the payment of any installment or principal, the Holder of the Note may, at his option and without notice, declare the entire principal and the interest accrued thereof immediately due and payable and may proceed to enforce the collection thereof.

### 7.  Miscellaneous

a.   Any and all notices, approvals or other communications to be sent to the parties shall be deemed validly and properly given if made in writing and delivered by hand or by registered or certified mail, return receipt requested, and addressed to the Company at its principal office or to the Holder of the Notes at the addresses given to the Company by such Note Holder.

b.   This Agreement may not be modified, amended or terminated except by written agreement executed by all the parties hereto.

c.   The waiver of any breach or default hereunder shall not be considered valid unless in writing and signed by the party giving such notice and no waiver shall be deemed a waiver of any subsequent breach or default of same.

d.   The paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit the contents of such.

e.   The validity, construction, interpretation and enforceability of this Agreement and the Notes executed pursuant to this Agreement shall be determined and governed by the laws of the State of [state/province].

f.   This Agreement shall be binding upon and inure to the benefit of the company and its successors and assigns.

g.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

IN WITNESS WHEREOF, Company and Note Holder have executed this agreement on December 10, 2013.

COMPANY                                          NOTE HOLDER

_____                          _____
Authorized Signature                             Authorized Signature

Brian Mayo – President and CEO                   William Mayo
Print Name and Title                             Print Name

# BRIDGE LOAN AGREEMENT

This Bridge Loan Agreement ("Agreement") is made and effective June 15, 2015,

**BETWEEN:**      **Veracity Network, Inc.** (the "Lendee"), a corporation with its main office located at: 745 North Drive, Suite C, Melbourne, FL 32934.

**AND:**      **Endeavor Global Partners, Corp.** (the "Guarantor"), a limited liability company, with its main office located at: 110 Old Hickory Road, Fairfield Ct. 06824

**AND:**      **William E. Mayo** (the "Lender"), residing at:

     **35 Hutchinson Road, Allentown, NJ 08501**

WHEREAS, Lender is willing to lend Lendee the aggregate sum ("Principal") of $   50,000.00   be evidenced by this Bridge Loan Agreement.

In consideration of the mutual covenants and conditions herein contained, the parties hereby agree, represent and warrant as follows:

1. **Consideration**

   a.) The Lendee shall provide repayment of Principal in approximately 90 days from the date of this agreement.

   b.) The Lendee shall provide interest on the unpaid principal thereof at the rate of 35% of Principal, payable within 90 days from the date of this agreement.

   c.) In the event the Lendee defaults on any installment of interest or principal, then the Lender may, at his option, with 30 day notice to the Lendee, declare breach of this Agreement. The Lendee shall have 60 days to cure any and all default conditions. If the Lendee fails to cure all defaults, the Lender may demand entire principal and the interest accrued thereon immediately due and payable and may proceed to enforce the collection thereof.

   d.) Whereas the Lendee and Guarantor have certain common interests, Guarantor unconditionally and irrevocably guarantees full repayment of Principal to Lender, if Lendee does not repay Principal to Lender under the terms of this Agreement. Lender may demand entire Principal thereon immediately due and payable and may proceed to enforce the collection thereof.

   e.) The Lendee will authorize the issue of company Warrants (hereinafter called "Warrants") for Veracity Network Common Stock in the aggregate number of warrants equal to 10% of the Principal (10,000 Warrants per $100,000 of Principal) to be dated June 15, 2015. These warrants will be issued to Lender. These warrants shall have a purchase strike price of the current Fair Market Value ("FMV") of $7.50 per common share. The date by which these warrants must be exercised shall be June 15, 2020. The Warrants shall expire after June 15, 2020, if they have not been exercised. Lendee agrees to be bound under all terms and conditions in the Veracity Network's Stockholders Agreement.

**2.   Representations and Warranties by the Lendee**

a.   Lendee is a corporation duly organized and existing in good standing under the laws of the State of Delaware has the corporate power to own its own property and to carry on in the business as it is now being conducted.

b.   There is no action or proceeding pending or, to the knowledge of the Lendee, threatened against the Lendee before any court or administrative agency, the determination of which might result in any material adverse change in the business of the Lendee.

c.   The Lendee has title to the respective properties and assets including the properties and assets reflected on the financial statement for the year ending 2014.

d.   The Lendee is not a party to any contract or agreement or subject to any restriction which materially and adversely affects its business, property or assets, or financial condition, and neither the execution nor delivery of this Agreement, nor the confirmation of the transactions contemplated herein, nor the fulfillment of the terms hereof, nor the compliance with the terms and provisions hereof and of the Notes, will conflict with or result in the breach of the terms, conditions or provisions or constitute a default, under the Articles of Incorporation or Code of Regulations of the Lendee or of any Agreement or instrument to which the Lendee is now a party.

e .   The Lendee owns or possesses adequate licenses or other rights to use, all patents, trademarks, trade names, trade secrets, and copyrights used in its business. No one has asserted to the Lendee that its operations infringe on the patents, trademarks, trade secrets or other rights utilized in the operation of its business.

**3.   Representations and Warranties by the Lender**

The Lender represents and warrants that:

a.   The Lender is subscribing Warrants for investment purposes and not with the view to or for sale in connection with any distribution thereof and has no present intent to sell, give or otherwise transfer Warrants or shares resulting from the exercise of such Warrants.

b.   The Lender states that he is a resident of the State of   New Jersey

c.   The Lender understands that this is a highly speculative investment in a Lendee which is insolvent both from a legal and an equity standpoint.

d.   Individual represents and warrants that he has high net worth exclusive of his residences and that he is a sophisticated investor who is knowledgeable about investments.

**4.  Covenants**

a.   The Lendee covenants that so long as this Agreement is in existence, upon request, it will deliver to the Lender thereof (i) as soon as practical, in any event within 30 days after the end of such quarterly period, in each fiscal year, consolidated income and surplus statements of the Lendee; (ii) as soon as practical, and in any event within 30 days after the end of each fiscal year, a consolidated income and surplus statement of the Lendee, and (iii) with reasonable promptness, such other financial data as the Lender may request in writing.

b.   The Lendee covenants that, so long as any of the Principal is outstanding, it will permit any Lender to visit and inspect, at the Lender's expense, any of the property of the Lendee, including its books and records, and to discuss affairs, finances and accounts with its officers.

**5.  Event of Default**

a.   The breach of any of the events or conditions contained in Section 6 of this Agreement shall constitute an event of default under this Agreement. The Lender may give written notice of such breach and if the Lendee shall within 30 days after receipt of such written notice have failed to correct such occurrence or condition, then the Lender may, at his option and without notice, declare the entire principal and interest accrued thereon immediately due and payable and may proceed with collection.

b.   If the Lendee has made a material misrepresentation in connection with this Agreement or with the transactions contemplated by this Agreement, or if the Lendee makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Lendee; or if any proceeding involving the Lendee is commenced under any bankruptcy, reorganization, arrangement, insolvency, statute or law, such event shall be deemed a default which will immediately entitled Lender, at their option and without notice, to declare the entire amount of interest accrued thereon immediately due and payable and proceed to enforce the collection thereof.

c.   In case of default in the payment of any installment or principal, the Lender may, at his option and without notice, declare the entire principal and the interest accrued thereof immediately due and payable and may proceed to enforce the collection thereof.

**6.  Miscellaneous**

a.   Any and all notices, approvals or other communications to be sent to the parties shall be deemed validly and properly given if made in writing and delivered by hand or by registered or certified mail, return receipt requested, and addressed to the Lendee at its principal office or to the Lender at the addresses given to the Lendee by such Lender.

b.   This Agreement may not be modified, amended or terminated except by written agreement executed by all the parties hereto.

c.   The waiver of any breach or default hereunder shall not be considered valid unless in writing and signed by the party giving such notice and no waiver shall be deemed a waiver of any subsequent breach or default of same.

d.   The paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit the contents of such.

e.   The validity, construction, interpretation and enforceability of this Agreement executed

pursuant to this Agreement shall be determined and governed by the laws of the State of New York.

f.   This Agreement shall be binding upon and inure to the benefit of the Lendee and its successors and assigns.

g.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

h.   Whereas, there is no minimum amount for this Bridge Loan Agreement, and Lendee requires a certain minimum aggregate amount of loan proceeds, Lendee reserves the right to void this agreement within 5 business days and return the full principal to the Lender.

IN WITNESS WHEREOF, Lendee, Lender, and Guarantor have executed this agreement on June 15, 2015.

**LENDER**

Authorized Signature, Lender

William E. Mayo
Print Name

**GUARANTOR**

David Fresne, President
Authorized Signature, Guarantor,
Endeavor Global Partners, Corp.

**LENDEE**

Brian Mayo – President and CEO
Authorized Signature, Lendee,
Veracity Network, Inc.

**Veracity Network Wiring Instructions:**

Bank: Wells Fargo
ABA Number:        0248
Account Name: Veracity Network, Inc.
Account Number:        0781

From: **Brian Mayo** brianmayo@veracitynetwork.us
Subject: Followup on Katz lawsuit
Date: January 11, 2017 at 10:04 AM
To: David Fresne dfresne@endeavorgpc.com



David,
    Let's hope this is a happier New Year...

Have you heard anything from Shutts and Bowen regarding our case? Seems like the court should have responded to our Motion to Compel by now. I believe they said it would take two weeks. I realize there's a new atty for Katz, and the court will allow some time for ramp up. I hope that Shutts and Bowen put pressure to get this moving along now. We've exhausted all other options.

Regards,
Brian
President and CEO
Veracity Network, Inc.



TRUSTEE
EXHIBIT
15



**From:** Bud Bennington  BBennington@shutts.com  🖉
**Subject:** Comments on SERVICE OF COURT DOCUMENT - CASE NUMBER 052015CA046511XXXXXX
**Date:** January 17, 2017 at 4:19 PM
**To:** Brian Mayo  brianmayo@veracitynetwork.us, David Fresne  dfresne@endeavorgpc.com,  dfresne@endeavorgroup.net

Brian and David,

Below in red are our responses to Brian's questions. Let me know if you'd like to set a call to discuss.



**Bud Bennington**
*Senior Litigation Partner*
*Admitted in Florida, New Jersey, and Colorado*

Shutts & Bowen LLP
300 South Orange Avenue, Suite 1000 |
Orlando, FL 32801
Direct: (407) 835-6755 | Fax: (407) 849-7255
Email | Biography | vCard | Website

Please consider the environment before printing
this email

**From:** Brian Mayo [mailto:brianmayo@veracitynetwork.us]
**Sent:** Tuesday, January 17, 2017 1:23 PM
**To:** Bud Bennington; 'David Fresne'
**Subject:** Comments on SERVICE OF COURT DOCUMENT - CASE NUMBER 052015CA046511XXXXXX

Bud, David:
    I wanted to send you my thoughts regarding this filing by atty Walters.

First, it states that they are ready to move forward to court. However, clearly, they have not produced the documents we requested, no depositions, etc. So, I believe we're not ready to move forward to court (as much as I would like to move forward as quickly as possible....why haven't we heard back from the courts on the motion to compel???).

The standard for filing an notice for trial is that the case must be "at issue" meaning the pleadings have closed i.e. complaint, answer, counterclaim, and replies have all been filed. Typically when the court sets a case for trial, it will also set various deadlines for discovery, and the trial date will typically be far in the future. Moreover, we will move for a case management conference to discuss when the trial date should be and how much time the parties need to prepare. We are also in the process of setting the motion to compel for hearing. Typically, the Court won't rule on the motion until it's called up for hearing.

Secondly, the filing states that they would like to move forward on the original action. I believe this means they want the court to move on their original filing against us, and save our countersuit for later. Obviously, we don't want that.

We don't think that was their intent. Regardless, the claims will most likely be tried together, as the Court is unlikely split up the claims because Katz's claim and your Counterclaim are so factually intertwined.

Please let me know if I on target or not. Also, please let me know if there is anything else I should be aware of.

Thanks,
Brian

**From:** eservice@myflcourtaccess.com [mailto:eservice@myflcourtaccess.com]
**Sent:** Monday, January 16, 2017 1:55 PM
**Subject:** SERVICE OF COURT DOCUMENT - CASE NUMBER 052015CA046511XXXXXX

## Notice of Service of Court Documents

## Filing Information

Filing #:            51207451

From: **Brian Mayo** brianmayo@veracitynetwork.us 
Subject: Comments on SERVICE OF COURT DOCUMENT - CASE NUMBER 052015CA046511XXXXXX
Date: January 17, 2017 at 1:28 PM
To: Bud Bennington BBennington@shutts.com, David Fresne dfresne@endeavorgpc.com

Bud, David:
    I wanted to send you my thoughts regarding this filing by atty Walters.

First, it states that they are ready to move forward to court. However, clearly, they have not produced the documents we requested, no depositions, etc. So, I believe we're not ready to move forward to court (as much as I would like to move forward as quickly as possible....why haven't we heard back from the courts on the motion to compel???).

Secondly, the filing states that they would like to move forward on the original action. I believe this means they want the court to move on their original filing against us, and save our countersuit for later. Obviously, we don't want that.

Please let me know if I on target or not. Also, please let me know if there is anything else I should be aware of.

Thanks,
Brian

From: eservice@myflcourtaccess.com [mailto:eservice@myflcourtaccess.com]
Sent: Monday, January 16, 2017 1:55 PM
Subject: SERVICE OF COURT DOCUMENT - CASE NUMBER 052015CA046511XXXXXX

## Notice of Service of Court Documents

### Filing Information

| | |
|---|---|
| Filing #: | 51207451 |
| Filing Time: | 01/16/2017 01:55:00 PM ET |
| Filer: | Thomas W. Walters 561-876-6770 |
| Court: | Eighteenth Judicial Circuit in and for Brevard County, Florida |
| Case #: | 052015CA046511XXXXXX |
| Court Case #: | 052015CA046511XXXXXX |
| Case Style: | DANIEL KATZ VS VERACITY NETWOR |

### Documents

| Title | File |
|---|---|
| Notice Of Non-Jury Trial | KATZ v. VERACITY NETWORK 2015CA046511 NOTICE FOR TRIAL.pdf |

### E-service recipients selected for service:

| Name | Email Address |
|---|---|
| Alfred J Bennington Jr | bbennington@shutts.com |
| | jclaudio@shutts.com |
| Brian Thomas Mayo | brianmayo@veracitynetwork.us |
| Harold E Morlan III | hmorlan@shutts.com |
| | kgranofsky@shutts.com |
| Alfred J. Bennington, Jr. | bbennington@shutts.com |
| | jortiz@shutts.com |
| Thomas D Oates | toates@pompanolaw.com |
| | andrea@pompanolaw.com |
| | caren@pompanolaw.com |
| Thomas W. Walters | twwlaw1@gmail.com |

tomwalters78@yahoo.com

**E-service recipients deselected for service:**

| Name | Email Address |
|---|---|
| No Matching Entries | |

This is an automatic email message generated by the Florida Courts E-Filing Portal. This email address does not receive email.

Thank you,
The Florida Courts E-Filing Portal

request_id#:51207451;Audit#:175343607;UCN#:052015CA046511XXXXXX;



Notice Of Non-
Jury Trial.pdf

From:    Jennifer Claudio  JClaudio@shutts.com   
Subject:  Katz v. Veracity: Invoice for Professional Legal Services Rendered through December 31, 2016
Date:    January 19, 2017 at 3:33 PM
To:    David Fresne  dfresne@endeavorgpc.com, Brian Mayo  brianmayo@veracitynetwork.us
Cc:    Al Gapsch  agapsch@technical-solutions-group.com, Bud Bennington  BBennington@shutts.com



Gentlemen,

Attached please find this firm's invoice for professional legal services rendered in the above referenced matter through December 31, 2016.

Thank you in advance for your assistance in processing.

Best regards,



**Bud Bennington**
*Senior Litigation Partner*
*Admitted in Florida, New Jersey, and Colorado*

**Shutts & Bowen LLP**
300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6755 | Fax: (407) 849-7255
E-Mail | Biography | V-Card | Website

**Please consider the environment before printing this email**



43812-0001.PD
F

From: **Brian Mayo** brianmayo@veracitynetwork.us 
Subject: Follow-up documents (bank statements) for Katz vs Veracity
Date: March 9, 2017 at 10:21 AM
To: HMorlan@shutts.com, Bud Bennington BBennington@shutts.com, Jennifer Claudio JClaudio@shutts.com
Cc: David Fresne dfresne@endeavorgpc.com

Hal, Bud:

   Here are Veracity Network's bank statements (Main checking account…other accounts to follow in subsequent email messages). I will leave it up to you whether they get transferred to Katz.

Please let me know if you have any questions or comments.

Thanks,
Brian
President and CEO
Veracity Network, Inc.



From: **Brian Mayo** brianmayo@veracitynetwork.us 
Subject: Follow-up documents (Litigation Account) for Katz vs Veracity
Date: March 9, 2017 at 10:23 AM
To: HMorlan@shutts.com, Bud Bennington BBennington@shutts.com, Jennifer Claudio JClaudio@shutts.com
Cc: David Fresne dfresne@endeavorgpc.com

Hal, Bud:

   Here are the bank statements for Veracity's Litigation bank account. This account was set up for the sole purpose of financing litigation expenses in the Katz case. I believe these documents should be privileged information.

Please let me know if you have any questions or comments.

Thanks,
Brian
President and CEO
Veracity Network, Inc.



From: **Brian Mayo** brianmayo@veracitynetwork.us 📎
Subject: Follow-up documents (savings account) for Katz vs Veracity
Date: March 9, 2017 at 10:27 AM
To: HMorlan@shutts.com, **Bud Bennington** BBennington@shutts.com, **Jennifer Claudio** JClaudio@shutts.com
Cc: David Fresne dfresne@endeavorgpc.com

Hal, Bud:

Here are the last bank statements for Veracity. These documents are for the savings account, which had little activity.

Please let me know if you have any questions or comments.

Thanks,
Brian
President and CEO
Veracity Network, Inc.



| 2016 Apr Statement.pdf | 2016 Aug Statement.pdf | 2016 Feb Statement.pdf | 2016 Jan Statement.pdf | 2016 July Statement.pdf | 2016 June Statement.pdf |
| 2016 Mar Statement.pdf | 2016 Nov Statement.pdf | 2016 Oct Statement.pdf | 2016 Sept Statement.pdf | 2017 Feb Statement.pdf | 2017 Jan Statement.pdf |

From:    Harold E. Morlan III HMorlan@shutts.com
Subject:  Veracity v. Katz - Responses to RFP
Date:    May 8, 2017 at 8:33 PM
To:     Brian Mayo brianmayo@veracitynetwork.us
Cc:     Bud Bennington BBennington@shutts.com, Kathleen M. Krak KKrak@shutts.com, David Fresne dfresne@endeavorpc.com,
       Kelly C. Granofsky KGranofsky@shutts.com, Jennifer Claudio JClaudio@shutts.com

Brian,

As a follow-up to our last call, I attach the draft responses to Plaintiff's most recent request for
production. Recall, we discussed the concerns regarding some of the documents they requested, as
well as the phrasing of some requests being overly broad. The attached draft addresses those
concerns with objections and/or agreeing to produce some of the requested items in more limited
form. By way of representative example, Katz requested meeting minutes and we objected to
producing minutes beyond those relating and/or referencing Katz at mutually agreeable date and
time. We have not yet received the meeting minutes from you, so this allows you to get them to us so
we can identify which items are responsive. Other responses object outright due to the request being
poorly phrased and/or as seeking completely irrelevant information not reasonably calculated to lead
to the discovery of admissible evidence. End game, if he takes issue with the responses/production,
Katz will have to confer with us before he can move to compel at which point we can revisit before
engaging in discovery motions.

Please review and let us know if you have any questions. Otherwise, we will go ahead and serve the
response (reminder: you do not need to sign) with the attached interim production and produce the
other items within the next week or so.

Best regards,

Hal Morlan



**Harold E. Morlan III**
*Partner*

## Shutts & Bowen LLP

300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6950 | Fax: (407) 849-7223
E-Mail | Biography | V-Card | Website

**Please consider the environment before printing this email**





Document2          Untitled.pdf
(2).docx



From:    **Harold E. Morlan III** HMorlan@shutts.com 
Subject: Katz v. Veracity -
Date:    May 25, 2017 at 4:10 PM
To:      Brian Mayo brianmayo@veracitynetwork.us
Cc:      Bud Bennington BBennington@shutts.com, David Fresne diresne@endeavorgpc.com




Brian,

Bud asked me to send you this email to confirm your recent conversations with him. Katz's
settlement offer of $250,000 was conveyed to you and David. You all have elected on behalf of
Veracity not to counter-offer. You have decided to declare bankruptcy and will be retaining separate
counsel to advise you regarding same and to initiate the process, which will need to begin asap
because you have elected not to go to trial, which is currently set on the June 12th docket. As was
previously discussed, advising you regarding bankruptcy and whether to file for it is outside the
scope of Shutts's representation of Veracity in this matter.  Please advise us asap as to when the
bankruptcy filing has occurred so that the circuit court in the above matter can be notified.


Sincerely,



**Harold E. Morlan III**
*Partner*

**Shutts & Bowen LLP**
300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6950 | Fax: (407) 849-7223
E-Mail | Biography | V-Card | Website

**Please consider the environment before printing this email**

From: **Bud Bennington** BBennington@shutts.com 
Subject: RE: Veracity Bankruptcy
Date: May 26, 2017 at 3:07 PM
To: James A. Timko JTimko@shutts.com
Cc: Harold E. Morlan III HMorlan@shutts.com, Brian Mayo brianmayo@veracitynetwork.us, David dfresne@endeavorgroupllc.net, dfresne@endeavorgroup.net

TY for your analysis Jim. I understand. David/Brian: We need to start lining up outside BK counsel ASAP as our backup in the event Katz elects not to settle. I need your authorization for Jim to start getting BK counsel on board. Let me know if you have someone or we can work on that. Please get back to me ASAP as we need to be very proactive here. Please call with any questions. Thanks. Bud

## Shutts

**Bud Bennington**
*Partner*
*Admitted in Florida, New Jersey, and Colorado*

## Shutts & Bowen LLP

300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6755 | Fax: (407) 849-7255
E-Mail | Biography | V-Card | Website

**Please consider the environment before printing this email**

**From:** James A. Timko
**Sent:** Friday, May 26, 2017 2:46 PM
**To:** Bud Bennington; Harold E. Morlan III
**Cc:** Kelly C. Granofsky
**Subject:** Veracity Bankruptcy

Bud and Hal,

I have had more time to digest the issues regarding Veracity. While I can't tell you I have full understand of all of the ins and outs of the business relationships, I can tell you with some confidence that if a bankruptcy is filed, Veracity will likely be in a better position with separate bankruptcy counsel. I have many reasons for this, including:

· The economics are not great in the bankruptcy are not great and we probably not be able to get the case internally approved.

· The disclosure process is getting tighter on attorneys and their clients in bankruptcy and it would be better to have an attorney with a fresh perspective

· The issue of us representing Veracity while being instructed to act by David will look like Veracity is filing to serve his interests and not the fiduciary interests of Veracity's larger creditor body.

· Finally, if the other side is a litigious as you think, we need to make this look as clean as possible.

With all of this in mind, I am going to reach out to some of my peers that I have a good relationship with about the case (no names or specific details will be provided) but to try and get them on board in

case a filing is necessary.

Jim



**James A. Timko**
*Partner*

**Shutts & Bowen LLP**
300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6808 | Fax: (407) 849-7212
E-Mail | Biography | V-Card | Website

Please consider the environment before printing this email

From: **Brian Mayo** brianmayo@veracitynetwork.us
Subject: Dissolution versus bankruptcy
Date: May 31, 2017 at 6:35 PM
To: Fresne David dfresne@endeavorgpc.com



David,

    We need to re-think dissolution versus bankruptcy. After everything I have now heard, I strongly suggest Endeavor pay back all the Collateral Fee monies (or reach some settlement). This will virtually wipe out the Bridge Loan Assets and Liabilities, and provide a relatively clean financial slate. If the Collateral Fee is not refunded, then the assets (i.e. Endeavor Collateral Fee) will be sold off and it's highly unlikely these funds will go to the Bridge Loan people. It's very likely these assets go to lawyers and courts. Endeavor would then have a number of lawyers chasing them. I am <u>not</u> trying to give financial advice, but I think Endeavor should contact their accountant and lawyers to determine if Endeavor would be liable to Veracity, then (if Collateral funds don't go back to Bridge Loan people), Endeavor could then be liable directly with the Bridge Loan people. This seems like a very messy situation that I need to know how you want to resolve. The Bridge Loan people are not going to settle for less than full amount unless all other agreements are in place and fully funded. Given the time situation, all of this is not going to happen in a timely enough fashion.

Brian
President and CEO
Veracity Network, Inc.



**From:** Brian Mayo brianmayo@veracitynetwork.us 
**Subject:** RE: Katz v. Veracity
**Date:** May 31, 2017 at 4:43 PM
**To:** Bud Bennington BBennington@shutts.com, Fresne David dfresne@endeavorgpc.com, Fresne David dfresne@endeavorgrouplic.net

Bud,

Thanks for copying me on everything that is going on. I spoke with Hoskins, Turko, Lloyd, and Lloyd to discuss this matter. Since Veracity has no assets, they do not see any reason to file a chapter 7. They said to simply dissolve the company. Colin Lloyd, if we were to hire them, would be our legal counsel for any bankruptcy proceedings.

Brian

**From:** Bud Bennington [mailto:BBennington@shutts.com]
**Sent:** Wednesday, May 31, 2017 7:10 AM
**To:** 'Brian Mayo' <brianmayo@veracitynetwork.us>; 'Fresne David' <dfresne@endeavorgpc.com>; 'Fresne David' <dfresne@endeavorgrouplic.net>
**Subject:** Katz v. Veracity

Attached please find Veracity's Motion for Summary Judgment filed last evening. As you know we have conveyed our offer to settle in the amount of $75K. Now I need the name of the firm (and the individual in the firm) you will be using to file Veracity's BK so that we can continue to convince the other side that you are serious about bankrupting the company. I need that information in the next day or so. Please call with any questions. Thanks.
Bud

## Shutts

**Bud Bennington**
*Partner*
*Admitted in Florida, New Jersey, and Colorado*

**Shutts & Bowen LLP**
300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6755 | Fax: (407) 849-7255
E-Mail | Biography | V-Card | Website

Please consider the environment before printing this email

**From:** eservice@myflcourtaccess.com [mailto:eservice@myflcourtaccess.com]
**Sent:** Tuesday, May 30, 2017 4:47 PM
**Subject:** SERVICE OF COURT DOCUMENT - CASE NUMBER 052015CA046511XXXXXX

## Notice of Service of Court Documents

### Filing Information

| | |
|---|---|
| Filing #: | 57055646 |
| Filing Time: | 05/30/2017 04:44:01 PM ET |
| Filer: | Alfred J Bennington Jr. 407-835-6755 |
| Court: | Eighteenth Judicial Circuit in and for Brevard County, Florida |
| Case #: | 052015CA046511XXXXXX |
| Court Case #: | 052015CA046511XXXXXX |
| Case Style: | DANIEL KATZ VS VERACITY NETWOR |

### Documents

| Title | File |
|---|---|
| Motion For Summary Final Judgment | Veracity's Motion for Summary Judgment.pdf |
| Notice Of Filing Affidavit | Notice of Filing Affidavit of Brian Mayo.pdf |

### E-service recipients selected for service:

| Name | Email Address |
|---|---|
| Alfred J Bennington Jr. | bbennington@shutts.com |
| | jclaudio@shutts.com |

| Brian Thomas Mayo | brianmayo@veracitynetwork.us |
| Harold E Morlan III | hmorlan@shutts.com |
| | kgranofsky@shutts.com |
| Alfred J. Bennington, Jr. | bbennington@shutts.com |
| | jortiz@shutts.com |
| Joanna Linkous | ********** |
| Lori Todd | ********** |
| Monica Gabbard | ********** |
| Thomas W. Walters | twwlaw1@gmail.com |
| | tomwalters78@yahoo.com |

**E-service recipients deselected for service:**

| Name | Email Address |
| --- | --- |
| Thomas D Oates | toates@pompanolaw.com |
| | andrea@pompanolaw.com |
| | caren@pompanolaw.com |

This is an automatic email message generated by the Florida Courts E-Filing Portal. This email address does not receive email.

Thank you,
The Florida Courts E-Filing Portal

request_id#:57055646;Audit#:194831594;UCN#:052015CA046511XXXXXX;

Attorney at Law

## Shutts & Bowen LLP

300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6752 | Fax: (407) 849-7252
E-Mail | Biography | V-Card | Website

**Please consider the environment before printing this email**

**From:** Brian Mayo [mailto:brianmayo@veracitynetwork.us]
**Sent:** Thursday, June 08, 2017 10:26 AM
**To:** Jennifer E. Belbeck
**Cc:** Bud Bennington; Jennifer Claudio; Rebecca R. Souza; 'Fresne David'
**Subject:** RE: Katz v. Veracity; Documents to be produced

Jennifer,

    Please see my comments below, embedded in your original message. My comments begin with [bm]. It bothers me that you have all this information, yet have failed to produce it to the Plaintiff, and are asking about it again.

Brian

**From:** Jennifer E. Belbeck [mailto:JBelbeck@shutts.com]
**Sent:** Wednesday, June 7, 2017 9:44 PM
**To:** 'Brian Mayo' <brianmayo@veracitynetwork.us>
**Cc:** Bud Bennington <BBennington@shutts.com>; Jennifer Claudio <JClaudio@shutts.com>; Rebecca R. Souza <RSouza@shutts.com>
**Subject:** Katz v. Veracity; Documents to be produced

Brian,

Below is a list of documents I have compiled that the Court instructed us to produce at the hearing yesterday afternoon. I realize that 1) you may have already given this information to our firm and 2) we may have already given some of these to Katz and his attorney. I also realize that you may not be in possession of some of these documents; however, I ask that you go through each bullet point and indicate the status of each to ensure we will be in full compliance with the Court's instructions.

- Bank accounts from January 1, 2013 to the present day that show any infusions of investment capital into Veracity – (I realize this is one with which we have already complied.

    [bm] Completed.

- "Notes" (promissory notes, etc.) given to induce investors to invest with Veracity

    [bm] Completed. Loaded onto dropbox 11/30/2015.

- Email communication from Veracity/Brian Mayo discussing the 35% interest return on the notes and/or the promissory notes that were not previously produced

[bm] Completed. Same status as before. These emails were sent in June, 2015, with a prior laptop computer. That computer has died and been discarded, along with those emails. I have no

possession of any emails pertaining to this request.

- Contracts and all private placement memorandums – (The Court said anything having to do with "stock interest, promissory notes given with regard to capital coming into Veracity need to be produced to Plaintiff)

[bm] Completed. Bridge Loans, PPMs, Consulting Agreements, Term Sheets, Option Agreements, uploaded to dropbox on 11/30/2015.
Rutgers Licensing Agreement uploaded to dropbox on 6/8/2017 (This was not provided previously since the Rutgers licensing agreement occurred long before Daniel Katz appeared in 2013.).

- The agreement that Endeavor signed with VERACITY – (we need to provide if this shows capital coming into the company)

[bm] Completed. Endeavor agreement uploaded to dropbox on 4/10/2017.

- Documentation as to the date and time David Fresne became a member of the Board of Directors of Veracity – (we told the court we could and would provide)

[bm] Completed. BoD minutes uploaded to dropbox on 5/9/2017.

- Corporation minutes pertaining to Katz

[bm] Completed. BoD minutes uploaded to dropbox on 5/9/2017.

- Federal and State Tax Returns from January 2013 to the present date (The Court ordered us to produce these to the extent they show infusion of investment capital into Veracity)

[bm] Completed. Returns were uploaded to dropbox on 4/10/2017.

Thanks very much for your help with this matter, Brian, and please let me know of questions.



**Jennifer E. Belbeck**
*Attorney at Law*

**Shutts & Bowen LLP**
300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6752 | Fax: (407) 849-7252
E-Mail | Biography | V-Card | Website

**Please consider the environment before printing this email**

To: 'Brian Mayo' <brianmayo@veracitynetwork.us>
Cc: Bud Bennington <BBennington@shutts.com>; Jennifer Claudio <JClaudio@shutts.com>; Rebecca R.
Souza <RSouza@shutts.com>
Subject: Katz v. Veracity; Documents to be produced

Brian,

Below is a list of documents I have compiled that the Court instructed us to produce at the hearing
yesterday afternoon. I realize that 1) you may have already given this information to our firm and 2)
we may have already given some of these to Katz and his attorney. I also realize that you may not be
in possession of some of these documents; however, I ask that you go through each bullet point and
indicate the status of each to ensure we will be in full compliance with the Court's instructions.

- Bank accounts from January 1, 2013 to the present day that show any infusions of investment
  capital into Veracity – (I realize this is one with which we have already complied.

[bm] Completed.

- "Notes" (promissory notes, etc.) given to induce investors to invest with Veracity

[bm] Completed. Loaded onto dropbox 11/30/2015.

- Email communication from Veracity/Brian Mayo discussing the 35% interest return on the
  notes and/or the promissory notes that were not previously produced

[bm] Completed. Same status as before. These emails were sent in June, 2015, with a prior laptop
computer. That computer has died and been discarded, along with those emails. I have no possession
of any emails pertaining to this request.

- Contracts and all private placement memorandums – (The Court said anything having to do
  with "stock interest, promissory notes given with regard to capital coming into Veracity need
  to be produced to Plaintiff)

[bm] Completed. Bridge Loans, PPMs, Consulting Agreements, Term Sheets, Option Agreements,
uploaded to dropbox on 11/30/2015.
Rutgers Licensing Agreement uploaded to dropbox on 6/8/2017 (This was not provided previously
since the Rutgers licensing agreement occurred long before Daniel Katz appeared in 2013.).

- The agreement that Endeavor signed with VERACITY – (we need to provide if this shows
  capital coming into the company)

[bm] Completed. Endeavor agreement uploaded to dropbox on 4/10/2017.

- Documentation as to the date and time David Fresne became a member of the Board of
  Directors of Veracity – (we told the court we could and would provide)

[bm] Completed. BoD minutes uploaded to dropbox on 5/9/2017.

- Corporation minutes pertaining to Katz

[bm] Completed. BoD minutes uploaded to dropbox on 5/9/2017.

- Federal and State Tax Returns from January 2013 to the present date (The Court ordered us to produce these to the extent they show infusion of investment capital into Veracity)

[bm] Completed. Returns were uploaded to dropbox on 4/10/2017.

Thanks very much for your help with this matter, Brian, and please let me know of questions.



**Jennifer E. Belbeck**
*Attorney at Law*

---

**Shutts & Bowen LLP**
300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6752 | Fax: (407) 849-7252
E-Mail | Biography | V-Card | Website

Please consider the environment before printing this email

**Bud Bennington**
*Partner*
*Admitted in Florida, New Jersey, and Colorado*

---

**Shutts & Bowen LLP**

300 South Orange Avenue, Suite 1000 | Orlando, FL 32801
Direct: (407) 835-6755 | Fax: (407) 849-7255
E-Mail | Biography | V-Card | Website

**Please consider the environment before printing this email**

---

**From:** Brian Mayo [mailto:brianmayo@veracitynetwork.us]
**Sent:** Thursday, June 8, 2017 12:47 PM
**To:** Bud Bennington
**Cc:** 'Fresne David'
**Subject:** RE: 15457478_1.docx

Bud,

   I am very surprised that you have no idea what I am referring to. You state in your original message below: "...despite your claim that "we have everything", the fact is that we reviewed what we have and there are a number of items that were not produced by Veracity to us."... Can you please detail for me exactly what items were not produced? I stated in my reply that I previously provided all of the documents to Shutts & Bowen. Obviously, we don't agree...so, you're trying to tell me now that you do not see what I am referring to? One second you state I did not do what I said I did, then you seem to say I did provide all the documents. Please let me know what you are currently thinking, so I can keep track.

Your firm has told me on a number of occasions why minimal information has been passed onto the Plaintiffs, stating time and time again that it's for the protection of Veracity Network. Yet, when I ask how we're 18 months into this case, and the Plaintiff is unaware that Veracity Network does not have $15M investment, plus $6M investment, plus $1.5M invested, plus another $500K invested. In fact, Veracity Network has less than $200 in total in its bank accounts. When I asked Shutts & Bowen how the Plaintiff's assumptions could be so far off for 18 months without being corrected at some point along the way, I received no response from your lawyers. No wonder they expected a settlement of $450K. They're under the impression that Veracity Network is flush with cash. While Shutts & Bowen may claim that it has no responsibility to correct the Plaintiff's thinking, how could settlement ever occur if Shutts & Bowen does not set the facts correctly in the minds of the Plaintiff? By not correcting the assumptions of the Plaintiff, the case went on, contrary to Veracity Network's primary goal to get the case resolved as soon as possible.

I am curious as to how I am "merely" supposed to sort through those documents as you suggest, when those documents are already sorted according to the Plaintiff's demands?

My point with regard to evidence to be used against Katz is that not only did I produce the requested discovery documents, contrary to your statements, but I went further and provided evidence I thought should be used against Katz. So, I am stating that I went above and beyond what was requested. In addition, not only did I provide documentation to Shutts & Bowen, I sorted them according to the Plaintiff's request. I can't spoonfeed you much better than that. But apparently, no one at Shutts & Bowen has even bothered to look at what I provided over the last 18 months.

Brian

**From:** Bud Bennington [mailto:BBennington@shutts.com]
**Sent:** Thursday, June 8, 2017 10:55 AM

**Sent:** Tuesday, June 20, 2017 10:01 AM
**To:** 'Brian Mayo'; 'Fresne David'; 'Fresne David'
**Subject:** FW: 43812-0001 Veracity: Invoices/Payments for Professional Legal Services Rendered

Brian/David: As per Brian's request, attached please find our firm's statement of Account as to the Katz v. Veracity matter. While the statement of account reflects payments thru 6-19-17, it does not have any of our legal fees noted for the month of June as that time reporting has not been posted. Therefore, as of 5-31-17, we are owed $41,180. In view of David's personal assurance that we would be paid in full for our services since we agreed to forego the replenishing of our retainer as per the terms of our fee agreement, I trust that we will be excluded from avoidance of this obligation via Veracity's Bankruptcy. Please call and/or direct all communications to me, not my legal assistant, as would concern any issue or questions with respect to this matter. Thanks. Bud



**Bud Bennington**
*Partner*
*Admitted in Florida, New Jersey, and Colorado*

**Shutts & Bowen LLP**
300 South Orange Avenue, Suite 1000  |  Orlando, FL 32801
Direct: (407) 835-6755  |  Fax: (407) 849-7255
E-Mail  |  Biography  |  V-Card  |  Website

**Please consider the environment before printing this email**



**From:** **Brian Mayo** brianmayo@veracitynetwork.us
**Subject:** RE: Agreement
**Date:** September 1, 2017 at 2:13 PM
**To:** David Fresne dfresne@endeavorgpc.com

David,

   I cannot edit this copy of the contract (pdf format). Please forward me a Word copy (or equivalent), so I can fill in the names and amounts. I'll then convert them to pdf format when I send them out to Bridge Loan people.

Thanks,
Brian

**From:** David Fresne [mailto:dfresne@endeavorgpc.com]
**Sent:** Tuesday, August 29, 2017 9:05 PM
**To:** Brian Mayo <brianmayo@veracitynetwork.us>
**Subject:** Agreement